SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
J. Gregory Milmoe
Kenneth S. Ziman
J. Eric Ivester

Proposed Counsel for Debtors and
  Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re : Chapter 11
:
MF GLOBAL HOLDINGS LTD., <u>et al.</u>, : Case No. 11-15059 (MG)
:
: (Joint Administration Pending)
Debtors. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MOTION FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C. §§ 105, 345, 363, 364, 503(b)(1), 553, AND 1108 AND FED. R. BANKR. P. 6003 (I) AUTHORIZING CONTINUED USE OF EXISTING (A) BANK ACCOUNTS, (B) CASH MANAGEMENT SYSTEM, AND (C) BUSINESS FORMS AND CHECKS; (II) EXTENDING THE TIME TO COMPLY WITH THE REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE; AND (III) AUTHORIZING THE CONTINUATION OF INTERCOMPANY TRANSACTIONS AMONG THE DEBTORS AND NON-DEBTOR AFFILIATES AND ACCORDING SUPER PRIORITY STATUS TO ALL <u>POSTPETITION INTERCOMPANY CLAIMS</u>**

MF Global Holdings Ltd. ("MF Holdings") and MF Global Finance USA Inc. ("MF Finance"), debtors and debtors-in-possession in the above-captioned cases (collectively the "<u>Debtors</u>" and the Debtors, together with MF Holdings' non-debtor affiliates and subsidiaries

shall be referred to herein as "MF Global" or the "Company")[1] submit this motion (the "Motion") for interim and final orders pursuant to sections 105, 345, 363, 364, 503(b)(1), 553, and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code") and Bankruptcy Rule 6003 (i) authorizing continued use of existing (a) bank accounts, (b) cash management system, and (c) business forms and checks; (ii) authorizing the Debtors to continue their existing deposit and investment practices under the cash management system (subject to any reasonable changes to the cash management system that the Debtors may implement), and extending the time for the Debtors to comply with the investment and deposit requirements of Bankruptcy Code section 345(b) for a period of 60 days, without prejudice to seek further extensions; and (iii) authorizing the continuation of intercompany transactions among the Debtors and non-debtor affiliates and according superpriority status to all postpetition intercompany claims. In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration of Bradley I. Abelow in support of the chapter 11 petitions and the various "first day" applications and motions (the "Abelow Declaration"). In further support of this Motion, the Debtors represent as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105, 345, 363, 364, 503(b)(1), 553, and 1108 of the Bankruptcy Code.

---

[1] The Debtors consist of: MF Global Holdings Ltd. (EIN: 98-0551260) and MF Global Finance USA Inc. (EIN: 98-0554890).

2

**BACKGROUND**

3. On the date of this Motion (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Abelow Declaration filed concurrently herewith and fully incorporated herein by reference.[2] The Debtors continue to manage and operate their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Debtors in these chapter 11 cases play a critical role in connection with the financial administration of the Company, serving as intermediaries between the Company's operating non-Debtor affiliates and as a conduit to the Company's creditors. MF Finance functions as a central depository for the Company's funds. Correspondingly, aside from the Company's payroll obligations for most employees, MF Holdings funds substantially all of the Company's disbursements after receiving funds for such disbursements from MF Finance.

**RELIEF REQUESTED**

5. By this Motion, the Debtors seek an order (i) authorizing continued use of existing (a) bank accounts, (b) cash management system, and (c) business forms and checks; (ii) authorizing the Debtors to continue their existing deposit and investment practices under the cash management system (subject to any reasonable changes to the cash management system that the Debtors may implement), and extending the time for the Debtors to comply with the investment and deposit requirements of Bankruptcy Code section 345(b) for a period of 60 days, without

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Abelow Declaration.

prejudice to seek further extensions; and (iii) authorizing the continuation of intercompany transactions among the Debtors and non-debtor affiliates and according superpriority status to all postpetition intercompany claims.

