SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
J. Gregory Milmoe
Kenneth S. Ziman
J. Eric Ivester

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York  10178-0061
(212) 696-6000
Steven J. Reisman
Turner P. Smith
Michael A. Cohen

Proposed Counsel for Debtors and
  Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
  In re                                          :   Chapter 11
                                                          :
MF GLOBAL HOLDINGS LTD., <u>et al.</u>,                   :   Case No. 11-15059 (MG)
                                                          :
                                                          :   (Joint Administration Pending)
                       Debtors.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS
UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), AND 363(e) AND BANKRUPTCY
RULES 2002, 4001, 6003, 6004 AND 9014 (I) AUTHORIZING THE DEBTORS TO
USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO
THE LIQUIDITY FACILITY LENDERS, AND (III) SCHEDULING A FINAL
<u>HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)</u>**

       MF Global Holdings Ltd. and MF Global Finance USA Inc. (collectively, the

"<u>Debtors</u>," and the Debtors, together with their non-Debtor subsidiaries and affiliates, shall be

referred to herein as the "Company" or "MF Global")[1] submit this motion (the "Motion") pursuant to sections 105(a), 361, 362, 363 and 364 of title 11 of the United States Code, rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 4001(d) and 4001-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), for entry of an order (I) authorizing the Debtors to continue to utilize cash collateral, (II) granting adequate protection to the Liquidity Facility Lenders, and (III) scheduling a final hearing. In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration of Bradley I. Abelow Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and Various First-Day Applications and Motions (the "Abelow Declaration"). In further support of this Motion, the Debtors represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 361, 362, 363(c), and 363(e) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local Rules 4001(d) and 4001-2.

## BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States

---

[1] The Debtors consist of: MF Global Holdings Ltd. (EIN: 98-0551260) and MF Global Finance USA Inc. (EIN: 98-0554890).

Code, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court"). The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Abelow Declaration filed concurrently herewith and fully incorporated herein by reference.[2]

4. The Debtors continue to manage and operate their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

**B.    The Company's Liquidity Facility Agreement**

5. Liquidity Facility Agreement. Pursuant to that certain 5-Year revolving credit facility dated as of June 15, 2007 (as amended, supplemented or otherwise modified from time to time, the "Liquidity Facility"), among MF Global Holdings Ltd. (f/k/a MF Global Ltd.),[3] MF Global Finance USA, Inc. (together with MF Global Holdings Ltd., the "Liquidity Facility Borrowers"), JPMorgan Chase Bank, N.A., as Administrative Agent (the "Liquidity Facility Agent"), and the several lenders from time to time parties thereto (such lenders and the Liquidity Facility Agent collectively referred to herein as the "Liquidity Facility Lenders"), the Liquidity Facility Lenders have made available to the Liquidity Facility Borrowers on an unsecured basis the aggregate principal amount of approximately $1.2 billion, of which approximately $1.172 billion was drawn as of the Petition Date.

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Abelow Declaration.

[3]  As set forth in the Abelow Declaration, on January 4, 2010, MF Global Ltd. changed its jurisdiction of incorporation from Bermuda to the State of Delaware. MF Global Ltd. has continued its existence as a corporation organized under the laws of the State of Delaware under the name of MF Global Holdings Ltd.

3

6. On June 29, 2010, the Liquidity Facility was amended (the "Amendment") (i) to permit the Company, in addition to certain of its subsidiaries, to borrow funds under the Liquidity Facility and (ii) to extend the lending commitments of certain of the Liquidity Facility Lenders by two years, from June 15, 2012 (the "Old Maturity Date") to June 15, 2014 (the "Extended Maturity Date"). Aggregate commitments under the amended Liquidity Facility are approximately $1.2 billion, of which approximately $689.6 million is available for borrowing until the Extended Maturity Date, and approximately $511.3 million is available for borrowing until the Old Maturity Date. Under the terms of the amended Liquidity Facility, MF Global may borrow under the available loan commitment subject to the Extended Maturity Date to repay the outstanding balance on the Old Maturity Date. As set forth above, MF Global has drawn down approximately $1.172 billion as of the Petition Date (such amount, and the obligations in connection therewith, the "Liquidity Facility Obligations").

