Peter V. Pantaleo
Sandy Qusba
Morris J. Massel
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MF GLOBAL HOLDINGS LTD., et al., | : | Case No. 11-15059 (MG) |
| | : | |
| Debtors. | : | Joint Administration Pending |

------------------------------------------------------------x

### OBJECTION OF JPMORGAN CHASE BANK, N.A. TO MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), AND 363(e) AND BANKRUPTCY RULES 2002, 4001, 6003, 6004 AND 9014 (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE LIQUIDITY FACILITY LENDERS, AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

JPMorgan Chase Bank, N.A., by its undersigned counsel, hereby files this

objection (the "**Objection**") to the motion [Docket No. 8] (the "**Motion**") of the above captioned

debtors and debtors in possession (collectively, the "**Debtors**") for interim and final orders under

11 U.S.C. §§ 105, 361, 362, 363(c), and 363(e) and Bankruptcy Rules 2002, 4001, 6003, 6004

and 9014 (i) authorizing the debtors to use cash collateral, (ii) granting  adequate protection to

the liquidity facility lenders, and (iii) scheduling a final hearing pursuant to Bankruptcy Rules

4001(b) and (c).  In support of the Objection, JPMorgan respectfully represents:[1]

### PRELIMINARY STATEMENT

1.      The Debtors have been forced to seek relief because of a sudden turn of

events that prevents the Debtors and all parties in interest, including JPMorgan, from

---

[1]      Undefined capitalized terms used herein shall have the meanings given to them in the Motion.

understanding exactly what may lie ahead.  Although JPMorgan is hopeful the Debtors will be able to generate meaningful recoveries for creditors, no one, including the Debtors, can predict whether, when and to what extent this may actually occur.

2.     Given this uncertainty, JPMorgan seeks to limit the relief the Motion seeks to that which provides reasonable relief to the estates while avoiding as much as possible any irremediable diminution of the value of its cash collateral.[2]

## **RELIEF REQUESTED**

3.     JPMorgan respectfully requests that the Court deny the Debtors' Motion unless the proposed form of order (the "**Proposed Cash Collateral Order**") is modified as set forth on Exhibit A annexed hereto (the "**JPM Proposed Cash Collateral Order**").  Specifically, JPMorgan requests the following modifications to the Proposed Cash Collateral Order:

 a) a limit, on an interim basis, both in time and amount on the use of JPMorgan's cash collateral.  Specifically, through November 11, 2011, the Debtors shall be authorized to use cash collateral by and for the benefit of the Debtors in an agreed upon amount. Moreover, cash collateral should be expended during this interim period only to the extent the Debtors determine in good faith such expenditure is necessary to avoid irreparable harm to the estates;

 b) a first priority lien on all of the Debtors' assets as adequate protection, without limitations or exclusions.  In particular, the Debtors should grant JPMorgan a first priority, senior lien on all unencumbered assets of the Debtors, including without limitation all causes of actions held by the Debtors' estate under chapter 5 of

---

[2] As disclosed in the Debtors' *Motion for Interim and Final Orders Under 11 U.S.C. §§ 105, 345, 363, 364, 503(B)(1), 553, and 1108 and Fed. R. Bankr. P. 6003 (I) Authorizing Continued Use of Existing (A) Bank Accounts, (B) Cash Management System, and (C) Business Forms and Checks; (II) Extending the Time to Comply with the Requirements of Section 345(b) of the Bankruptcy Code; and (III) Authorizing the Continuation of Intercompany Transactions Among the Debtors and Non-Debtor Affiliates and According Super Priority Status to All Postpetition Intercompany Claims* [Docket No. 7] (the "**Cash Management Motion**"), the Debtors' five operating accounts are all accounts with JPMorgan.  See Exhibit A to the Cash Management Motion.  JPMorgan's estimate of the balances in the Debtors' accounts is approximately $26.6 million.  JPMorgan asserts, and the Debtors admit, that "by virtue of such setoff rights, such funds may be subject to liens in favor of [JPMorgan], pursuant to sections 506(a) and 553 of the Bankruptcy Code."  Motion at ¶ 7.  JPMorgan has setoff rights by virtue both of its interest under the Liquidity Facility, as to which JPMorgan acts as Administrative Agent and lender, as well as by virtue of other bi-lateral obligations owed to JPMorgan by the Debtors.

