**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    **FOR PUBLICATION**

In re

    MF GLOBAL HOLDINGS LTD., *et al.*,                Case No. 11-15059 (MG)

                           Debtors.

## MEMORANDUM OPINION DENIYING MOTION TO DIRECT
## THE DEBTORS' ESTATES TO BE ADMINISTERED PURSUANT
## TO 11 U.S.C. §§ 761-767 AND 17 C.F.R. § 190

*A P P E A R A N C E S:*

FORD MARRIN ESPOSITO WITMEYER & GLESER, L.L.P.
*Counsel for Sapere Wealth Management LLC,*
*Granite Asset Management and Sapere CTA Fund, L.P.*
Wall Street Plaza
New York, New York 10005
By:    John J. Witmeyer III, Esq.
         Jon R. Grabowski, Esq.

HUGHES HUBBARD & REED LLP
*Counsel for James W. Giddens, Trustee for the SIPA Liquidation of MF Global Inc.*
One Battery Park Plaza
New York, New York 10004
By:    James B. Kobak, Jr., Esq.
         Jeffrey S. Margolin, Esq.

MORRISON & FOERSTER LLP
*Proposed Counsel for Louis J. Freeh, Chapter 11 Trustee*
1290 Avenue of the Americas
New York, New York 10104
By:    Brett H. Miller, Esq.
         Lorenzo Marinuzzi, Esq.

DEWEY & LEBOEUF LLP
*Counsel for the Statutory Creditors' Committee of MF Global Holdings Ltd., et al.*
1301 Avenue of the Americas
New York, New York 10019
By:    Martin J. Bienenstock, Esq.
         Irena Goldstein, Esq.

COMMODITY FUTURES TRADING COMMISSION
3 Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
By:   Dan M. Berkowitz, Esq.
      Jonathan L. Marcus, Esq.
      Robert B. Wasserman, Esq.

MARK SCHLACHET
*Counsel for Sangani Family LP*
3637 South Green Road, 2nd Floor
Cleveland, Ohio 44122
By:   Mark Schlachet, Esq.

JAMES L. KOUTOULAS
*Counsel for the Commodity Customer Coalition*
190 S. LaSalle St., #3000
Chicago, IL 60603


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

The bankruptcy proceedings of MF Global Holdings Ltd. and its debtor-affiliates have fostered a great deal of doubt in the commodities-trading industry. And, this is the not the first time—nor will it likely be the last—that a group of commodities customers has sought relief which the Court cannot provide under the Bankruptcy Code. A group of commodities customers now seeks to have the Court administer the chapter 11 cases of MF Global Holdings, Ltd. and its debtor-affiliates pursuant to subchapter IV of chapter 7 of the Bankruptcy Code and Part 190 of regulations promulgated by the Commodity Futures Trading Commission (the "CFTC"). For the reasons explained below, the Court does not have the statutory authority to grant the relief requested and, even if it did, the Court would decline to do so. Additionally, as discussed below, the Court will not grant the alternative relief requested allowing private-party discovery at this time pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.

2

## BACKGROUND

Pending before the Court is the *Motion by Sapere Wealth Management, LLC, Granite Asset Management and Sapere CTA Fund, L.P. To Direct the Debtors' Estate* [sic] *to be Administered Pursuant to 11 U.S.C. §§ 761-767 and 17 C.F.R. § 190* (collectively, the "Motion"). (ECF Doc. # 278.)[1] Sapere Wealth Management LLC, Granite Asset Management and Sapere CTA Fund, L.P. (collectively, "Sapere"), commodity customers of MF Global, Inc. ("MFGI"), the subsidiary, registered broker-dealer, and futures commission merchant of MF Global Holdings Ltd. ("MFGH"), seek an order directing James Giddens (the "SIPA Trustee") and Louis J. Freeh (the "Chapter 11 Trustee") to administer the estates of MFGH, MF Global Finance USA Inc., MF Global Capital LLC, MF Global Market Services LLC, and MF Global FX Clear LLC (the "Chapter 11 Debtors") pursuant to 11 U.S.C. §§ 761-767 and 17 C.F.R. § 190 ("Part 190"). According to Sapere, the "effect of this order will provide priority status to commodity customers to the extent of their segregated accounts at MFGI," which is currently being liquidated in a proceeding under the Securities Investor Protection Act ("SIPA") before this Court. (Mot. at 1.)

The Chapter 11 Trustee (ECF Doc. # 341), the statutory creditors' committee in the chapter 11 cases (the "Committee") (ECF Doc. # 339), and the CFTC (ECF Doc. # 342) filed objections to the Motion. The SIPA Trustee also filed a statement with respect to the Motion (the "SIPA Statement"). (ECF Doc. # 358.) Sapere filed a reply (the "Sapere Reply") to the objections. (ECF Doc. # 355.) Additionally, the Commodities Customer Coalition (ECF Doc. # 368) and the Sangani Family LP (ECF Doc. # 345) filed statements in support of the

---

[1] The Motion was first filed on December 5, 2011. (ECF Doc. ## 217, 218.) However, the Court declined to hear the Motion on shortened notice, and the Motion was re-filed and scheduled to be heard on January 19, 2012.