## BASIS FOR RELIEF

6. The Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") has established certain operating guidelines (the "U.S. Trustee Guidelines") for debtors-in-possession in order to supervise the administration of chapter 11 cases. These guidelines require chapter 11 debtors to, among other things: (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish separate debtor-in-possession accounts for all estate monies required for the payment of operating expenses, payroll, and taxes (which account would include payroll taxes); and (c) obtain checks for all debtor-in-possession accounts that bear the designation "Debtor-In-Possession," the bankruptcy case number, and the type of account. As set forth below, the Debtors submit that enforcing these requirements would disrupt the Debtors' operations and impose a financial burden on the estate.

**A. The Debtors Should Be Granted Authority to Maintain Their Existing Bank Accounts**

7. Prior to the commencement of these cases, in the ordinary course of business, the Company maintained hundreds of outside bank accounts and investment accounts located at financial institutions throughout the United States, through which the Debtors managed cash receipts and disbursements for their entire U.S. corporate enterprise (collectively, the "Bank Accounts").[3] The Bank Accounts include, among others, those maintained as

---

[3] A list of the Bank Accounts held by the Debtors is attached as Exhibit A hereto.

4

disbursement accounts and, receipt and lockbox accounts. As described below, the Debtors' hold five such Bank Accounts, which are essential to the Company's cash management system.

8. The Debtors routinely deposit, withdraw, and otherwise transfer funds to, from, and between their Bank Accounts by various methods including checks, automated clearing house transactions, electronic funds transfers and direct deposits. The Debtors generate hundreds of wire transfers per month from the Bank Accounts. The Debtors believe that the Bank Accounts are in financially stable banking institutions with Federal Deposit Insurance Corporation ("FDIC") (up to an applicable limit per Debtor per institution) or other appropriate government-guaranteed deposit protection insurance.

9. The Debtors hereby seek a waiver of the requirement in the U.S. Trustee Guidelines that the prepetition Bank Accounts listed on Exhibit A be closed and that new postpetition bank accounts be opened. If enforced in these cases, such requirements would cause enormous disruption to the Debtors' businesses and would impair the Debtors' efforts to reorganize and pursue other alternatives to maximize the value of their estates.

10. Indeed, as explained in more detail below, the Debtors' Bank Accounts are part of a complex, integrated cash management system that ensures the Debtors' ability to efficiently monitor and control all of their cash receipts and disbursements. Closing the existing Bank Accounts and opening new accounts inevitably would disrupt the Debtors' businesses and result in delays that would impede the Debtors' ability to transition smoothly into chapter 11, and would likewise jeopardize the Debtors' efforts to successfully reorganize in a timely and efficient manner. Accordingly, to ensure as smooth a transition into chapter 11 as possible with minimal disruption, and to aid in the Debtors' efforts to complete these cases successfully and rapidly, the Debtors must be permitted to (a) continue to maintain their existing Bank Accounts,

(b) if necessary, open new accounts (and give the U.S. Trustee notice of such newly opened accounts) wherever they are needed, whether or not such banks are designated depositories in the Southern District of New York, on the condition that any new bank account shall be with a bank that is insured by the FDIC and organized under the laws of the United States of America or any state therein and shall be designated a "debtor-in-possession" or "DIP" account by the respective bank, and (c) treat the Bank Accounts and any such newly opened accounts for all purposes as accounts of the Debtors in their capacity as debtors-in-possession.

11. Subject to a prohibition against honoring prepetition checks without specific authorization from this Court, the Debtors request that the Bank Accounts be deemed to be debtor-in-possession accounts and that their maintenance and continued use, in the same manner and with the same account numbers, styles and document forms as those employed during the prepetition period, be authorized.

12. The Debtors also seek a waiver of the requirement to establish specific bank accounts for tax payments. The Debtors believe that they can pay their tax obligations most efficiently out of their existing Bank Accounts, that the U.S. Trustee can adequately monitor the flow of funds into, among, and out of such accounts, and that the creation of new debtor-in-possession accounts designated solely for tax obligations would be unnecessary and inefficient.

13. Accordingly, the efficiencies realized by permitting the Debtors to maintain their current Bank Accounts and serve as a conduit for the Company's cash management system would preserve value for both the Debtors and their stakeholders. Nevertheless, the Debtors represent that if the relief requested in this Motion is granted, they will not pay, and each of the banks (the "Banks") at which the Bank Accounts are maintained will be

directed not to pay, any debts incurred by the Debtors before the Petition Date, other than as authorized by this Court.