## CASH COLLATERAL

7. Although the Debtors' Liquidity Facility Obligations are unsecured, upon information and belief, approximately $26 million of the Debtors' available cash is held in accounts controlled by the Liquidity Facility Agent. Funds on deposit with the Liquidity Facility Agent or any of the Liquidity Facility Lenders as of the Petition Date may be subject to rights of setoff under applicable law and, by virtue of such setoff rights, such funds may be subject to liens in favor of the JPMorgan Chase Bank, N.A., acting in its capacity as Liquidity Facility Agent, pursuant to sections 506(a) and 553 of the Bankruptcy Code.

8. Moreover, while the Debtors do not acknowledge that such funds are subject to setoff and reserve all rights to assert to the contrary, in order to continue to use such cash, the Debtors propose to give the Liquidity Facility Agent adequate protection liens ("Conditional Adequate Protection Liens") to the extent of any decrease in such cash. The

4

Conditional Adequate Protection Liens shall (a) not include causes of actions held by the Debtors' estate under chapter 5 of the Bankruptcy Code, and the proceeds thereof and (b) shall be subject to the "Carve-Out". Carve-Out shall mean (i) any fees owed to the United States Trustee and (ii) any accrued but unpaid professional fees as of the date upon which the Liquidity Facility Agent exercises any setoff right or other remedies, plus (iii) $4 million dollars.

9. Accordingly, to the extent that the Debtors' cash and other amounts on deposit or maintained by the Debtors in any account or accounts with the Liquidity Facility Agent constitutes cash collateral of the Liquidity Facility Agent within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral"), the Debtors request that they be permitted to use the Cash Collateral, and to provide adequate protection to the Liquidity Facility Agent. The adequate protection the Debtors propose to provide would be in the form of replacement liens in the Company's assets, but only to the extent of any decrease in value of the Cash Collateral.

**BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-2 CONCISE STATEMENTS**

10. In accordance with Bankruptcy Rule 4001(d) and Local Rule 4001, below is a summary of the nature of the Debtors' request and terms of the proposed use of Cash Collateral (as such term is defined in section 363(a) of the Bankruptcy Code), to the extent the Debtors' cash is deemed to be Cash Collateral:

(a) <u>Amount of Cash Collateral</u>: The Debtors have approximately $26 million in cash which may be Cash Collateral and, as of September 30, 2011, the Company has approximately $41,046,594,000 in total assets and $39,683,915,000 in total liabilities, which includes equity interests of MF Global Holdings Ltd., resulting in over $1.3 billion in excess value, which adequately protects the Liquidity Facility Lenders. To the extent the Debtors' cash is deemed to be Cash Collateral, the Debtors seek to use such Cash Collateral. Interim Cash Collateral Order, ¶ 2.

(b) <u>Parties with Interest in Cash Collateral</u>: To the extent the Debtors' cash and securities held in accounts controlled by the Liquidity Facility Agent

(c) Use of Cash Collateral: The Debtors propose to use Cash Collateral, wherever such Cash Collateral may be located, to among other things, (a) maintain their operations and provide funding to affiliates (whether Debtors or non-Debtors) consistent with prepetition practices as set forth in the Cash Management Motion, (b) pay certain prepetition obligations as further described in the Debtors' "first day" motions filed substantially contemporaneously herewith and authorized pursuant to the "first day" orders approving the same, and (c) pay disbursements for operating expenses; Interim Cash Collateral Order, ¶¶ E, 2.

(d) Termination Date: The Debtors' ability to use Cash Collateral pursuant to the Interim Cash Collateral Order shall end on the date on which the Final Cash Collateral Order is entered. However, pursuant to the Final Cash Collateral Order, the Debtors shall continue to be allowed to use Cash Collateral. Interim Cash Collateral Order, ¶ 3.