the Bankruptcy Code, subject to the Carve-Out. The term "Carve-Out" shall mean an amount equal to the sum of (i) any fees owed to the United States Trustee and (ii) allowed unpaid professional fees accruing during the interim period up to a maximum amount to be agreed upon;

c) a superpriority administrative expense claim against the Debtors for any use of cash collateral;

d) a requirement that the Debtors use (or are deemed to use) any unencumbered cash on hand from time to time (including for purposes of the Carve-Out) before using any cash subject to the lien of JPMorgan;

e) a requirement that any otherwise unencumbered cash proceeds hereafter generated by the Debtors from the sale or disposition of property be used to replenish any cash collateral used by the Debtors;

f) the payment of JPMorgan's reasonable counsel and professional fees;

g) during the interim period, a prohibition against loans or transfers to any non-Debtor affiliate of the Debtors of cash collateral without a further order of the Court or the written agreement of JPMorgan, and

h) an undertaking by the Debtors to use reasonable best efforts to deliver to JPMorgan (i) a reasonably detailed proposed budget to JPMorgan sufficiently in advance of any further request to use cash collateral and (ii) a schedule of all unencumbered assets owned by the Debtors.

4.     For now, it is critical that the Debtors provide the maximum possible adequate protection under the circumstances to JPMorgan because JPMorgan's interests are at significant risk. The Proposed Cash Collateral Order does not provide for appropriate protection in these circumstances and, as proposed, could allow the complete dissipation of JPMorgan's cash collateral.

# BASIS FOR RELIEF

### A.     The Debtors Bear the Burden of Showing that
### The Senior Secured Lenders Are Adequately Protected

5.     A secured creditor's interest in collateral is entitled to adequate protection under section 363(e) of the Bankruptcy Code.  This section of the Bankruptcy Code recognizes that property interests of secured creditors are entitled to protection under the Fifth Amendment and "insure[s] that the secured creditor receives the value for which he bargained." S. Rep. No. 95-989, at 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5839; accord H.R. Rep. No. 95-595, at 303 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6295; see United Sav. Assoc. of Tex. v. Timbers  of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.), 793 F.2d 1380, 1397 (5th Cir. 1986), aff'd, 484 U.S. 365 (1988) ("Although the stay temporarily prevents that aspect of the bargain from being fulfilled, a creditor should not be prejudiced by a debtors' continued use of collateral during the proceeding.  That bargain must be protected by compensating for a decline in the value of the collateral through its use during the pendency of the stay."); see also In re O.P. Held,  Inc., 74 B.R. 777, 782-84 (Bankr. N.D.N.Y. 1987) (holding that secured lender must be assured of the maintenance and recoverability of its lien, and that debtor must prove that secured creditor will realize the value of its bargain).

6.          Under section 361 of the Bankruptcy Code, adequate protection can take the form of, among other things, periodic cash payments, additional or replacement liens, or such other relief as will provide the "indubitable equivalent" of the secured creditor's interest in the collateral.  The law is clear that section 361 of the Bankruptcy Code does not limit adequate protection to the enumerated examples, and courts have the authority to fashion adequate protection as they deem appropriate under the circumstances. See, e.g., In re O.P. Held, Inc., 74

B.R. at 782 (noting that section 361 "has been consistently interpreted as not containing an exclusive list" of forms of adequate protection).

7. The Debtors bear the burden of proving by clear and convincing evidence that the lenders are adequately protected. <u>See</u> 11 U.S.C. § 363(p)(1); <u>see also</u> <u>In re Polzin,</u> 49 B.R. 370, 371-72 (Bankr. D. Minn. 1985) ("[D]ue to the fact that the collateral is consumed or used up in a § 363 context and the creditor's use is not merely delayed as in a § 362 context, the adequate protection standard is a strict one. . . . It is the Debtor's burden to demonstrate that the secured party is adequately protected.") (citations omitted); <u>In re O.P. Held, Inc.,</u> 74 B.R. at 784 (holding that debtor requesting court authorization for use of cash collateral "must prove by clear and convincing evidence that the secured creditor will realize the value of its bargain in light of all the facts and circumstances of the case" (quoting <u>N. Trust Co. v. Leavell (In re Leavell)</u>, 56 B.R. 11, 13 (Bankr. S.D. Ill. 1985))).