3

Motion. The Court held a hearing on the Motion on January 19, 2012 and took the Motion under submission. The Court now denies the Motion in its entirety.

## DISCUSSION

### A. The Relief Sought in the Motion

Sapere seeks an order directing that the Chapter 11 Debtors' cases be administered pursuant to 17 C.F.R. § 190.08(a)(1)(ii)(J) and 11 U.S.C. § 766(h). (Mot. at 7.) This administration would treat MFGI commodities customers that held segregated accounts as a customer class of the Chapter 11 Debtors, entitling them to receive payment from the Chapter 11 Debtors' estates of 100% of their segregated-account funds on a first-priority basis, ahead of all creditors of the Chapter 11 Debtors.

Sapere sets forth a number of bases for applying Part 190 and section 766 of the Bankruptcy Code to the Chapter 11 Debtors' cases. First, relying upon the United States Supreme Court's decision in *United States v. Bestfoods,* 524 U.S. 51, 62 (1998), Sapere argues that the Court may pierce the corporate veil between MFGI and MFGH. Second, Sapere asserts that section 2(a)(1)(b) of the Commodity Exchange Act (the "CEA") subjects the Chapter 11 Debtors to CFTC regulations.[2] Finally, Sapere contends that when the Chapter 11 Debtors allegedly began accessing customer funds held by MFGI, they became *de facto* futures commission merchants ("FCMs"). Sapere does not cite any authority for its arguments other than the text of the relevant statutes.

---

[2] In relevant part, section 2(a)(1)(b) of the CEA states:

> The act, omission, or failure of any official, agent, or other person acting for a . . . corporation within the scope of his employment or office shall be deemed the act, omission, or failure of such . . . corporation . . . as well as such official, agent, or other person."

7 U.S.C. § 2(a)(1)(b).

4

Additionally, Sapere fails to allege any specific facts supporting its Motion and merely cites news articles that discuss the shortfall of MFGI customer money, a fact that has plagued these cases since their commencement. (*See* Mot., Ex. A.) Relying on those articles and the fact that customer money is missing, Sapere argues that "this is at least a *res ipsa loquitur* situation." (Mot. at 8.)

As an alternative to the relief it seeks in the Motion, Sapere requests that the Court allow it to conduct examinations of any party-in-interest relating to the relevant facts pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. According to Sapere, the proposed Rule 2004 examinations would cover: (1) the existence, amount and/or disposition of commodities customers' segregated account funds at MFGI; (2) the circumstances under which any such funds became missing and/or have not been 100% transferred post-petition to commodities customers owning those segregated accounts; and/or (3) the existence, description, nature, custody, condition, and location of any documents and the identity of persons who know of any matter relevant to the subject matter of the Motion.

The Court concludes that there is no legal basis for administering these cases pursuant to sections 761-767 of the Bankruptcy Code. With respect to the request to conduct Rule 2004 discovery, the request is denied at this time; the Justice Department, FBI, CFTC, SEC, SIPA Trustee, and Chapter 11 Trustee are all actively investigating the collapse of MFGI and MFGH. Now is definitely not the time for discovery by private parties, such as Sapere.

### B. The Bankruptcy Code Bars the Relief Sought in the Motion

Section 766 of the Bankruptcy Code is located in subchapter IV of chapter 7 of the Code. It "applies only in a case under such chapter concerning a commodity broker" and does not apply in cases under chapter 11 or in cases under chapter 7 that do not "concern[] a commodity

5

broker." 11 U.S.C. § 103(d). Therefore, subchapter IV of chapter 7 of the Bankruptcy Code cannot apply to the Chapter 11 Debtors' cases unless (1) the cases of the Chapter 11 Debtors are converted to cases under chapter 7 and (2) the Chapter 11 Debtors are "commodity brokers" as defined by the Bankruptcy Code, the CEA, or Part 190.

To obtain the relief requested, Sapere must show that the Chapter 11 Debtors' cases should be converted to cases under chapter 7 (relief not sought in the pending Motion) and then establish that the Chapter 11 Debtors were acting as "commodity brokers." The Court cannot, as Sapere argues, apply section 766 to the Chapter 11 Debtors' cases pursuant to section 105 of the Bankruptcy Code without converting these cases to cases under chapter 7. Such an application would directly violate the express requirements of section 103(d) of Bankruptcy Code. *See* 11 U.S.C. § 103(d) ("Subchapter IV of chapter 7 of this title applies only in a case under such chapter concerning a commodity broker."). As the court held in *In re Dairy Mart Convenience Stores, Inc.*, "[s]ection 105(a) limits the bankruptcy court's equitable powers, 'which must and can only be exercised within the confines of the Bankruptcy Code.'" 351 F.3d 86, 91-92 (2d Cir. 2003) (internal citations omitted). Section 105 does not "authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Id.* (citing *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).