14. Courts in this and other districts have recognized that, in complex chapter 11 cases, strict enforcement of the requirement that a debtor-in-possession close its bank accounts does not serve the rehabilitative process of chapter 11, and have therefore waived this requirement and replaced it with more effective procedures similar to those requested herein. See, e.g., In re Mark IV Indus., Inc., No. 09-12795 (SMB) (Bankr. S.D.N.Y. May 27, 2009); In re Dana Corp., No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006); In re Delphi Corp., No. 05-44481 (RDD) (Bankr. S.D.N.Y. Nov. 4, 2005); In re Northwest Airlines Corp., No. 05-17930 (ALG) (Bankr. S.D.N.Y. Oct. 7, 2005); In re Delta Air Lines, Inc., No. 05-17923 (PCB) (Bankr. S.D.N.Y. Oct. 6, 2005); In re Aerovias Nacionales de Colombia S.A. Avianca (In re Avianca, Inc.), Nos. 03-11678 and 03-11679 (ALG) (Bankr. S.D.N.Y. Jun. 4, 2003); In re WorldCom, Inc., No. 02-13533 (AJG) (Bankr. S.D.N.Y. July 22, 2002); In re Adelphia Bus. Solutions, Inc., No. 02-11389 (REG) (Bankr. S.D.N.Y. Mar. 27, 2002).

**B.    The Debtors Should Be Authorized to Continue to
       Use Their Existing Cash Management System**

15. In order to ensure an orderly transition into chapter 11, the Debtors also request authority to continue to use their existing cash management system as maintained and operated by the Debtors in the ordinary course of business. Prior to the commencement of these cases, the Company, in the ordinary course of business, used a complex, partially automated and integrated cash management system to collect, transfer, and disburse funds generated by the operations of non-Debtor affiliates and to accurately record all such transactions as they are made (the "Cash Management System"). The cash management procedures employed by the Debtors constitute essential business practices and integral to the operation and administration of

the Company's businesses. In this regard, the Cash Management System, in conjunction with the financial and accounting systems, allows the Company to (a) control corporate funds centrally, (b) identify cash requirements, (c) transfer cash as needed to respond to these requirements, (d) track all intercompany transfers, (e) comply with the various regulations to which the Company is subject, and (f) reduce administrative expenses by facilitating the movement of funds.

16. The Cash Management System provides a centralized platform for the Company to fund its operational needs. MF Holdings, MF Finance, and MF Global Holdings USA Inc. ("MF Holdings USA") each hold centralized accounts to facilitate the Company's funding and distribution requirements. The Debtors do not engage in the investment activities that comprise the Company's core business activities. Rather, in connection with the Company's Cash Management System, MF Finance serves as a conduit for the Company's operating affiliates. Although MF Finance does not generate any material revenue through its own operations, funds from affiliate accounts across the Company are manually swept into an MF Finance bank account or investment account, as applicable, on an as-needed basis. For disbursement purposes, MF Finance transfers funds to bank or investment accounts held by either MF Holdings or MF Global, depending on the nature of the disbursement. Funds required for salary, wages, taxes and other employee related expenses—with the exception of funds required for such payroll distributions to a small group of the Company's officers—are transferred to MF Holdings USA.[4] Aside from payroll disbursements, funds required for substantially all of the Company's other operational needs are transferred from MF Finance to

---

[4] A regular payroll disbursement was made to salaried and hourly employees on Friday, October 28, 2011.

MF Holdings, including funds required for taxes, vendor payments, payroll for certain officers, loan amounts, and other credit obligations. MF Finance also transfers funds to MF Holdings to provide liquidity to customers of certain regulated and unregulated, non-debtor affiliates, for use in their businesses (for example, providing liquidity to fund margin accounts). These intercompany transactions are recorded in the Debtors' and their non-Debtor affiliates' respective books and records.