(e) Adequate Protection: To the extent that use of the Cash Collateral results in any diminution of value in the Cash Collateral, the Liquidity Facility Agent shall receive continuing, valid, binding, enforceable, and automatically perfected first priority postpetition security interests in, and liens on, all unencumbered property of the Debtors, including unencumbered security interests held by the Debtors (the "Conditional Adequate Protection Liens" and the collateral securing such Conditional Adequate Protection Liens, the "Replacement Collateral"), subject to paragraphs 4 and 5 of the Interim Cash Collateral Order. Specifically, such Conditional Adequate Protection Liens shall (a) not include causes of actions held by the Debtors' estate under chapter 5 of the Bankruptcy Code, and the proceeds thereof and (b) shall be subject to the Carve-Out.

**RELIEF REQUESTED**

11. As noted above, by this Motion, the Debtors[4] respectfully request that the Court conduct an expedited preliminary hearing on the Motion and enter an interim order pursuant to sections 361, 362, 363, 503, and 507 of the Bankruptcy Code (A) authorizing their

---

[4] To the extent that, after the Petition Date, any of the Debtors' subsidiaries or affiliates file voluntary petitions and their cases are jointly administered with these cases (the "Subsequent Filers"), the Debtors anticipate filing a separate motion requesting that such Subsequent Filers receive the protections and approvals currently being sought by the Debtors in this Motion.

6

use of the Cash Collateral, on an interim basis, as described in more detail below and (B) scheduling the Final Cash Collateral Hearing to consider the entry of a final order authorizing the Debtors' permanent use of Cash Collateral (which authority would be provided for in the Final Cash Collateral Order).

12. In addition, although the Debtors do not acknowledge the right of the Liquidity Facility Agent to setoff against available cash or securities owned by the Debtors, to the extent such setoff rights exist, the Debtors seek authority to use such Cash Collateral and to grant first priority liens on the Debtors' assets in the event of any decrease in the value of the Cash Collateral. Specifically, the Debtors seek:

(a) authorization to use the Cash Collateral and, with respect any diminution in the Liquidity Facility Agent's interest in the Cash Collateral, to provide adequate protection to the Liquidity Facility Agent under Bankruptcy Code sections 361, 362, 363(c)(2) and 363(e) with respect to the use of such Cash Collateral; and

(b) authorization of interim relief pursuant to the Interim Cash Collateral Order under Bankruptcy Rule 4001(b) and Local Rule 4001, to schedule a final hearing on this Motion (the "Final Hearing") and the establishment of notice procedures in respect of the Final Hearing to approve the use of Cash Collateral and the granting of adequate protection to the Liquidity Facility Agent on a final basis.

**BASIS FOR RELIEF**

13. As noted above and as set forth in the Abelow Declaration, the reasons supporting the Debtors' need to use Cash Collateral during the course of the Debtors' cases are compelling. The Debtors have limited alternative sources of funds. Immediate and ongoing use of Cash Collateral is required to fund the day-to-day activities of the Debtors, including to make payments to employees and vendors in the ordinary course of business whose services and goods are integral to the Debtors' operations. Unless this Court authorizes use of the Cash Collateral, the Debtors will be unable to pay for services and expenses necessary to preserve and maximize

7

the value of the Debtors' estates. Indeed, were this Court to decline to authorize such use, even on an interim basis, the Debtors' efforts to reorganize their businesses in a manner designed to maximize the value of their assets would almost certainly fail.

14. The Debtors require the immediate use of Cash Collateral, wherever located, to continue operations and preserve the value of the Debtors' assets. Specifically, the Debtors seek to use Cash Collateral to (a) maintain their operations and provide funding to affiliates (whether Debtors or non-Debtors) consistent with prepetition practices as set forth in the Cash Management Motion, (b) pay certain prepetition obligations as further described in the Debtors' "first day" motions filed substantially contemporaneously herewith and authorized pursuant to the "first day" orders approving the same, and (c) pay certain ongoing postpetition obligations.