**B. The Bankruptcy Code Provides for Special
<u>Protections For The Use Of Cash Collateral</u>**

8. Funds on deposit with JPMorgan that are subject to setoff rights clearly fall within the definition of "cash collateral" under section 363(a) of the Bankruptcy Code. <u>See</u> 11 U.S.C. § 363(a) (defining "cash collateral" to include "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property").

9. The Bankruptcy Code provides special protections to ensure that secured creditors are not deprived of their interests in cash collateral by the unauthorized use thereof. <u>See</u>, <u>e.g.</u>, <u>In re Kleather,</u> 208 B.R. 406, 416 (Bankr. S.D. Ohio 1997) (noting that, in enacting section 363 of the Bankruptcy Code, Congress gave "special treatment to 'cash collateral'

. . . in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the Debtor") (quoting <u>In re Mickler,</u> 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981)).  Consequently, although section 363(c)(1) otherwise permits a debtor to use property of the estate in the ordinary course of business without notice and a hearing, section 363(c)(2) prohibits a debtor from using cash collateral for any purpose without first obtaining court approval or the consent of the secured lender. <u>See</u> 11 U.S.C. § 363(c)(2).

10.     Critically, a court is prohibited from authorizing non-consensual use of cash collateral unless the secured party's interest therein is adequately protected. <u>See</u> 11 U.S.C. § 363(e) (providing that a court "shall", upon request by an entity with an interest in property proposed to be used, sold or leased by a debtor, "prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."); <u>see, e.g.,</u> <u>Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.),</u> 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary – it states that the court 'shall' grant the relief specified, at any time, on request of the secured entity.").

11.     Moreover, "[t]he standard of adequate protection to be afforded a creditor when its cash collateral is being used should be a high one. . . . To ask a creditor to release cash requires a strong likelihood of return." <u>In re Berens,</u> 41 B.R. at 528.  Courts have noted that the volatile character of cash collateral entitles lienholders to special protections under the Bankruptcy Code. <u>See,</u> <u>e.g.,</u> <u>In re Kleather,</u> 208 B.R. at 416 (noting that cash collateral is treated specially "for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards. . . ." (quoting <u>In re Mickler,</u> 9 B.R. at 123); 3 COLLIER ON BANKRUPTCY ¶363.03[4][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) (noting the "unique nature of cash collateral, and the risk to the

entity with an interest in such collateral, arising from the dissipation or consumption of the collateral").

   12.  Finally, any substitute adequate protection offered in lieu of cash must be of the "most indubitable equivalence" that "must both compensate for present value and insure the safety of the principal." <u>Crocker Nat'l Bank v. Am. Mariner Indus., Inc. (In re Am. Mariner Indus.  Inc.)</u>, 734 F.2d 426, 433 (9th Cir. 1984), <u>abrogated on other grounds by United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc., Ltd.</u>, 484 U.S. 365, 368, 382 (1988); <u>see also Aetna  Realty Investors, Inc.</u> v. <u>Monarch Beach Venture, Ltd (In re Monarch Beach Venture, Ltd.)</u>, 166 B.R. 428, 434 (C.D. Cal. 1993) (noting that an indubitable equivalent "(1) provides the creditor with the present value of its claim, and (2) insures the safety of its principle [sic]").

### C.  The Court Should Restrict The Use Of Cash Collateral As Proposed Herein

#### 1. The Protections Proposed by the Debtors Are <u>Insufficient Under the Circumstances</u>

   13.  There is a lot of uncertainty surrounding these cases.  The Debtors have had virtually no time to plan for a filing and have no reliable basis for predicting the extent to which creditors may expect to see a recovery here.  What JPMorgan proposes—an interim, short term use of cash collateral, subject to a cap and the protections described above—is especially appropriate here.   There is a real risk that every dollar of cash collateral spent as the Debtors propose will be potentially lost if the Proposed Cash Collateral Order is entered.  The Motion proposes no cap on spending on, no restrictions on the entities to whom cash may be transferred, and unreasonable limits on the substitute liens proposed for JPMorgan.  JPMorgan is willing to work with the Debtors, but, in these circumstances, the Debtors have to recognize their burden of giving JPMorgan as much adequate protection as they can provide.