**C. Conversion to Chapter 7 Is Not Warranted at This Time**

Although Sapere has not moved to convert the Chapter 11 Debtors' cases to cases under chapter 7, the Court has considered whether conversion is warranted at this time. Under section 1112(b) of the Bankruptcy Code, the Court may dismiss a chapter 11 case or convert it to a case under chapter 7 "for cause" as long as it is in the best interests of both the creditors and the

6

estate. 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011). Subsection (b)(4) contains sixteen examples of events that may constitute cause. This list, however, is "not exhaustive" and courts are free to consider other factors. *See, e.g.*, *In re Ameribuild Const. Mgmt., Inc.*, 399 B.R. 129, 131 n.3 (Bankr. S.D.N.Y. 2009) (citing legislative history).

The moving party has the burden of demonstrating cause for dismissal or conversion. *In re Loco Realty Corp.*, No. 09-11785, 2009 WL 2883050, at *2 (Bankr. S.D.N.Y. June, 25 2009) (Gonzalez, J.). "Once the movant has established cause, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate." 7 COLLIER ON BANKRUPTCY ¶ 1112.05[1]. Moreover, once cause has been established, dismissal and conversion are not the only two options before a court; a court may also appoint a trustee or examiner. *See* 11 U.S.C. § 1104(a)(3). The bankruptcy judge has wide discretion to determine whether cause exists to dismiss or convert a case under section 1112(b). *In re Kholyavka*, No. 08-10653DWS, 2008 WL 3887653, at *5 (Bankr. E.D. Pa. Aug. 20, 2008) (quoting H. REP. 595, 95th Cong., 1st Sess. 405 (1977)).

The Motion fails to establish or allege any facts that would constitute "cause" under section 1112(b). The Chapter 11 Debtors were acting as debtors-in-possession when the cases were filed. On November 21, 2011, the Committee and the Chapter 11 Debtors moved for the appointment of a chapter 11 trustee. (ECF Doc. # 131.) On November 25, 2011, Louis J. Freeh was appointed as the Chapter 11 Trustee. (ECF Doc. # 168.) The Court approved the appointment of the Chapter 11 Trustee to allay the fears and concerns of creditors of the Chapter 11 Debtors. (ECF Doc. # 170.) Although both MFGI and the Chapter 11 Debtors have ceased

operations and are winding-down their businesses, conversion would only increase the administrative expenses to the estates and decrease available recoveries for all creditors. For these reasons, the Court finds that cause does not exist to convert the chapter 11 cases to cases under chapter 7.

### D. The Chapter 11 Debtors Are Not "Commodity Brokers"

Even if the Court were to convert these cases to cases under chapter 7, the Chapter 11 Debtors' estates could not be administered under subchapter IV of chapter 7. Subchapter IV is specifically reserved for debtors who are "commodity broker[s]" under the Bankruptcy Code. *See* 11 U.S.C. § 103(d). Because the Chapter 11 Debtors do not fall under the definition of a "commodity broker," if the Chapter 11 Debtors' cases were converted to cases under chapter 7, subchapter IV would not apply to the Chapter 11 Debtors' cases.

Section 101(6) of the Bankruptcy Code provides two requirements for an entity to be considered a "commodity broker." Section 101(6) defines a commodity broker as, among other things, a "[1] futures commission merchant . . . [2] with respect to which there is a customer, as defined in section 761 of" the Bankruptcy Code. 11 U.S.C. § 101(6). Section 761(8) of the Bankruptcy Code provides that the term "futures commission merchant" shall have the meaning assigned to it in the CEA. The CEA defines an FCM as any entity that (1) solicits or accepts orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility and in connection therewith accepts money, securities, or property to margin, guarantee or secure any trades or contracts that result therefrom or (2) is registered with the CFTC as an FCM. *See* 7 U.S.C. § 1(a)(28). Section 761(9) of the Bankruptcy Code provides that a "customer" is an:

> (i) entity for or with whom such futures commission merchant deals and that holds a claim against such futures commission

8

> merchant on account of a commodity contract made, received, acquired, or held by or through such futures commission merchant *in the ordinary course of such futures commission merchant's business* as a futures commission merchant from or for the commodity futures account of such entity; or
>
> (ii) entity that holds a claim against such futures commission merchant arising out of -
>
> . . . .
>
>   (II) a deposit or payment of cash, a security or other property with such futures commission merchant for the purpose of making or margining such a commodity contract . . . .