17. The operation of the Debtors' businesses requires that the cash management systems continue during the pendency of these chapter 11 cases. Requiring the Debtors to adopt new, segmented cash management systems at this early and critical stage of these cases would be expensive, would create unnecessary administrative problems, and would be much more disruptive than productive. Any disruption could have a severe and adverse impact upon the Debtors' ability to reorganize. Moreover, as a practical matter, because of the Debtors' complex corporate and financial structure, it would not be possible to establish a new system of accounts and a new cash management and disbursement system without substantial additional costs and expenses to the Debtors' bankruptcy estates and a significant disruption of the Debtors' business operations. Consequently, maintenance of the existing cash management systems, including the Debtors' continued ability to transfer funds among themselves, is essential.

18. The Debtors submit the relief requested herein is appropriate and within the authority of this Court. The Debtors' request for authorization to continue to use their existing cash management systems has been held to be entirely consistent with section 363(c)(1) of the Bankruptcy Code, which allows a debtor-in-possession to "use property of the estate in the ordinary course of business." See In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985). Additionally, relief similar to that requested herein has been repeatedly granted by courts in this

and other jurisdictions in other chapter 11 cases including <u>In re Delta Air Lines, Inc.</u>, No. 05-17923 (PCB) (Bankr. S.D.N.Y. Oct. 6, 2005); <u>In re Northwest Airlines Corp.</u>, No. 05-17930 (ALG) (Bankr. S.D.N.Y. Oct. 7, 2005); <u>In re Global Crossing, Ltd.</u>, No. 02-40188 (REG) (Bankr. S.D.N.Y. May 17, 2002); <u>In re Worldcom, Inc.</u>, No. 02-13533 (AJG) (Bankr. S.D.N.Y. Oct. 15, 2002); <u>In re The Warnaco Group, Inc.</u>, No. 01-41643 (RLB) (Bankr. S.D.N.Y. June 11, 2001); <u>In re Teligent, Inc.</u>, No. 01-12974 (SMB) (Bankr. S.D.N.Y. June 13, 2001); and <u>In re The Singer Co. N.V.</u>, No. 99-10578 (BRL) (Bankr. S.D.N.Y. Nov. 18, 1999). Similar authorization is appropriate here.

### C. The Debtors Should Be Granted Authority to Continue to Use Existing Business Forms and Checks

19. Prior to the Petition Date, in the ordinary course of business, the Debtors used numerous business forms including, but not limited to, letterhead, purchase orders, invoices, contracts, and checks (collectively, the "<u>Business Forms</u>"). The Debtors request that they be authorized to continue to use all Business Forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors-in-possession. To this end, the Debtors agree to use their reasonable best efforts to refer to their status as debtors-in-possession on all checks issued after the Petition Date and on other physical Business Forms after the Debtors' existing stock has been exhausted.

20. Parties doing business with the Debtors undoubtedly will be aware, as a result of the size of the Debtors and the public nature of these chapter 11 cases, of the Debtors' status as chapter 11 debtors-in-possession. Furthermore, the Debtors conduct a substantial portion of their business with customers and vendors through electronic data interchange pursuant to which the parties communicate through the simultaneous exchange of electronic data rather than the exchange of physical business forms. As a result, referencing the Debtors' status

as debtors-in-possession on Business Forms would not confer any benefit upon those dealing with the Debtors.

21. Finally, to the extent the Debtors use physical Business Forms, they do so out of multiple locations. Changing Business Forms in these chapter 11 cases would be expensive and burdensome to the Debtors' estates and disruptive to the Debtors' business operations. For these reasons, the Debtors thus request that they be authorized to use their existing Business Forms without being required to place the label "Debtor-in-Possession," an account type, or a so-called "debtor-in-possession number" thereon.