15. Indeed, the Debtors cannot meet their ongoing postpetition obligations unless they are authorized to use cash that may constitute Cash Collateral of the Liquidity Facility Agent. To the extent that the Debtors' cash is encumbered by virtue of any setoff rights of the Liquidity Facility Agent, the Debtors' use of Cash Collateral, as proposed herein, is appropriate under section 363(c)(2) of the Bankruptcy Code, which provides that the Debtors may not use, sell or lease Cash Collateral unless: "(a) each entity that has an interest in such Cash Collateral consents; or (b) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Additionally, section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. Absent the Debtors' use of the Cash

Collateral, the Debtors will not have sufficient available sources of working capital and financing to carry on the operation of their business as a going concern.

16. Moreover, in the absence of the use of Cash Collateral, the continued operation of the Debtors' business, even for a limited period of time, would not be possible, and serious and irreparable harm to the Debtors and their estates would occur. Consequently, the use of Cash Collateral is critical to preserve and maintain the going concern value of the Debtors and will enhance the prospects for a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code.

17. The Debtors propose to grant Conditional Adequate Protection Liens in all unencumbered property of the Debtors, including without limitation unencumbered securities held by the Debtors, to the extent necessary to provide adequate protection on account of any diminution in the Cash Collateral.

18. Although the Debtors would like to engage in negotiations with the Liquidity Facility Agent regarding the consensual use of cash which may constitute the Liquidity Facility Agent's Cash Collateral, recent events have made it impracticable for the Debtors to have a sufficient opportunity to seek the Liquidity Facility Agent's consent to use the Cash Collateral prior to the Petition Date. The Debtors intend to immediately endeavor to negotiate with the Liquidity Facility Agent to obtain their consent to the Debtors' use of Cash Collateral. If these efforts prove successful, the Debtors may submit a revised form of the Interim Order and/or Final Order. If, following the filing of this Motion, the Debtors are unable to reach a consensual agreement with the Liquidity Facility Agent regarding the Debtors' use of Cash Collateral, the Debtors will request authorization for the permanent use of Cash Collateral at the Final Cash Collateral Hearing.

## APPLICABLE AUTHORITY

A. **The Debtors' Use of Cash Collateral Should Be Approved**

   1. **Sections 363(c)(2) and 105(a) of the Bankruptcy Code Authorizes the Debtors' Use of Cash Collateral.**

19. To the extent that the Debtors' cash located in bank accounts controlled by the Liquidity Facility Agent or any of the Liquidity Facility Lenders is deemed to be Cash Collateral, section 363 of the Bankruptcy Code governs the Debtors' use of such cash collateral. Under section 363(c)(2), a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes the use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(a) defines "cash collateral" as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

20. It is universally acknowledged that a debtor's cash "is the life's blood of the business," and the bankruptcy court must ensure that such life's blood "is available for use, even if to a limited extent." In re Mickler, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981). Courts typically authorize a debtor to use cash collateral to continue its operations so long as the interests asserted by affected creditors in such cash are adequately protected. Thus, courts are required to balance the protection a debtor seeks to provide with the debtor's need to use cash in its reorganization effort. Stein v. U.S. Farmers Home Admin. (In re Stein), 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982). In ruling whether a debtor is adequately protected early in a case, courts

"will generally permit the business operation to continue, at least to the point of plan formulation, if the debtors make a solid evidentiary showing to support their projections[.]" In re Dynaco Corp., 162 B.R. 389, 395 (Bankr. D.N.H. 1993).

21. Consistent with these requirements, courts repeatedly have recognized that use of cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and thus maximize the value of an estate for all interested parties. See, e.g., Dynaco, 162 B.R. at 394 (granting a motion for the use of cash collateral and stating that "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary in order to operate a business"); Chrysler Credit Corp. v. George Ruggiere Chrysler-Plymouth, Inc. (In re George Ruggiere Chrysler-Plymouth, Inc.), 727 F.2d 1017, 1020 (11th Cir. 1984) (allowing debtor to use cash collateral over secured creditor's consent after noting that "[w]ithout the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated."); MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1399 (10th Cir. 1987) (permitting debtor to use cash collateral to expand operations after finding there was only a low risk that secured creditor's interest would diminish); In re Stein, 19 B.R. at 459 (granting cash collateral motion and declaring that access to cash is imperative for a debtor to operate its business); see also In re Megan-Racine Assocs. Inc., 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996) (noting, in connection with motion to approve use of cash collateral, that "[w]hat is important at this juncture in the case in any determination of additional adequate protection is the future stability of the value of the collateral, rather than any particular level at value at any one time since the case was commenced").