## 2. The Court Should Not Allow Use of Cash Collateral to Pay for Administrative Expenses or Order a Carve-Out

14.     The Debtors request a carve-out for the Debtors' professionals of $4 million on top of accrued fees and expenses, which would apply if these cases fail and there are insufficient unencumbered assets to pay administrative expenses in a liquidation. JPMorgan does not consent to allow its collateral to backstop payment of the Debtors' administrative expenses to this extent.

15.     Generally, secured lenders' cash collateral may only be used to pay administrative expenses if the secured lender consents. See Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortg. Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61, 69 (2d Cir. 1998) ("[A]bsent an agreement to the contrary, a secured creditor's collateral may only be charged for administrative expenses, including attorney's fees, to the extent these expenses directly benefited that secured creditor."); see also In re Cal. Webbing Indus., Inc., 370 B.R. 480, 486 (Bankr. D.R.I. 2007) (refusing to use secured creditor's cash collateral to pay legal fees for the debtor and creditors' committee where the secured creditor did not consent to such use of its collateral in the cash collateral stipulation); cf. Borrego Springs Bank, N.A. v. Skuna River Lumber, L.L.C. (In re Skuna River Lumber, LLC), 564 F.3d 353, 355 (5th Cir. 2009) ("Generally, administrative expenses . . . are satisfied out of unencumbered assets in the bankruptcy estate.").

16.     The Bankruptcy Court for the Eastern District of Pennsylvania explained carve outs as follows:

> The term "carve out" is one of those uniquely bankruptcy phrases . . . that appears nowhere in the bankruptcy statute but connotes definite meaning to parties. It is an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out of its lien position. [ ] Carve outs are . . . common in Chapter 11 cases in favor of debtor's attorneys as part of cash collateral agreements. [ ] In . . .

these circumstances, it is essential to note that the carve out is a product of agreement between the secured party and the beneficiary of the carve out. As the Second Circuit stated:

> [] The Code thus deliberately protects and preserves the interests of secured creditors in property in which they have a security interest, and accordingly takes the concept of adequate protection very seriously. The Code also establishes that a secured creditor's collateral may only be diminished to the extent that the secured creditor waives its right to the protections afforded by the Code, or to the extent that the expense priority directly confers a benefit on the secured creditor.

(citing [Blackwood Assocs., 153 F.3d] at 68). Reasoning thusly, the Court refused debtor's counsel demand that it be paid from cash collateral returned to the mortgage lender when the debtor failed to meet the terms of the cash collateral stipulation. This opinion underscores the consensual underpinnings of the carve-out concept.

In re White Glove, No. 98-12493, 1998 WL 731611, at *6 (Bankr. E.D. Pa. Oct. 14, 1998) (emphasis added) (footnotes omitted). JPMorgan does not consent to the proposed carve out set forth in the Proposed Cash Collateral Order. Rather, JPMorgan will agree to the form of carve out (subject to approval of all of the terms set forth therein) in the JPM Proposed Cash Collateral Order.

## CONCLUSION

WHEREFORE, JPMorgan respectfully requests that the Court either (i) deny the

Debtors' Motion, or (ii) enter the JPM Proposed Cash Collateral Order.

Dated: New York, New York
      November 1, 2011

                                  SIMPSON THACHER & BARTLETT LLP
                                  Attorneys for JPMorgan Chase Bank, N.A.