11 U.S.C. § 761(9)(A) (emphasis added).

Thus, to be considered a commodity broker, Sapere must show that the Chapter 11 Debtors (1) solicited or accepted orders for the purchase or sale of a commodity, (2) accepted property to margin trades that result from the purchase or sale of a commodity and (3) had a "customer" in the ordinary course prior to its bankruptcy filing. Additionally, the Chapter 11 Debtors must have actually solicited and accepted customer funds in connection with *their specific* solicitation or acceptance procedures. Based on the foregoing, it follows that if customer funds were solicited and accepted by MFGI and then transferred to the Chapter 11 Debtors, the Chapter 11 Debtors would still not be considered an FCM or "commodity broker" under the Bankruptcy Code and the CEA.

Although "an entity may be determined to be a commodity broker for purposes of the commodity broker liquidation subchapter even though it is not registered with the CFTC as an FCM," the Motion fails to allege facts necessary for this determination. 6 COLLIER ON BANKRUPTCY ¶ 761.09[7]; *see also State Bank of Spring Hill v. Bucyrus Grain Co. (In re Bucyrus Co.)*, 127 B.R. 45 (D. Kan. 1988) (holding that an unregistered entity that accepted funds from customers for the purchase and sale of exchange-traded commodity futures contracts is an FCM,

with its "customers" being entitled to customer priority). Sapere provides no factual allegations to suggest that the Chapter 11 Debtors solicited or accepted orders for the purchase and sale of any commodity. Moreover, at the January 19 hearing, counsel to Sapere acknowledged that Sapere had no direct dealings with the Chapter 11 Debtors. In its Motion, Sapere merely alleges that the Chapter 11 Debtors were "accept[ing] money that FCM customers had deposited 'to margin, secured [sic], or guarantee any trades or contracts,' which the [Chapter 11 Debtors] used in futures activities." (Mot. at 7.) Sapere's Motion is supported only by conclusory allegations; there is no evidence before the Court that the Chapter 11 Debtors acted as FCMs and are thus subject to subchapter IV and the CEA.

### E. Rule 2004 Examination

Sapere's request for Rule 2004 discovery is denied. Numerous government agencies as well as the SIPA Trustee and the Chapter 11 Trustee are actively investigating the circumstances surrounding the collapse of MFGI and MFGH. Permitting private-party discovery at this time, either under Rule 2004 or the discovery rules applicable to contested matters, is unnecessary and would hinder the ongoing investigations. Under 15 U.S.C. § 78fff-1(d), "the SIPA Trustee has a duty to investigate the circumstances surrounding the failure of MFGI and report to the Court 'any facts with respect to fraud, misconduct, mismanagement, and irregularities,' as well as 'any causes of action available to the estate.'" (SIPA Statement ¶ 3.) The Court has already granted the SIPA Trustee the authority to conduct an independent investigation on missing customer property and all possible sources for recovery. (*See* Adv. Proc. No. 11-02790, ECF Doc. ## 34, 36.) If the SIPA Trustee finds improper transactions involving customer property between the Chapter 11 Debtors and MFGI, the SIPA Trustee can bring a number of causes of action under the Bankruptcy Code to recover missing funds. The SIPA Trustee is also investigating other

transactions and conduct, including potential claims and causes of action against the Chapter 11 Debtors, their principals, and affiliates. Additionally, the Court directed the Chapter 11 Trustee "to undertake a limited investigation and thereafter report to the Court on the narrow issue whether the funds on deposit in the [MF Global Finance USA Inc.] account at [JPMorgan Chase Bank, N.A.], as of the petition date, included 'customer property,' and if so, how much." (ECF Doc. # 272, at 6.) There may well be a time when private-party discovery is appropriate, but now is clearly not that time.

### F. Rules Governing Distributions to MFGI Customers Have Not Been Determined

It is important to emphasize that the denial of Sapere's Motion to administer these cases pursuant to sections 761-767 of the Bankruptcy Code does not determine the rules that apply to distributions from the Chapter 11 Debtors' estates to MFGI customers. Notably, the CFTC has argued that, pursuant to 17 C.F.R. § 190.08(a)(1)(ii)(G), "property that should have been segregated, but was not, or as to which segregation was not maintained, remains customer property subject to priority distribution." (ECF Doc. # 724 ¶ 2(c).) These issues may have to be resolved by the Court, but not in the guise of Sapere's Motion.

## CONCLUSION

For the reasons discussed above, the Court denies the Motion. Under the Bankruptcy Code, the Court does not have the power to grant the relief requested, and Sapere has failed to allege any facts to support its Motion.

Dated: February 1, 2012
      New York, New York

                                                                                                                               /s/Martin Glenn
                                                                                                         MARTIN GLENN
                                                                             United States Bankruptcy Judge