22. Courts in other large chapter 11 cases in this district and others have routinely granted the same or similar relief to chapter 11 debtors. See, e.g., In re Lyondell Chem. Co., No. 09-10023 (REG) (Bankr. S.D.N.Y Jan. 8, 2009 and March 12, 2009); In re Frontier Airlines Holdings, Inc., No. 08-11298 (RDD) (Bankr. S.D.N.Y. April 11, 2008 and May 2, 2008); In re Dana Corp., No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006); In re Delphi Corp., No. 05-44481 (RDD) (Bankr. S.D.N.Y. Nov. 4, 2005); In re Northwest Airlines Corp., No. 05-17930 (ALG) (Bankr. S.D.N.Y. Oct. 7, 2005); In re Delta Air Lines, Inc., No. 05-17923 (PCB) (Bankr. S.D.N.Y. Oct. 6, 2005); In re UAL Corp., No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002); In re Genity Inc., No. 02-43558 (PCB) (Bankr. S.D.N.Y. Dec. 2, 2002); In re WorldCom, Inc., No. 02-13533 (AJG) (Bankr. S.D.N.Y. Oct. 15, 2002); In re Global Crossing, Ltd., No. 02-40188 (REG) (Bankr. S.D.N.Y. May 17, 2002); In re Ogden N.Y. Servs. Inc., No. 02-40826 (CB) (Bankr. S.D.N.Y. Apr. 2, 2002); In re Adelphia Bus. Solutions, Inc., No. 02-11389 02-11394 (REG) (Bankr. S.D.N.Y. Mar. 27, 2002); In re Kmart Corp., No. 02-02474 (SPS) (Bankr. N.D. Ill. Jan. 26, 2002); In re Hayes Lemmerz International, Inc., No. 01-11490 (MFW) (Bankr. D. Del. Dec. 27, 2001).

**D.     The Debtors Should Be Authorized to Continue Their Investment Practices**

23.     The Debtors request (a) authorization to continue to deposit and invest funds in accordance with existing practices under the Cash Management System, subject to any reasonable changes to the Cash Management System that the Debtors may implement (the "Deposit and Investment Practices") and (b) a 60-day extension of time to either comply with Bankruptcy Code section 345(b), without prejudice to seek further extensions, or to make other arrangements that would be acceptable to the U.S. Trustee.  The Deposit and Investment Practices are governed by an investment policy, which provides that such investment activities must comply with federal and state regulations, as well as any regulations imposed by its regulators.  In addition, the investment policy describes the Company's permissible investments, which include: (a) government securities and government guaranteed securities; (b) money funds; (c) United States Treasury and government money funds; (d) federal agency obligations; (e) corporate obligations; (f) money market instruments; and (g) other permissible investments approved by the Company's investment committee from time to time.

24.     Bankruptcy Code section 345(a) authorizes a debtor-in-possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  If a deposit or investment is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Bankruptcy Code section 345(b) provides that the debtor must require that the entity with which the deposit or investment is made obtain a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety.  Id. § 345(b).

25.     The Court has discretion to modify the section 345(b) requirements "for cause."  11 U.S.C. § 345(b).  Indeed, while these requirements may be "'wise in the case of a

smaller debtor with limited funds that cannot afford a risky investment to be lost, [they] *can work to needlessly handcuff larger, more sophisticated debtors*.'" In re Serv. Merch. Co., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (quoting 140 Cong. Rec. H10752-01 (Oct. 4, 1994) (emphasis supplied by court)). In In re Service Merchandise Co., the court indicated that the existence of "cause" should be determined based upon the totality of the circumstances and taking account of such factors as: (a) the sophistication of the debtor's business; (b) the size of the debtor's business; (c) the amount of investments involved; (d) the ratings of the financial institutions where the debtor's funds are held; (e) the complexity of the case; (f) the safeguards in place within the debtor's own business to ensure the safety of funds; (g) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (h) the benefit to the debtor; (i) the harm, if any to the estate; and (j) the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case. See id. at 896.

26. The Debtors submit that the circumstances of this case warrant such relief. The Company is a large, sophisticated entity with a complex Cash Management System that relies on multiple Banks and Bank Accounts on a daily basis. The Bank Accounts used by the Debtors are maintained in the United States and are with stable financial institutions that are insured by the FDIC. Furthermore, in light of the regular deposits and sweeps of the Bank Accounts, requiring the Debtors, or any entity with which money is deposited or invested by the Debtors in accordance with the Deposit and Investment Practices, to incur the expense of posting a bond to the extent that the balances of these accounts exceed FDIC insurance limits at a given time would be especially burdensome and wasteful. Finally, in addition to the Company's own investment policies that serve as a safeguard of the Debtors' funds, there is a significant

distinction between the Debtors' own investments and deposits—which support the Debtors' cash-management function—and those made by non-Debtor affiliates engaging in the Company's core investments businesses.