22. The Debtors' request is also appropriate under section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [the Bankruptcy Code]." 11 U.S.C. § 105(a). The Debtors propose to use Cash Collateral, on the terms and conditions set forth in this Motion, as is necessary to continue their operations, including payments to vendors, employee payroll, licensing and other expenses, and to fund certain capital expenditures. Access to Cash Collateral is therefore crucial to the Debtors' ability to maintain their businesses and to avoid immediate and irreparable harm to their estates, employees, customers and creditors.

### 2. The Proposed Adequate Protection

23. A debtor's authority to use cash collateral is typically conditioned on providing "adequate protection" to entities that assert an interest in such cash. 11 U.S.C. § 363(e). "The concept of 'adequate protection' is not defined in the [Bankruptcy] Code except by the implications of the examples of adequate protection listed in § 361." In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). Section 361 of the Bankruptcy Code contains a non-exhaustive list of acceptable forms of adequate protection, including a cash payment or periodic cash payments, additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

24. The determination of adequate protection is a "fact-specific inquiry." In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("Its application is left to the vagaries of each case . . . .") (citation omitted). The focus of the adequate protection requirement is to preserve the secured creditor's position at the time of the bankruptcy filing and protect the secured creditor from diminution in the value of its collateral during the reorganization process. Id. at 288 (citation omitted); In re Beker Indus. Corp., 58 B.R. at 736. See In re WorldCom, Inc., 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the

Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy.").

25. What constitutes adequate protection must be decided on a case-by-case basis. See, e.g., MBank Dallas v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-97 (10th Cir. 1987) (citing Martin v. United States (In re Martin), 761 F.2d 472, 474 (8th Cir. 1985));; In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Realty Southwest Assocs., 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992) (citing Martin, 761 F.2d at 474); In re Selby Farms, Inc., 15 B.R. 372, 374 (Bankr. S.D. Miss. 1981); Kimbrough Inv. Co. v. Royal d'Iberville Corp. (In re Royal d'Iberville), 10 B.R. 37, 39 (Bankr. S.D. Miss. 1981) ("Opinions as to what is adequate protection must be determined on a case-by-case basis and opinions will vary greatly from court-to-court because adequate protection is not defined in the Bankruptcy Code.").

26. Importantly, the entitlement to, form of, and amount of adequate protection should be based on a showing that the use of cash collateral will cause the value of a creditor's collateral to decrease:

> Despite its form, the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case . . . . Where a debtor desires to use cash collateral, a court must determine the value of the creditor's interest in the cash collateral and whether the debtor's proposed use of cash collateral would impair that interest, and to what extent adequate protection is required.

In re Gallegos Research Group, Corp., 193 B.R. 577, 584 (Bankr. D. Col. 1995). Moreover, courts should take equitable considerations into account in determining what constitutes adequate protection. See Dynaco, 162 B.R. at 394 ("Adequate protection will take many forms, only some of which are set forth in section 361 of the Bankruptcy Code . . . and must be determined based upon equitable considerations arising from the particular facts of each

13

proceeding."); Stein, 19 B.R. at 459 ("The equities in each case must be weighed in striking a balance.").

27.     Here, the Debtors propose to adequately protect the Liquidity Facility Lenders by granting the Conditional Adequate Protection Liens on the Replacement Collateral to the Liquidity Facility Agent, on its own behalf and on behalf of the Liquidity Facility Lenders, to the extent of any decrease in value of the Cash Collateral.

**B.    The Proposed Adequate Protection is Sufficient**

28.     Adequate protection is determined on a case-by-case basis. See In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("The determination of adequate protection is a fact-specific inquiry."); see also In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). The critical purpose of adequate protection is to guard against the diminution of a secured creditor's collateral during the period when such collateral is being used by the debtor in possession. See 495 Cent. Park, 136 B.R. at 631 ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the chapter 11 reorganization."); Beker, 58 B.R. at 736; In re Hubbard Power & Light, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996). Given the unencumbered assets available for Conditional Adequate Protection Liens, the Liquidity Facility Lenders are adequately protected from any decrease in value of the Cash Collateral.