                                  By:   /s/ Peter V. Pantaleo
                                        Peter V. Pantaleo
                                        Sandy Qusba
                                        Morris J. Massel

                                  425 Lexington Avenue
                                  New York, New York 10017
                                  (212) 455-2000

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                          :
   In re                          :        Chapter 11
                                          :
MF GLOBAL HOLDINGS, LTD., et al.,         :        Case No. 11-15059 (MG)
                                          :
                                          :        (Joint Administration Pending)
                 Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), AND 363(e) AND
BANKRUPTCY RULES 2002, 4001, 6003, 6004 AND 9014 (I) AUTHORIZING THE
DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE
PROTECTION TO THE LIQUIDITY FACILITY LENDERS, AND (III) SCHEDULING
A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

Upon the motion, dated October 31, 2011 (the "Motion") of MF Global Holdings

Ltd. and MF Global Holdings Ltd. and MF Global Finance USA Inc., as debtors and debtors-in-

possession (collectively, the "Debtors") for entry of an order (i) authorizing the Debtors' use of

"cash collateral" (as defined in section 363(a) of the Bankruptcy Code, the "Cash Collateral");

(ii) providing adequate protection to JPMorgan Chase Bank, N.A., in its individual capacity and

in its capacity as agent for the Liquidity Facility Lenders[1] ("JPM")[1] for any diminution in value

of their respective interests its interest in the Cash Collateral; and (iii) scheduling a final hearing

(the "Final Hearing") to consider the relief requested in the Motion and the entry of a Final Order

(as defined herein), all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and

1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the

Debtors having provided notice of the Motion and Hearing (as defined below) to: (a) the United

---

[1]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion. The
term "Debtors" shall not include any subsequently filed entity unless otherwise consented to by JPM.

States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) counsel for the agents under the Debtors' prepetition Liquidity Facility; (f) the indenture trustee for each of the Debtors' outstanding bond issuances; and (g) the parties included on the Debtors' list of fifty (50) largest unsecured creditors (collectively, the "Notice Parties"); and the Court having held a hearing to consider the requested relief (the "Hearing"); and upon the Abelow Declaration, the record of the Hearing, and all of the proceedings before the Court; the Court having found and determined that the requested relief is in the best interests of the Debtors, their estates, creditors, and all parties in interest, that the Debtors have provided due and proper notice of the Motion and that Hearing and no further notice is necessary; and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.      Petition Date:  On October 31, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court") thereby commencing these cases (the "Chapter 11 Cases").

B.      Debtors in Possession:  The Debtors are continuing to manage and operate their business and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      Jurisdiction and Venue:  This Court has core jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

888944 Chicago Server 2A - MSW

D.     <u>Party with Interest in Cash Collateral</u>: ~~JPMorgan Chase Bank, N.A.~~JPM, on its own behalf and on behalf of the Liquidity Facility Lenders, acting in its capacity as the Liquidity Facility Agent, has an interest in the Cash Collateral to the extent that funds on deposit with the Liquidity Facility Agent or any of the Liquidity Facility Lenders as of the Petition Date may be subject to rights of setoff or any other rights under applicable law.  The Court is not by this Order making any finding of fact as to whether any of the Debtors' particular cash or securities on deposit or maintained by the Debtors in any account or accounts with JPM or any of the Liquidity Facility Lenders constitutes cash collateral of JPM or such Liquidity Facility Lenders within the meaning of section 363(a) of the Bankruptcy Code and this Order is without prejudice to any of the rights, remedies and privileges of JPM and/or the Liquidity Facility Lenders, including with respect to JPM and its affiliates' right to ultimately setoff and apply amounts against one or more obligations owing to them.

F.     Good Faith.  The terms of the use of the Cash Collateral have been the subject of negotiations conducted in good faith and at arm's length among the Debtors and JPM, and, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, JPM is hereby found to be an entity that has acted in "good faith" in connection with the negotiation and entry of this Order, and is entitled to the protection provided under section 363(m) of the Bankruptcy Code.

F.     ~~E.~~ <u>Necessity of Relief Requested</u>.  In the event ~~the Liquidity Facility Agent~~JPM were to have the right to, and were to exercise, any purported setoff rights against available cash or securities owned by the Debtors, the Debtors allege that they would not have sufficient available sources of working capital and financing to operate their business in the ordinary course of business or to maintain their property without the use of Cash Collateral.  Without access to the cash and securities that may be asserted to be Cash Collateral, the Debtors' allege that the