27. Accordingly, the Court should authorize the Debtors to continue to deposit funds and invest in accordance with the Deposit and Investment Practices and grant the Debtors a 60-day extension, without prejudice to seek further extensions, to either comply with Bankruptcy Code section 345(b) or to make other arrangements that would be acceptable to the U.S. Trustee.

**E. The Debtors Should Be Authorized
to Continue Intercompany Transactions**

28. The Debtors' books and records also reflect numerous other intercompany account balances among various Debtors as of the Petition Date. All prepetition intercompany account balances have been frozen, as of the Petition Date, and the treatment of such claims will be determined as part of an overall reorganization plan for the Debtors.

29. To ensure that each individual Debtor will not, at the expense of its creditors, fund the operations of another Debtor entity, the Debtors respectfully request that, pursuant to section 364(c)(1) of the Bankruptcy Code, all intercompany claims against a Debtor by another Debtor arising after the Petition Date as a result of intercompany transactions and allocations ("Postpetition Intercompany Claims") be accorded superpriority status, with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, subject and subordinate only to (a) any order granting adequate protection to the prepetition secured lenders and (b) other valid liens. If Postpetition Intercompany Claims are accorded superpriority status, each individual Debtor on whose behalf another Debtor has utilized funds or incurred expenses will continue to bear ultimate repayment responsibility,

thereby protecting the interests of each Debtor's creditors. Nothing herein is a request to validate the nature or amount of any intercompany transaction or claim, whether arising pre or postpetition. The Debtors will continue to maintain records of such transfers, including records of all current intercompany accounts receivable and payable.

30. In addition, in connection with their role under the Cash Management System facilitating the operations of the non-Debtor affiliates, the Debtors may, in the ordinary course of business, periodically infuse capital into certain of their subsidiaries and affiliates, including non-Debtor non-U.S. affiliates. These infusions of capital generally are accomplished through the making of intercompany loans. The Debtors use repayments of such loans as a tax efficient method of managing cash throughout their worldwide business enterprise. Because the non-Debtor affiliates are part of the same group of affiliated entities as the Debtors, the entirety of intercompany transactions among Debtors and non-Debtor affiliates alike remain within the spectrum of the Debtors' control.

31. The relief requested herein is necessary because certain non-Debtor affiliates may require intercompany advances in order to maintain their liquidity and going concern value. Courts frequently have granted such superpriority status to postpetition intercompany claims in cases such as this. See, e.g., In re Dana Corp., No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006); In re Delphi Corp., No. 05-44481 (RDD) (Bankr. S.D.N.Y. Nov. 4, 2005); In re Interstate Bakeries Corp., No. 04-45814 (JWV) (Bankr. W.D. Mo., Sept. 22, 2004); In re NorthWestern Corp., No. 03-12872 (CGC) (Bankr. D. Del. Nov. 26, 2003); In re Kmart Corp., No. 02-02474 (SPS) (Bankr. N.D. Ill. Jan. 26, 2002); In re Hayes Lemmerz Int'l, Inc., No. 01-11490 (MFW) (Bankr. D. Del. Dec. 27, 2001); In re Singer Co. N.V., No. 99-10578 (BRL) (Bankr. S.D.N.Y. Nov. 18, 1999); In re Phillip Servs. (Delaware), Inc., No. 99-02385

(MFW) (Bankr. D. Del. June 28, 1999); In re Harneschfeger Indus., No. 99-2171 (PJW) (Bankr. D. Del. June 7, 1999); In re Loewen Group Int'l, No. 99-1244 (PJW) (Bankr. D. Del. June 1, 1999).