**1.    Adequate Protection in the Form of Replacement Liens Is Appropriate**

29.     As adequate protection, the Debtors plan to provide the Liquidity Facility Agent replacement liens in all unencumbered property of the Debtors, including unencumbered security interests held by the Debtors. Because the Liquidity Facility Agent's interests in the Cash Collateral will be replaced with an interest in the Debtor's unencumbered property, the Liquidity Facility Lenders are adequately protected under the Bankruptcy Code. See In re

14

Musicland Holding Corp., 362 B.R. 644, 648 (Bankr. S.D.N.Y. 2007) (noting that replacement lien on postpetition assets constituted adequate protection for use of cash collateral); In re Ledgemere Land Corp., 116 B.R. 338, 334 (Bankr. D. Mass. 1990) (in the case of a debtor seeking to use cash collateral where the secured lenders had proceeds of receivables, "the creditor is considered to have adequate protection so long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security interest. In these cases, net operating income . . . remains stable, so that the secured claim is not declining in value. Permitting the secured party to collect that income draws the life blood from the collateral.").

**C.     Interim Approval to Use Cash Collateral Will Prevent Immediate and Irreparable Harm to the Debtors' Estates**

30. The Debtors have an immediate need to use the Cash Collateral, in order to permit the orderly continuation of their businesses and to preserve the going concern value of the Debtors and their non-Debtor subsidiaries.

31. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after the service of such motion. Similarly, Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition grant, among other things, a motion to use, sell, lease property of the debtor's estate."

32. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

33. Absent authorization from the Court to use Cash Collateral on an interim basis pending the Final Cash Collateral Hearing, the Debtors will be immediately and irreparably

15

harmed. As set forth above, the Debtors' ability to use Cash Collateral is critical to their ability to operate their business and preserve value. Without the immediate liquidity provided by the use of Cash Collateral, the Debtors will simply be unable to conduct normal business operations, will be unable to pay basic expenses, such as payroll and utilities, and will suffer a precipitous loss of value to the detriment of all parties in interest. The Interim Cash Collateral Order seeks approval to use Cash Collateral only in the amount necessary to sustain the Debtors' operations prior to the Final Cash Collateral Hearing.

**D.  The Automatic Stay Should Be Modified on a Limited Basis**

34. The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtors to: (a) grant the Conditional Adequate Protection Liens described herein and (b) to the extent of any decrease in value of the Cash Collateral, perform such acts as the Liquidity Facility Agent may request in its reasonable discretion to assure the perfection and priority of any liens granted in the Interim Cash Collateral Order. In the Debtors' business judgment, the requested stay modification is reasonable and fair under the present circumstances.

**E.  Request for Final Hearing**

35. Finally, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that this Court set a date that is no longer than 30 days from the entry of the Interim Cash Collateral Order as a final hearing for consideration of the entry of the Final Cash Collateral Order.

36. The Debtors request that they be authorized to serve a copy of the signed Interim Cash Collateral Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the notice parties listed below. The Debtors further request that this

Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001(c)(2).

**NOTICE**

37. Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to: (a) the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) counsel for the agents under the Debtors' prepetition Liquidity Facility; (f) the indenture trustee for each of the Debtors' outstanding bond issuances; and (g) the parties included on the Debtors' list of fifty (50) largest unsecured creditors. The Debtors submit that, under the circumstances, no other or further notice is necessary.

**NO PRIOR REQUEST**

38. No prior request for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request this Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: New York, New York
October 31, 2011

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ Kenneth S. Ziman*
J. Gregory Milmoe
Kenneth S. Ziman
J. Eric Ivester
Four Times Square
New York, New York 10036
(212) 735-3000

- and -

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
(212) 696-6000
Steven J. Reisman
Turner P. Smith
Michael A. Cohen

Proposed Counsel for Debtors and
 Debtors-in-Possession

18