3

continued operation of the Debtors' business would not be possible and immediate and irreparable harm would result to the Debtors, their estates and creditors, and the possibility for a successful outcome in these Chapter 11 Cases, would be gravely jeopardized. ~~The~~Based on the Debtors' allegations, the relief requested in the Motion is, therefore, necessary, essential, and appropriate for the continued operation of the Debtors' business, and to facilitate the management and preservation of the Debtors' property. Entry of this ~~Interim~~ Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

G. ~~F.~~ Final Hearing. At the Final Hearing (defined herein), the Debtors will seek approval of the relief requested in the Motion for the proposed use of Cash Collateral arrangements on a final basis pursuant to a final order in form and substance satisfactory to JPM (the "Final Cash Collateral Order"), notice of such Final Hearing will be provided in accordance with this ~~Interim~~ Order.

H. ~~G.~~ Notice. The Debtors have made reasonable efforts to afford appropriate notice ~~possible notice~~ of the Interim Hearing and the emergency relief requested in the Motion to the Notice Parties, and under the circumstances, such notice provided to the Notice Parties is good and sufficient under the circumstances to permit the interim relief set forth in this ~~Interim~~ Order, and no other or further notice of the relief sought at the Hearing and the relief granted herein is necessary or shall be required.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. Motion Granted. The Motion is granted, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this ~~Interim~~ Order.

4

2.    <u>Authorization to Use Cash Collateral.</u>  ~~The~~Subject to paragraph 3, the Debtors are authorized to use ~~all such~~ Cash Collateral for the period (the "<u>Specified Period</u>") from and including the Petition Date through the ~~date on which~~earlier of (x) November 11, 2011; provided that such date may be extended by JPM subject to its prior consent and upon the Debtors' delivery of a cash budget in form, substance and scope satisfactory to JPM and (y) the date of entry of the Final Cash Collateral Order ~~becomes a final, nonapppealable order~~.  This authorization ~~includes, but~~ is ~~not~~ limited to~~,~~ using Cash Collateral to (a) ~~maintain their operations and provide funding to affiliates (whether Debtors or non-Debtors), consistent with their prepetition practices as set forth in the Cash Management Motion and to the extent such motion is granted, (b) pay certain prepetition obligations as further described in the Debtors' "First Day" motions filed substantially contemporaneously herewith and authorized pursuant to the "first day" orders approving the same, and (c~~fund necessary expenditures of the Debtors to avoid irreparable injury, and (b) pay certain postpetition obligations in accordance with ~~the Motion.~~this Order.  Notwithstanding anything herein to the contrary, (x) not more than $[_____][3] shall be used by the Debtors during the Specified Period and such funds shall not be used to fund any non-Debtor entity and (y) prior to using any Cash Collateral (including without limitation for purposes of the Carve-Out), the Debtors shall use unencumbered cash to the full extent thereof (and such unencumbered cash shall be deemed used prior to the use of any Cash Collateral).

3.    <u>Termination</u>. The authorization for the Debtors to use Cash Collateral shall automatically terminate ~~at~~on the earlier of (x) the expiration of the Specified Period.~~ Nothing in this Interim~~, (y) any of the cases being dismissed or converted to a chapter 7 case, or a chapter 11 trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating

---

[3]  Amount to be agreed upon.

888944 Chicago Server 2A - MSW

to the operation of the businesses of the Debtors (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) being appointed in any of the cases and (z) the entry of an order reversing, amending, supplementing, staying, vacating or otherwise modifying this Order without JPM's prior consent.  Nothing in this Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order or another "First Day" order of the Court, with the prior written consent of the Prepetition Lender whose collateral is sought to be used by the Debtors JPM.

4.       Adequate Protection.  As a condition for the use of any cash that is Cash Collateral, and as adequate protection to the extent of any decrease in such cash, including as a consequence of the Debtors' use thereof in accordance with this Order, JPM shall receive:

(a)              Superpriority Claims.  Allowed senior administrative expense claims (the "Superpriority Claims") against the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, as provided under section 507(b) of the Bankruptcy Code, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided that the Superpriority Claims shall be subject to the Carve-Out.[4]

(b)              Adequate Protection Liens.  Effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of

_____

[4]   Notwithstanding the Motion, for the purposes of this Order, the "Carve-Out" means (i) any fees owed to the United States Trustee and (ii) any accrued but unpaid professional fees not to exceed [amount to be agreed upon].