32. The Debtors also seek authorization to preserve and exercise intercompany setoff rights. Section 553(a) of the Bankruptcy Code provides that:

> [e]xcept as otherwise provided in this section and in sections 362 and 363 of the title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553(a). A creditor need only establish two elements before a setoff may be asserted: mutuality and timing. See Official Comm. of Unsecured Creditors v. Mfrs. & Traders Trust Co. (In re Bennett Funding Group, Inc.), 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997), aff'd 146 F.3d 136 (2d Cir. 1998); see also Verco Indus. v. Spartan Plastics (In re Verco Indus.), 704 F.2d 1134, 1139 (9th Cir. 1983); In re Lundell Farms, 86 B.R. 582, 584 (Bankr. W.D. Wis. 1988). Although courts have not uniformly defined the elements of mutuality, most courts require the following elements: that the debts are (a) owed between the same parties and (b) in the same right or capacity. See 5 Collier, Bankruptcy § 553.03[3][a] & n.69 (15th rev. ed. 2008) (citing inter alia, Davidovich v. Welton (In re Davidovich), 901 F.2d 1533, 1537 (10th Cir. 1990); Lubman v. Sovran Bank, N.A. (In re A & B Homes, Ltd.), 98 B.R. 243, 248 (Bankr. E.D. Va. 1989)). Timing requires that both claims arise prepetition. See Packaging Indus. Group, Inc. Dennison Mfg. Co. (In re Sentinel Prods. Corp.), 192 B.R. 41, 45 (S.D.N.Y. 1996); Scherling v. Hellman Elec. Corp. (In re Westchester Structures Inc.), 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995). In addition, courts have allowed the parties to offset claims postpetition in the same manner as a prepetition setoff, as long as the mutuality requirements are met. See, e.g., United States v. Gordon Sel-Way, Inc. (In re Gordon Sel-Way, Inc.), 239 B.R. 741, 751-755 (E.D. Mich. 1999),

16

aff'd, 270 F.3d 280 (6th Cir. 2001); Mohawk Indus., Inc. v. United States (In re Mohawk Indus., Inc.), 82 B.R. 174, 179 (Bankr. D. Mass. 1987).

33.     The Cash Management System allows the Debtors to track all obligations owing between related entities and thereby ensures that all setoffs of intercompany transactions will meet both the mutuality and timing requirements of section 553 of the Bankruptcy Code. Therefore, the Debtors respectfully request that the Debtors and their non-Debtor affiliates be expressly authorized to set off prepetition obligations arising on account of intercompany transactions between a Debtor and another Debtor or between a Debtor and a non-Debtor affiliate. Further, the Intercompany Transactions provide numerous benefits to the Debtors. The Debtors therefore seek to continue the Intercompany Transactions postpetition in the ordinary course of their businesses.

### F.    Immediate Relief Is Necessary to Avoid Immediate and Irreparable Harm

34.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition." Fed. R. Bankr. P. 6003(b). Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). For all the reasons set forth herein, the Debtors will suffer immediate and irreparable harm absent the Court's entry of an order granting the relief requested herein. Consequently, the relief requested herein is consistent with Bankruptcy Rule 6003. Accordingly,

the order granting the relief requested herein should become effective and enforceable immediately notwithstanding Bankruptcy Rule 6004(h).

## NOTICE

35. Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to: (a) the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) counsel for the agents under the Debtors' prepetition credit facilities; (f) the indenture trustee for each of the Debtors' outstanding bond issuances; and (g) the parties included on the Debtors' list of fifty (50) largest unsecured creditors. The Debtors submit that, under the circumstances, no other or further notice is necessary.

## NO PRIOR REQUEST

36. No prior request for the relief requested herein has been made to this or any other Court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request this Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: New York, New York
October 31, 2011

        SKADDEN, ARPS, SLATE, MEAGHER
         & FLOM LLP

        By: */s/ Kenneth S. Ziman*
         J. Gregory Milmoe
         Kenneth S. Ziman
         J. Eric Ivester
         Four Times Square
         New York, New York 10036
         (212) 735-3000

        Proposed Counsel for Debtors and
         Debtors-in-Possession