888944 Chicago Server 2A - MSW

security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by JPM of any property, the following security interests and liens are hereby granted to JPM, for its own benefit and the benefit of the Liquidity Facility Lenders, subject only to the Carve-Out (all property identified in clauses (a) and (b) below being collectively referred to as the "Adequate Protection Collateral"; and all such liens and security interests granted to JPM, for its benefit and for the benefit of the Liquidity Facility Lenders, pursuant to this Order, the "Adequate Protection Liens"):

(i)     First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property in which the Debtors have an interest, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), including, without limitation, any and all avoidance actions, unencumbered cash, intercompany indebtedness owed by one or more non-debtor entities to either or both Debtors (including, without limitation, any and all amounts owed by MF Global Inc. to each Debtor), accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of each Debtor and the proceeds of all of the foregoing; provided that, the Debtors shall not be required to pledge in excess of 65% of the capital stock of their direct foreign subsidiaries or any of the capital stock or interests of indirect foreign subsidiaries (if

7

adverse tax consequences would result to the Debtors) or other assets that would be unlawful to pledge as determined by a final order of a court of competent jurisdiction.

      (ii)                      Liens Junior to Existing Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property in which the Debtors have an interest, whether now existing or hereafter acquired and all proceeds thereof, that is subject to valid, perfected and unavoidable liens (if any) in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

      (c)                     *Liens Senior to Other Liens*.  The Adequate Protection Liens shall not be (i) subject or subordinate to any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

      (d)                     *Replenishment of Cash Collateral*.  The Debtors shall immediately use, and cause their subsidiaries and affiliates to immediately use (to the extent such affiliates or subsidiaries are not subject to administrative or insolvency proceedings), any unencumbered cash to replenish, on a dollar for dollar basis, any Cash Collateral used by the Debtors.

      (e)                     *Fees and Expenses*.  JPM shall receive from the Debtors reimbursement of all fees and expenses incurred or accrued, whether prior to or after the Petition Date, by JPM, including without limitation, the reasonable fees and disbursements of financial advisors and counsel to JPM, in each case, now or hereafter retained by JPM and whether retained in JPM's

8

individual capacity or as Liquidity Facility Agent. None of the fees and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. The Debtors shall pay the undisputed portion of the fees and expenses provided for in this paragraph promptly (but no later than ten (10) days) after invoices for such fees and expenses shall have been submitted to the Debtors.

(f) *Budget*. The Debtors shall provide as soon as practicable, and in any event on or before the termination of the Specified Period, (a) a cash budget in form, substance and scope satisfactory to JPM and such reporting or information with respect to the Debtors and their affiliates as JPM may reasonably request from time to time, and (b) a reasonably detailed schedule of unencumbered assets of the Debtors. In addition, the Debtors shall permit representatives, agents and/or employees of JPM to have reasonable access to the Debtor and its affiliates' premises and non-privileged records during normal business hours and shall cooperate, consult with and provide to such persons all such non-privileged information as they may reasonably request from time to time.

5. 4. Adequate Protection. As a condition for the use of any cash that is Cash Collateral, and as adequate protection to the extent of the diminution in value of such interest as a consequence of the Debtors' use thereof in accordance with this Order, the Liquidity Facility Agent shall receive continuing, valid, binding, enforceable, and automatically perfected first priority postpetition security interests in, and liens on all other unencumbered property of the Debtors, including unencumbered security interests held by the Debtors (the "Conditional Adequate Protection Liens" and the collateral securing such Conditional Adequate Protection

9

Liens, the "Replacement Collateral"); provided, however, such Conditional Adequate Protection Liens shall (a) not include causes of actions held by the Debtors' estate under chapter 5 of the Bankruptcy Code, and the proceeds thereof and (b) shall be subject to the Carve-Out.[3]  Such Conditional Confirmation and Priority of Adequate Protection Liens.  The Adequate Protection Liens shall be senior to all other security interests in, liens on, and claims against any of the Adequate Protection Collateral.  The Adequate Protection Liens shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in these Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of either of these Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing.  The Adequate Protection Liens shall be (i) in continuation of and in addition to all liens and security interests now existing in favor of the Liquidity Facility Lenders and not in substitution therefor; (ii) effective as of the Petition Date; and (iii) deemed duly perfected without the necessity of filing in any county or state recorders office or elsewhere, any additional documents or notices to perfect such postpetition liens and security interests.  Such Conditional Adequate Protection Liens granted pursuant to this Order shall be subject to any prepetition, valid and perfected unavoidable liens, if any, existing prior to the Petition Date.  Notwithstanding anything herein to the contrary, all rights of the Debtors to contest the extent, validity, priority or perfection of any and all liens (other than Adequate Protection Liens), or any right of setoff, asserted by any party in these Cases are preserved and nothing herein shall prejudice any party asserting any such liens or rights to setoff or the validity, priority or perfection thereof.

---

[3]  As set forth in the Motion, "Carve-Out" means (i) any fees owed to the United States Trustee and (ii) any accrued but unpaid professional fees as of the date upon which the Liquidity Facility Agent exercises any setoff right or other remedies, plus (iii) $4 million dollars.

5. ~~Priority of Adequate Protection Liens.~~ The ~~Conditional~~ Adequate Protection ~~Liens shall be senior to all other security interests in, liens on, and claims against any of the Replacement~~ Collateral. ~~The Adequate Protection Liens shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in these Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of either of these Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing.~~

6. Waivers. Except to the extent of the Carve-Out, no expenses of administration of the cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Cash Collateral or the Adequate Protection Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of JPM and no such consent shall be implied from any other action, inaction, or acquiescence by JPM.

7. Preservation of Rights. (a) If an order dismissing any of the cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (x) the Superpriority Claims and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Order until all adequate protection obligations shall have been paid and satisfied in full (and that such Superpriority Claims and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all persons); and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

11

(b) If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any adequate protection obligations incurred prior to the actual receipt of written notice by JPM of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral or any adequate protection obligations incurred or Adequate Protection Liens granted by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by JPM of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and JPM shall be entitled to all of the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code with respect to all uses of Cash Collateral and all adequate protection obligations and Adequate Protection Liens.

8.   ~~6.~~ Modification of Automatic Stay. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this ~~Interim~~ Order, including, without limitation, to: (a) permit the Debtors to grant the ~~Conditional~~ Adequate Protection Liens and incur the Superpriority Claims; (b) permit the Debtors to perform such acts as ~~the Liquidity Facility Agent~~ JPM may request in its sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to ~~the Liquidity Facility Agent~~ JPM under the terms of this ~~Interim~~ Order; and (d) authorize the Debtors to pay, and ~~the Liquidity Facility Agent~~ JPM to retain and apply, any payments made in accordance with the terms of this ~~Interim~~ Order.

12

9. ~~7.~~ No Third Party Rights. Except as explicitly provided for herein, this ~~Interim~~ Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

10. ~~8.~~ Binding Effect of ~~Interim~~ Order. Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this ~~Interim~~ Order shall become valid and binding upon and inure to the benefit of the Debtors, JPM, the Liquidity Facility Lenders, all other creditors of any of the Debtors, any committee appointed in these Chapter 11 Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in either of these Chapter 11 Cases, or upon dismissal of either of these Chapter 11 Cases. In the event of any inconsistency between the provisions of this ~~Interim~~ Order and any other order (including any "First Day" order), the provisions of this ~~Interim~~ Order shall govern and control. Any payments to be made under any order (including any "First Day" order) shall be made in accordance with this ~~Interim~~ Order.

11. ~~9.~~ Final Hearing. The Final Hearing will be held by this Court on _____, 2011 at _____, __.m. (prevailing Eastern Time). **[NTD: Provide that objections to be served on STB].**

12. ~~10.~~ Effect of this ~~Interim~~ Order. This ~~Interim~~ Order shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

~~11.~~

13

Retention of Jurisdiction. This Court hereby retains jurisdiction to hear and

888944 Chicago Server 2A - MSW

13. **Retention of Jurisdiction.** This Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: New York, New York
_____ \_\_\_, 2011

_____
UNITED STATES BANKRUPTCY JUDGE

888944 Chicago Server 2A - MSW