**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
In re                                               :    Chapter 11
                                                    :
MF GLOBAL HOLDINGS LTD., *et al.*,                  :    Case No. 11-15059 (MG)
                                                    :
                                                    :    (Jointly Administered)
                        Debtors.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## OMNIBUS RESPONSE TO THE OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE REGARDING APPLICATIONS FOR INTERIM COMPENSATION

Morrison & Foerster LLP ("**M&F**"), bankruptcy counsel to Louis J. Freeh (the "**Trustee**"), the chapter 11 trustee of the above-captioned debtors (the "**Debtors**"), Pepper Hamilton LLP ("**Pepper**"), as special counsel to the Trustee and Freeh Group International Solutions, LLC ("**FGIS**", and together with M&F and Pepper, "**Respondents**"), accountants to the Trustee, hereby provide the following response and additional information (the "**Response**") with respect to the *Omnibus Objection of the United States Trustee Regarding Fee Applications for Third Interim Awards of Compensation and Out-of-Pocket Expenses* (the "**Objection**") (Docket No. 1301) filed by the Office of the United States Trustee (the "**UST**") to the third interim fee applications of Respondents (the "**Applications**") (Docket Nos. 1219, 1226 and 1238) covering the period from October 1, 2012 through January 31, 2013 (the "**Fee Period**"). In support of the Response, Respondents respectfully state as follows:

### STATUTORY STANDARD AND BURDEN OF PROOF

1.     Section 330 of the Bankruptcy Code provides that "the court may award to a trustee … or a professional person employed under section 327 or 1103 . . .  reasonable compensation for actual, necessary services rendered by the trustee, … professional person, or attorney . . . ; and  . . .  reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

1

In the Second Circuit, the "necessary" standard in section 330 is given broad interpretation. *In re Mesa Air Group, Inc.*, 449 B.R. 441, 444 (Bankr. S.D.N.Y. 2011); *In re Kohl*, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009). Services are "necessary" if they benefit the estate. *Id.* (citing *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997)). The test considers whether the services provided were "reasonably likely to benefit the estate." *Id.* The test is objective, considering the services that a reasonable lawyer would have performed in the same circumstances. *Id.* (citing *In re Ames Dept. Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996)). Generally, if the services rendered were reasonably likely to benefit the estate, they should be compensable. *Ames Dep't Stores,* 76 F.3d at 72. Where there is an actual benefit to the estate, the services are clearly necessary and compensable under section 330(a)(1)(A) of the Bankruptcy Code. *See Keene Corp.,* 205 B.R. at 695.

2.    The applicant bears the burden of proof on its claim for compensation. *See, e.g., Houlihan Lokey Howard & Zukin Capital v. High River Ltd. P'Ship*, 369 B.R. 111, 115 (S.D.N.Y. 2007) (citing *Keene Corp.*, 205 B.R. at 695). However, "[a] party opposing a fee application must carry the burden of explaining what therein is unreasonable or, at least, what would be reasonable under the circumstances. Absent such evidence by the objectant, the opposition fails." *In re Blackwood Assocs., L.P.*, 165 B.R. 108, 112 (Bankr. E.D.N.Y. 1994).

3.    Because courts reviewing fee applications have the benefit of perfect hindsight, caution should be exercised to ensure that attorneys are not penalized for prosecuting actions that were reasonable at the time. *See In re The Korea Chosun Daily Times, Inc.*, 337 B.R. 758, 767 (Bankr. E.D.N.Y. 2005) (observing that while courts must exclude excessive and unnecessary expenditures of time when reviewing fee applications, courts "must not penalize attorneys by viewing the efforts of counsel with the benefit of '20/20 hindsight'"); *see also Mesa Air Group,*

449 B.R. at 444 ("[w]hether services are necessary is determined from the perspective of the time at which the services were rendered"). As Judge Bernstein opined, "[a] decision reasonable at first may turn out wrong in the end. The test is an objective one, and considers what services a reasonable lawyer or legal firm would have performed in the same circumstances." *In re CCT Comm'ns, Inc.*, 2010 WL 3386947, at *10 (Bankr. S.D.N.Y. Aug. 24, 2010); *Keene Corp.,* 205 B.R. at 696; *see also In re Cenargo Int'l., PLC,* 294 B.R. 571, 595-96 (Bankr. S.D.N.Y. 2003):

> The appropriate perspective for determining the necessity of the activity should be prospective: hours for an activity or project should be disallowed only where a Court is convinced it is readily apparent that no reasonable attorney should have undertaken that activity or project or where the time devoted was excessive. . . Thus, section 330(a)'s "benefit" and "necessary" criteria do not require a professional to be 100% successful. They are satisfied if a reasonable attorney would have believed at the time that a particular service would benefit the estate, taking into consideration the chances of success and the reasonably-projected attendant costs.

4.      Respondents submit that, except as otherwise noted herein, the Applications are sufficient to establish the reasonableness of their requested compensation and expenses and satisfy the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* effective January 30, 1996 (the "**Guidelines**"). Set forth below are additional disclosures and information that rebut or respond to each of the points raised in the Objection.

## <u>GENERAL RESPONSES</u>

5.      With over $41 billion in assets at the time of filing, the Debtors (together with MF Global Inc., the subject of a SIPA proceeding pending before this Court) were part of the largest "megacase" in 2011 and the eighth-largest in U.S. history. The Debtors' cases involve a variety of complex issues, sophisticated financial transactions, a multitude of legal and financial issues, and a number of parties located all over the world. In fact, the Trustee has filed more than 100

claims on behalf of the Debtors totaling over $3 billion against at least 10 different affiliates that are in liquidation or administration proceedings throughout the world.  The mammoth effort required by the Trustee to recover on those claims is made more difficult by incomplete records and often conflicting laws that govern the various proceedings.

6.       In light of the extraordinary strides made during the Debtors' chapter 11 cases to date, Respondents submit that the fees and expenses requested in the Applications were incurred in connection with services that provided a clear benefit to the Trustee, the Debtors' creditors and interest holders, and other parties in interest.  Respondents further submit that their Applications, including the time records appended thereto, provide sufficient information to ascertain the reasonableness of the fees for which Respondents seek allowance.

7.       Respondents understand, and take seriously, their obligation to provide complete and accurate time records sufficient to enable the Court to ascertain the reasonableness of the fees being requested, and spend a great deal of (unbilled) time ensuring that time entries are both succinct and descriptive in order to facilitate the Court's review.  Respondents, however, believe that, with respect to certain categories of the UST's fee objections, the UST has placed form over function.  Indeed, Respondents submit that, in large part, the reasonableness of the fees incurred by Respondents during the Fee Period speaks for itself.

8.       Respondents note that as part of their efforts to minimize the costs to the Debtors' estates, Respondents have staffed these cases as efficiently as possible.  Moreover, Respondents believe that all time billed provided a direct benefit to the Debtors' estates in that it was incurred in the furtherance of the Trustee's fiduciary obligations pursuant to sections 1106 and 1107 of the Bankruptcy Code.

ny-1086289

9.      Given the significant progress made during the Fee Period and that the joint plan of liquidation for the Debtors was approved by the Court and overwhelmingly supported by the Debtors' creditors and interest holders, Respondents request that the Court approve and authorize the payment of (a) the remaining 50% of the fees approved in the *Order Granting Applications for Allowance of Interim and/or Final Compensation and Reimbursement of Expenses* [Docket No. 963] (the "**Prior Interim Fee Order**"), and (b) 100% of the fees and expenses requested in the Applications, except as adjusted through agreement with the UST and as ordered by the Court.

## SPECIFIC RESPONSES

**I.    M&F**

10.     During the Fee Period, M&F played an integral part in the achievement of major milestones in the Debtors' chapter 11 cases.  First, M&F was an active participant in the "global settlement", which settled nearly all of the interestate claims between the Debtors and MF Global Inc., the Debtors and MF Global UK Ltd., and MF Global Inc. and MF Global UK Ltd.  The global settlement likely will result in the return of over $500 million to MF Global Inc. and ultimately over $1 billion to the creditors of the Debtors.  The global settlement avoided millions of dollars in litigation costs and likely expedited the return of funds to creditors by years when compared with the possibility of costly and protracted litigation regarding the issues surrounding the claims that were compromised.

11.     Second, M&F, with the aid of the other retained professionals in these cases, conducted nearly 40 interviews of former officers, directors and employees of the Debtors and their affiliates and reviewed over 100,000 pages of emails, reports, correspondence and other documents in furtherance of the Trustee's statutory duty pursuant to section 1106(a)(3) of the Bankruptcy Code to investigate the collapse of the MF Global worldwide enterprise and prepare

5

a report of that investigation, as required by section 1106(a)(4) of the Bankruptcy Code.  On

April 4, 2013, the Trustee filed his *Report of Investigation of Louis J. Freeh, Chapter 11 Trustee

of MF Global Holdings Ltd., et al.*, which details the Trustee's findings and focuses on the

underlying causes of the collapse of MF Global as a worldwide entity, as well as the roles and

actions of current and former officers and directors.

12.    Lastly, during the Fee Period, the Trustee joined as a co-proponent of a plan of

liquidation for the Debtors proposed by an *ad hoc* group of the Debtors' lenders.  M&F provided

important, up to date information and made substantial revisions to the plan and accompanying

disclosure statement. The Court approved the disclosure statement on February 19, 2013 and

confirmed the plan on April 5, 2013.

13.    In the Objection, the UST objects to the allowance of $389,793.30 in fees and

$113,856.72 in expenses.  It is noted at the outset that, as a matter of public interest, *after* M&F

began working for the Trustee, M&F agreed to a 10% discount of its normal billing rates.  M&F,

along with the Trustee and several of his other professionals, agreed to the discount to address

concerns of potential overlap and to reduce costs to the estates at a time where there was a belief

that customers of MF Global Inc. would *not* eventually be paid in full.  In total, M&F has

foregone $1,641,885.40 in fees ($444,534.37 for the Fee Period) as a result of this discount.

M&F also has written off time for "transitory timekeepers," or those who billed less than 5 hours

during each interim period, totaling more than $17,367.75.  These write-offs for transitory time

are even more generous in light of Judge Chapman's recent pronouncement that the transitory

timekeeper rule should not apply to partners or other senior attorneys who, in light of their

experience and expertise, can provide legal advice that materially benefits the estate in a relatively brief period of time.[1]

14.    Despite these substantial voluntary fee reductions, and in the interest of avoiding delay and the unnecessary expense to the Debtors' estates that would result if M&F were to engage in a detailed review and analysis of the backup documentation regarding certain of the UST's specific fee and expense objections, M&F is willing to reduce its requested fees and expenses by an aggregate amount of $39,123.25 ($10,740.15 in fees and $28,383.10 in expenses), as set forth in more detail below.

### a.    Vague and Repetitive Time Entries

15.    The UST requests a reduction of $345,156.00 for purported vague and repetitive time entries.  M&F respectfully submits that such time entries, particularly in the context of the full time records submitted, the project categories used by M&F, and the M&F Application itself, are sufficient to permit the reviewer to determine whether the requested fees are reasonable in amount and were incurred in connection with the provision of services that were both actual and necessary.

16.    M&F disputes the characterization of a number of the UST's objections in this category, including multiple entries listed as "vague" where the timekeeper included the person with whom they were communicating and the subject matter of the communication.  Almost all of the entries objected to by the UST as vague are in the "Investigation, Discovery or Rule 2004 Requests" project code and relate to the Trustee's statutory investigation of the Debtors.  The UST, in most instances, suggests that M&F needs to provide the specific name of the person the M&F attorneys were interviewing.  M&F generalized the person it interviewed in most instances

---

[1] *See* Transcript from Hearing at 6:12-9:1, *In re Ambac Financial Group, Inc.*, Case No. 10-15973 (SCC) (Bankr. S.D.N.Y. Nov. 27, 2012), annexed hereto as Exhibit 1.

because the subject of the interviews was confidential and anonymity was necessary to

encourage the participation of those whom the Trustee sought to interview.  M&F did, however,

indicate whether the person being interviewed was an officer, director or employee, which would

allow the UST to determine if the services were necessary.  Clearly, as these time entries were in

the "Investigation, Discovery or Rule 2004 Requests" project code, the services rendered were in

furtherance of the Trustee's statutory investigation.

17.     Nearly all of the repetitive time entries relate to the review of documents by

various M&F attorneys participating in the Trustee's investigation of the Debtors.  To fulfill the

Trustee's statutory duty under section 1106 of the Bankruptcy Code, M&F needed to review

hundreds of thousands of emails, reports, correspondence and other documents.  These

documents were often kept confidential, and served as the baseline materials on which M&F

conducted the interviews.

18.     Because M&F was able to conduct these interviews and review the over 100,000

pages of documents, the Trustee was able to complete his investigation and file his report as

detailed above.

19.     M&F respectfully submits that these time entries sufficiently describe actual and

necessary services rendered on behalf and for the benefit of the Debtors' estates.  Nevertheless,

M&F will provide as soon as possible additional detail to the Court and the UST regarding the

purported vague and repetitive time entries.

### b.  Fees of Trainee Solicitors Not Yet Admitted to Practice

20.     The UST requests a reduction of $10,740.15 with respect to certain services

rendered by trainee solicitors in M&F's London office.  The requested reduction represents the

difference between the hourly rate of the trainee solicitors ($342/hour to $400/hour) and the

hourly rate of M&F's highest billing paralegal ($279/hour).  Although M&F disagrees with the

UST that trainee solicitors should be required to bill at a lower rate given the rates normally

charged in the United Kingdom for the services of trainee solicitors, under the specific

circumstances here, M&F agrees to the requested reduction.

     **c.**  **Response to UST's Previous Fee Objection**

    21.    The UST requests a reduction of $33,897.15 for time spent by M&F attorneys in

responding to the UST's fee objection for the previous fee period.  M&F ultimately was

successful on its previous fee application, and was awarded approximately 98 percent of its

requested fees and 100 percent of its expenses after agreeing to a voluntary reduction in its fees

to settle the UST's objection.  The UST asserts that M&F should not be compensated for the

work its attorneys performed in responding to the UST's previous fee objection, which was

settled.

    22.    Although the Bankruptcy Code does not directly address whether attorneys may

be compensated for fees incurred in responding to objections to a fee application, a number of

courts have held that such fees are compensable for the successful applicant for two reasons.

First, courts reason that denying fees for a successful defense of a fee application would dilute

fee awards, in violation of section 330(a) of the Bankruptcy Code, and effectively reduce

compensation of bankruptcy attorneys to levels below that of attorneys generally, contrary to

Congress's wishes in enacting section 330.  *See CCT Comm'ns,* 2010 WL 3386947, at *9

(awarding fees for the costs of defending against fee objection where counsel had "substantially

prevailed" and "denial of defense costs would dilute its award"); *see also Smith v. Edwards &*

*Hale, Ltd. (In re Smith),* 317 F.3d 918, 928 (9th Cir. 2002), *abrogated on other grounds by*

*Lamie v. United States Trustee,* 540 U.S. 526, 531-39 (2004); *In re Worldwide Direct, Inc.,* 334

B.R. 108, 111-112 (D.C. Del. 2005); and H.R. No. 95–595, 95th Cong., 1st Sess. 330 (1977)

(noting that section 330(a) was enacted to prevent ''bankruptcy specialists, who enable the system to operate smoothly, efficiently and expeditiously, [from being] driven elsewhere'').

23.    Second, courts find that defending one's fee applications, like preparing them, is part of an attorney's role in the bankruptcy administration process making it appropriate for the estate to compensate such activity. *See Boyd v. Engman,* 404 B.R. 467, 482–83 (Bankr. W.D. Mich. 2009) ("[p]reparing and defending attorney fee applications is part and parcel with the attorney's role in the administration of the bankruptcy process and is therefore compensable under 11 U.S.C. § 330(a)."); *In re Millennium Multi. Employer Welfare Ben. Plan*, 470 B.R. 203 (Bankr. W.D. Okla. 2012) (adopting *Boyd* analysis); *In re ASARCO, LLC,* 2011 WL 2974957, at *39-40 (Bankr. S.D. Tex. July 20, 2011) (adopting *Boyd* analysis).

24.    In this case, where the UST's objection to fees appears largely attributable to the overall size of the fees at issue and the public interest in the case, the need for the Trustee's counsel to defend against such objections is effectively a second required step to obtain full compensation.  Given the amounts at stake, allowing compensation for fashioning an appropriate response to the UST's fee objections that ultimately resulted in a settlement that conserved estate resources is a far more appropriate result than forcing M&F to bear the costs of reaching that settlement on its own. *Cf. In re Martin,* 91 F.3d 389,393 (3d Cir.1996) (''Compromises are favored in bankruptcy''); *Boyd,* 404 B.R. at 480 ("Settlement under court auspices benefits the bankruptcy system.").  Thus, given Judge Bernstein's statements in *CCT Comm'ns*, M&F's fees in undertaking such defense should be compensated completely as M&F substantially prevailed on its previous fee applications (receiving 98% of its fees and 100% of its expenses) and denial of the defense costs would dilute M&F's award of fees.

25.    Moreover, the cases cited by the UST in support of its position have little relevance to the facts of this case.  The first case, *In re St. Rita's Assoc. Private Placement L.P,* 260 B.R. 650 (Bankr. W.D.N.Y. 2001), denied compensation to a debtor's counsel for fees spent in defending against the debtor's objection to counsel's fee application on the theory that, under the "American Rule," parties generally must bear their own litigation expenses absent specific statutory authority or contractual provision to the contrary.  *Id.* at 652.  *St. Rita*'s rationale for denying fees, to the extent it is valid at all, has no application here where the objecting party is not the debtor or a creditor of the estate, but the UST fulfilling its duty in objecting to professional fees.  In that capacity, the UST bears little, if any, semblance to a party in private litigation in which the American Rule would apply.

26.    The UST also cites *In re Fibermark, Inc.,* 349 B.R. 385 (Bankr. D. Vt. 2006), for the proposition that time spent defending a fee application that does not conform to section 330 of the Bankruptcy Code, Bankruptcy Rule 2016, the Guidelines, or pertinent case law is not compensable.  *Id.* at 398.  This proposition is undoubtedly true, but has little application here.  M&F unquestionably did prepare an exhaustive fee application detailing the legal work performed and expenses incurred in compliance with section 330 of the Bankruptcy Code, Bankruptcy Rule 2016, and the Guidelines.  That the UST disputed a portion of those fees and expenses did not make the application as a whole somehow defective such that the costs of defending it should be borne by M&F.

**d.  <u>Expenses</u>**

27.    The following are M&F's responses to the UST's expense-related objections.

28.    <u>Professional Services</u>.  M&F will provide the UST and the Court as soon as possible with a detailed account of the documentation supporting the requested amount of

$77,507.26 for "Queen's Counsel Fees." Accordingly, M&F seeks reimbursement of the entire requested amount for these expenses.

29.    <u>Travel</u>. Prior to the filing of the Objection, with regard to the transportation and travel expense reimbursement request in its Application, M&F provided the UST with a detailed account of transportation and travel expenses, which included the identity of the timekeeper and the time the transportation expense was incurred. In some instances, professionals flew business class instead of coach and cabs were taken for in town meetings. Accordingly, M&F agrees to reduce its expense request in this category by $17,465.35.

30.    <u>Out of Town Counsel</u>. M&F enlisted the services of attorneys in the firm's Washington D.C. office to support the Trustee's statutory investigation. These professionals had the requisite experience to conduct the investigation and their practice focuses on the subject matter of the investigation. The expenses objected to by the UST are largely travel expenses associated with these attorneys traveling to New York on behalf of the Trustee. The M&F attorneys were required to travel not only to attend meetings with the Committee but also to conduct interviews in furtherance of the investigation. M&F believes that these expenses are compensable given the specific nature of the activities; however, M&F has agreed to reduce its expenses by $10,897.25.

31.    <u>Meals</u>. Prior to the filing of the Objection, with regard to the meal expense reimbursement request in the Application, M&F provided the UST with a detailed account of (i) the timekeeper for the individual meals highlighted on Exhibit B to the Objection and (ii) the authorizing attorney and number of participants for business meals. M&F, however, identified one meeting in which the total charges exceeded the $20.00 per person meal limit. Accordingly,

M&F agrees to reduce its request for reimbursement of overtime meals during the Fee Period by $20.50.

### e.  Conclusion

32.     Based on the foregoing, M&F submits that an aggregate reduction of $39,123.25 ($10,740.15 in fees and $28,383.10 in expenses) is appropriate, particularly in light of the voluntary fee and expense reductions already taken by M&F.  Accordingly, M&F seeks an award of interim compensation for the Fee Period in the amount of $3,960,319.95, and reimbursement for expenses for the Fee Period in the amount of $140,034.56.

33.     M&F requests that the Court overrule the Objection except as otherwise agreed to herein, and approve and authorize the payment of the remaining 50% of the fees approved in the Prior Interim Fee Order and 100% of the fees and expenses requested in the M&F Application, except as adjusted through agreement with the UST and as ordered by the Court.

## II.  Pepper

34.     Pursuant to the Objection, the UST objects to interim allowance of $221,293.40[2] in fees sought by Pepper, and reimbursement of $18,168.20 in expense reimbursements requested by Pepper.  As a starting point in assessing the overall reasonableness of Pepper's fee request, Pepper notes that in preparing its third interim fee application, Pepper voluntarily wrote off $209,365.57 in fees during the Fee Period.  Moreover, for time billed in 2012, Pepper is requesting compensation at 2011 rates and Pepper has agreed to bill all time at a 10% discount. As a result, Pepper's fee request already reflects a substantial discount.

35.     Despite these substantial voluntary fee reductions, in the interest of avoiding delay and the unnecessary expense to the Debtors' estates that would result if Pepper were to

---

[2]     Although the Objection states that it is objecting to allowance of $210,133.89 in fees, Pepper's review of the time entries reveals that the UST has marked time entries in the total amount of $221,293.40 as vague.

engage in a more detailed review and analysis of the backup documentation regarding certain of

the UST's specific fee and expense objections, Pepper is willing to reduce its requested fees and

expenses by an aggregate amount of $6,603.75 in fees and $6,683.64 in expenses, as set forth in

more detail below.  Combined with its voluntary write off, Pepper has effectively reduced its

fees during the Fee Period by $215,969.32, which amounts to a write off of approximately 14%

of the fees incurred by Pepper during that time. Notably, this reduction is in addition to the 10%

discount already provided by Pepper from its standard hourly rates. The reasonableness of

Pepper's Application must be analyzed against this factual backdrop, which demonstrates the

care Pepper has exhibited in its billing practices and preparation of its fee applications.

### a.  Unredacted Time Entries Previously Provided to UST

36.     The UST has objected to allowance of $210,133.89 in Pepper fees on the basis

that the related time entries are ostensibly vague.  For $155,255.85 of the Pepper time entries

marked by the UST as "vague," which primarily relate to confidential investigative work

performed on behalf of the Trustee, Pepper provided unredacted time entries to the UST at the

time each related monthly fee statement was filed, showing additional descriptive detail such as

the names of witnesses interviewed and topics researched.  The unredacted time entries will be

provided to the Court for *in camera* review in connection with the hearing on the Applications.

Pepper believes that those unredacted time entries are appropriately detailed and fully

compensable.

### b.  Remaining Time Entries are Reasonable as Drafted

37.     After resolution of the $155,255.85 in fees set forth above, there remains

$66,037.55 in fees objected to by the UST on the basis of vagueness.  Exhibit 2 to this Response

contains a copy of those time entries.  Of the $66,037.55 at issue, $48,892.50 of the time entries

fall within Pepper's "B261 – Investigation" task code and $6,196.50 of the time entries fall under

14

Pepper's "B191 – General Litigation" task code.  Pepper submits that those time entries are reasonably descriptive as drafted.

38.    By way of example only, the UST objects to the following time entries related to attendance by Pepper and the Trustee at the November 13, 2012 meeting of the Committee in these cases:

| B150 Creditors' Committee | 11/13/12 | L.J. Freeh | Preparation for meeting with the Statutory Creditors' Committee (2.0); attend same (4.0). | 6 | $765.00 | $4,590.00 |
|---|---|---|---|---|---|---|
| B150 Creditors' Committee | 11/13/12 | F.C. Razzano | Attend Creditors' Committee meeting (4.0); prepare for same (1.0). | 5 | $603.00 | $3,015.00 |
| B150 Creditors' Committee | 11/13/12 | M.D. Foster | Prepare for SCC meeting (1.5); attend SCC meeting (4.0). | 5.5 | $351.00 | $1,930.50 |

These entries are hardly vague.  Other than listing the specific matters on the agenda for the meeting, which Pepper submits would be inappropriate, there is no additional time detail that is reasonably required for the services at issue.

39.    Both the investigation time entries and the general litigation time entries must be considered in the context of the services being performed.  The time entries relate to work performed by Pepper either investigating potential litigation claims or, in the case of the WARN litigation, defending pending litigation.  The Pepper timekeepers were appropriately sensitive to the need to balance the descriptiveness of the task at hand with the need to preserve confidential information, given the knowledge that the estates' litigation adversaries would have access to the publicly-filed time records.  Particularly in the context of the full time records submitted, the project categories used by Pepper, and the Pepper Application itself, Pepper submits that its time

15

records both for the investigation and litigation categories and for the remaining $10,948.55 in

time entries are sufficient to permit the reviewer to determine whether the requested fees are

reasonable in amount and were incurred in connection with the provision of services that were

both actual and necessary .  Nonetheless, in the interest of avoiding the delay and expense

associated with further revision to the $66,037.55 of time entries at issue, Pepper is willing to

reduce its fee request by $6,603.75.  Pepper will continue to confer with the UST to attempt to

resolve the UST's concerns regarding the time entries at issue.

     **c.**  **Expenses**

     40.    The UST has objected to reimbursement of $18,168.20 in expenses requested by

Pepper alleging that documentation was not provided.  Pepper will voluntarily reduce its expense

reimbursement request for Amtrak train travel by $6,599.93 for the below expense entries, and

eliminate one $83.71 charge that was inadvertently included for a local car service, for a total

expense reduction of $6,683.64.

| Date | Description | Requested in Application | Voluntary Reduction |
|---|---|---|---|
| 10/5/2012 | Travel Expense - MATTHEW FOSTER TRAVEL TO NEW YORK FOR INTERVIEWS 9/19-20/12 | $490.21 | $490.21 |
| 10/5/2012 | Local Transportation - EXECUTIVE CHARGE, INC. F. RAZZANO 8/14/12 CAR SERVICE | $83.71 | $83.71 |
| 10/10/2012 | Local Transportation - THOMAS McC. SOUTHER - TRAIN AND TAXI FARE DURING TRIP TO WASHINGTON, DC 9/10/12 (NYC/DC/NYC) | $441.00 | $441.00 |
| 10/11/2012 | RAZZANO 100312 - AMTRAK (DC/NYC/DC) | $436.00 | $436.00 |

| | | | |
|---|---|---|---|
| 10/11/2012 | FOSTER 100312 - AMTRAK (DC/NYC/DC) | $436.00 | $436.00 |
| 10/12/2012 | KNAUER 101612 - AMTRAK (DC/NYC/DC) | $473.00 | $473.00 |
| 10/16/2012 | Travel Expense - MATTHEW FOSTER - TRAVEL TO NEW YORK FOR INTERVIEW 10/3-4/12 | $739.81 | $739.81 |
| 10/16/2012 | Travel Expense - FRANK RAZZANO - 10/3-4/12 TRAVEL TO NEW YORK FOR INTERVIEWS | $697.91 | $697.91 |
| 10/23/2012 | Travel Expense - FRANK RAZZANO - TRAVEL TO NEW YORK FOR INTERVIEW 10/13-15/12 | $449.00 | $449.00 |
| 10/26/2012 | RAZZANO 101812 - AMTRAK (DC/NYC/DC) | $498.00 | $498.00 |
| 10/26/2012 | FOSTER 101512 - AMTRAK (DC/NYC/DC) | $473.00 | $473.00 |
| 10/31/2012 | Local Transportation - FRANK RAZZANO - TRAVEL TO NY FOR INTERVIEW 10/18/12 (INCLUDES 1 MEAL) | $545.00 | $545.00 |
| 10/31/2012 | FOSTER 102212 - AMTRAK (DC/NYC/DC) | $448.00 | $448.00 |
| 10/31/2012 | RAZZANO 102212 - AMTRAK | $473.00 | $473.00 |
| | Total Reduction | | $6,683.64 |

41.     With respect to all but one of the remaining disputed expenses, which total $13,835.48, Pepper has previously provided the UST with backup documentation and will provide that documentation to the Court at the hearing on the Applications. Pepper will also provide that detail again to the UST. Those remaining expenses of $13,835.48 are appropriately compensable and should be allowed in full.

17

### d. **Conclusion**

42.    For the reasons set forth above, Pepper respectfully requests that the Court enter an order (a) approving interim compensation in the amount of $1,547,137.78 (reflecting a voluntary fee reduction of $6,603.75) and interim reimbursement of expenses in the amount of $13,835.48 (reflecting a voluntary expense reduction of $6,683.64), (b) approving and authorizing the payment of the remaining 50% of the fees approved in the Prior Interim Fee Order and 100% of the fees and expenses requested in the Pepper Application, except as adjusted through agreement with the UST and as ordered by the Court, and (c) granting to Pepper such other and further relief as the Court may deem proper.

## III.    **FGIS**

### a. **Vague Time Entries**

43.    The UST objects to the allowance of $43,972.50 in fees earned and requested by FGIS on the basis that the time entries are purportedly vague.  FGIS disputes the characterization of the UST's objections in this category.  FGIS respectfully asserts that such time entries, particularly in the context of the full time records submitted, the project categories used by FGIS, and the FGIS Application itself, are sufficient to permit the reviewer to determine whether the requested fees are reasonable in amount and were incurred in connection with the provision of services that were both actual and necessary.  Notwithstanding the foregoing, FGIS will endeavor to submit revised time entries for the purportedly vague time prior to the hearing on the Applications.

### b. **Fee Application Preparation**

44.    The UST objected to $27,340.00 of compensation requested under the project category "Fee/Employment Applications – Task Code 005" – the total amount requested by FGIS for that category.  However, by its own admission, the UST notes that a fee preparation

18

request between 3-5% of the total fees sought is reasonable.  Using this useful metric, 5% of

FGIS's total fees requested of $450,409.50 is $22,520.48.  Therefore FGIS is willing to reduce

its compensation request to the project category "Fee/Employment Application – Task Code

005" by $2,085.53.  (Calculation: Original $27,340.00 less 10% discount of $2,734.00 =

$24,606.00 minus Fee Application category at 5% of $22,520.48 = $2,085.53).

### c.  **Expenses**

45.    The UST also has objected to reimbursement of $5,151.03 related to travel

expenses requested by FGIS on the basis that sufficient information was not provided.  The

requested additional information regarding the disputed expenses is detailed below.

46.    The UST objected to a reimbursement request of $4,163.29 for airfare to London

because the departure location was "unknown."  The departure location was New York, NY.

The amount sought to be reimbursed is for the cost of a fully refundable economy class round

trip ticket between New York and London.

47.    The UST objected to a reimbursement request of $632.74 for an overnight stay at

the Chancery Hotel in London by Frank Piantidosi on November 13, 2012.  The reason for the

objection is not given.  The accommodation rate was GBP 398.40, which was converted at an

exchange rate of .63 GBP per US$ to arrive at the $632.74 total reimbursement amount.  The

amount sought to be reimbursed is reasonable for hotel accommodations in London.

48.    Although not articulated in the Objection, because the total amount objected to by

the UST was $5,151.03, FGIS has assumed that the UST also intended to object to a

reimbursement request for $355.00 for business class train fare for round trip travel between

Washington, DC and New York, NY.  Because economy class for that same itinerary was

$258.00, FGIS agrees to reduce its reimbursement request for this expense by $97.00 to $258.00.

49.     For the reasons set forth above, FGIS submits that an aggregate reduction of $2,182.53 is appropriate.  Accordingly, FGIS seeks an award of interim compensation for the Fee Period in the amount of $448,323.98, and reimbursement for expenses for the Fee Period in the amount of $11,967.01.  Consequently, FGIS respectfully requests that the Court overrule the Objection except as otherwise agreed to herein, approve and authorize the payment of the remaining 50% of the fees approved in the Prior Interim Fee Order and 100% of the fees and expenses requested in the FGIS Application, except as adjusted through agreement with the UST and as ordered by the Court.

## CONCLUSION

WHEREFORE, Respondents respectfully request that the Court enter an order (a) approving and authorizing the payment of the remaining 50% of the fees approved by the Prior Interim Fee Order; (b) approving and authorizing the payment of 100% of the fees and expenses requested in the Applications, except as adjusted through agreement with the UST and as ordered by the Court; and (c) granting Respondents such other and further relief as the Court may deem proper.

| | |
|---|---|
| Dated: New York, New York<br>April 16, 2013<br><br><br>PEPPER HAMILTON LLP<br><br><br>By:   /s/ David M. Fournier<br>      David B. Stratton, Esq. *(pro hac vice)*<br>      David M. Fournier, Esq. *(pro hac vice)*<br>      Evelyn J. Meltzer, Esq. *(pro hac vice)*<br><br>Hercules Plaza, Suite 5100<br>1313 N. Market Street<br>P.O. Box 1709<br>Wilmington, Delaware 19899<br>Tel.:  (302) 777-6500<br>Fax:  (302) 421-8390<br><br>*Special Counsel for the Chapter 11 Trustee* | MORRISON & FOERSTER LLP<br><br><br>By:   /s/ Brett H. Miller<br>      Brett H. Miller<br>      Melissa A. Hager<br>      Craig A. Damast<br><br>1290 Avenue of the Americas<br>New York, NY  10104-0050<br>Tel.:  212.468.8000<br>Fax:  212.468.7900<br>bmiller@mofo.com<br>lmarinuzzi@mofo.com<br>mhager@mofo.com<br><br>*Counsel for the Chapter 11 Trustee* |

ny-1086289

# EXHIBIT 1

<pre>
 1                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2     -------------------------------
       In re:                          Case No. 10-15973-scc
 3                                      New York, New York
          AMBAC FINANCIAL GROUP, INC.  November 27, 2012
 4                            Debtor.   10:13 a.m. - 10:30 a.m.
       -------------------------------
 5             TRANSCRIPT - CASE 10-15973-SCC - CHAPTER 11
 6      FIRST APPLICATION OF HOGAN LOVELLS US LLP AS ATTORNEYS FOR
 7     THE DEBTOR FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES
          RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE
 8             PERIOD APRIL 18, 2012 THROUGH AUGUST 31, 2012
 9                        [DOCKET NO. 1106];
10     FIRST APPLICATION OF SHEARMAN & STERLING LLP AS ATTORNEYS FOR
11     THE DEBTOR FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES
          RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE
12             PERIOD MAY 29,2012 THROUGH AUGUST 31, 2012
13                        [DOCKET NO. 1121];
14      FIRST INTERIM APPLICATION OF MAYER BROWN LLP, AS SPECIAL
15        CORPORATE COUNSEL TO THE DEBTOR, FOR COMPENSATION AND
16     REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM APRIL
          12, 2012 THROUGH AUGUST 31,2012 [DOCKET NO. 1108];
17     THIRD INTERIM APPLICATION OF WHYTE HIRSCHBOECK DUDEK S.C. AS
18      SPECIAL COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED
19      CREDITORS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES
       INCURRED FOR THE PERIOD APRIL 1, 2012 THROUGH AUGUST 31,2012
20                        [DOCKET NO. 1105];
21       FIFTH INTERIM APPLICATION OF LAZARD FRERES & CO. LLC AS
22       FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE OFFICIAL
23        COMMITTEE OF UNSECURED CREDITORS FOR COMPENSATION AND
       REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD APRIL 1,
24         2012 THROUGH AUGUST 31, 2012 [DOCKET NO. 1104];
25
</pre>

(Agenda Continued)

FIFTH INTERIM APPLICATION OF MORRISON & FOERSTER LLP AS

COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR

COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE

PERIOD APRIL 1, 2012 THROUGH AUGUST 31, 2012

[DOCKET NO. 1103];

FIFTH INTERIM FEE APPLICATION OF WACHTELL, LIPTON, ROSEN &

KATZ AS SPECIAL COUNSEL TO THE DEBTOR FOR INTERIM ALLOWANCE

FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED

FROM APRIL 1, 2012 THROUGH AUGUST 31, 2012

[DOCKET NO. 1102]

FIRST APPLICATION OF WINSTON & STRAWN LLP, AS SPECIAL COUNSEL

TO THE DEBTOR, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

FOR THE PERIOD MAY 9, 2012 THROUGH AUGUST 31, 2012

[DOCKET NO. 1096];

THIRD INTERIM FEE STATEMENT OF PRICEWATERHOUSECOOPERS LLP,

ACCOUNTING AND VALUATION ADVISORS TO THE DEBTOR, FOR

COMPENSATION FOR SERVICES AND FOR REIMBURSEMENT OF EXPENSES

[DOCKET NO. 1101];

FIFTH FEE APPLICATION OF KPMG LLP, AS AUDITORS, TAX

CONSULTANTS AND BANKRUPTCY ADMINISTRATION CONSULTANTS TO THE

DEBTOR AND DEBTOR IN POSSESSION, FOR INTERIM ALLOWANCE AND

COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND

REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM

APRIL 1, 2012 THROUGH AUGUST 31, 2012 [DOCKET NO. 1098];

THIRD INTERIM FEE APPLICATION OF BUTTNER HAMMOCK & CO. P.A.

AS LITIGATION CONSULTANTS FOR THE DEBTOR FOR INTERIM

ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES

RENDERED AND EXPENSES INCURRED FROM APRIL 1, 2012

THROUGH AUGUST 31, 2012 [DOCKET NO. 1099]; AND

```
 1                          (Agenda Continued)
           FIFTH APPLICATION OF BLACKSTONE ADVISORY PARTNERS L.P. AS
 2
         FINANCIAL ADVISOR TO THE DEBTORS FOR INTERIM ALLOWANCE OF
 3       COMPENSATION FOR ACTUAL AND NECESSARY SERVICES RENDERED AND
 4      REIMBURSEMENT OF ACTUAL AND NECESSARY OUT-OF-POCKET EXPENSES
 5             INCURRED FOR THE PERIOD OF APRIL 1, 2012 THROUGH
               AUGUST 31, 2012 [DOCKET NO. 1100].
 6
                         APPEARANCES ON BEHALF OF
 7
       The Debtor:                 ALLISON H. WEISS, ESQ.
 8                                 Hogan Lovells US, LLP
                                   (212) 918-3000; (212) 918-3100 fax
 9
       Unsecured Creditor's        AARON KLEIN, ESQ.
10       Committee:                Morrison & Foerster LLP
                                   (212) 468-8000; (212) 468-7900 fax
11
       The U.S. Trustee:           BRIAN S. MASUMOTO, ESQ.
12                                 (212) 510-0500; (212) 668-2255 fax
13
        The U.S. Attorney:         CARINA H. SCHOENBERGER, ESQ.
14                                 (212) 637-2822; (212) 637-2717 fax

15      Unsecured Creditor's       BRUCE ARNOLD, ESQ.
          Committee:               Whyte Hirschboeck Dudek S.C.
16      (via telephone)            (414) 978-5501; (414) 223-5000 fax

17     Interested party:           TIMOTHY BASS
       (via telephone)             Barclays Capital, Inc.
18                                 (212) 412-3606

19     Interested party:           MICHAEL B. CUNNINGHAM
       (via telephone)             Avenue Capital
20                                 (310) 882-3012

21     Interested party:           LUKE KWIATKOWSKI
       (via telephone)             KPMG LLP
22                                 (212) 954-6273

23     Transcribed by:             AAA ELECTRONIC SOUND REPORTERS
                                   (888) 866-5135; (888) 677-6131 fax
24                                 electronicsound@court-transcripts.net

25          (Proceedings recorded by electronic sound recording)
```

In re Ambac Financial Group - 11/27/12                                4

1          THE COURT:  Good morning.  Please have a seat.  How is

2     everybody?  Ms. Weiss, your show.

3          MS. WEISS:  Good morning, Your Honor.  Allison Weiss,

4     Hogan Lovells, for the Debtor.

5          We're here this morning requesting approval of the

6     interim fee applications for the professionals retained in this

7     case.  We did receive one objection from the U.S. Trustee.  The

8     U.S. Trustee objected to several of the fee applications.  And

9     within such objections, with respect to all applicants,

10    requested that a holdback be required until the end of the case.

11         Your Honor, as with the prior interim fee

12    applications, we request that the 10 percent holdback from the

13    prior interim period be paid to the professionals at this time,

14    as well as 10 percent of the 20 percent that is being held back

15    during this interim period.

16         With respect to the U.S. Trustee's other objections to

17    the specific professional's fee applications, the U.S. Trustee's

18    objections with respect to the Debtor's professionals has been

19    resolved.  And I believe that the committee wants to address the

20    Court with respect to the committee --

21         THE COURT:  All right.  So, what's the resolution of

22    the U.S. Trustee's objection?

23         MR. MASUMOTO:  Your Honor, if I may?

24         THE COURT:  Sure.

25         MR. MASUMOTO:  With respect to Wachtell Lipton, I

In re Ambac Financial Group - 11/27/12                    5

1   guess from our fee application, we objected to vague and lump

2   time entries in the amount of $29,000 and change.  The agreed

3   resolution was that they would accept a 20 percent reduction of

4   that amount.  They also provided us with corrected time entries.

5            THE COURT:  Okay.

6            MR. MASUMOTO:  With respect to the objection regarding

7   the travel out of town for $770.45, they provided

8   substantiations satisfactory to our office.  With respect to

9   KPMG, KPMG presented all time records of which they had

10  voluntarily reduced $2,600.  So the additional time records in

11  the amount of $672, which matched up to the total of our

12  objectionable entries of $3,272, it's that difference that they

13  will further reduce.  They will add 672 to their already

14  previously reduced $2,600.

15           With respect to Blackstone Advisory Partners, they

16  agreed to the reduction of the expenses in the amount of

17  $426.40.  I will -- if I may skip, I may defer to committee

18  counsel.  We had certain issues with respect to Morrison &

19  Foerster's time entries and expenses.  They made a concession

20  with respect to the expenses, but they'd like to set forth

21  statements on the record regarding the time entry disputes.

22           THE COURT:  Okay.

23           MR. MASUMOTO:  In addition, they will also I assume

24  either directly or through their professional, Lazard Freres fee

25  application.

In re Ambac Financial Group - 11/27/12                    6

1      I'm sorry, Your Honor, we did have one other

2   application with respect to Shearman & Sterling.  With respect

3   to those objections, that begins on page 20, paragraph 40.  They

4   agreed to reduce their transitory timekeepers by $750.50.  And

5   they provided time records to review, and that's acceptable.

6   They're also taking a further reduction for the $40 in word

7   processing, and $123.75 for word processing and proofreading

8   expenses.

9           THE COURT:  Okay.  Thank you.

10          MR. KLEIN:  Good morning, Your Honor --

11          THE COURT:  Good morning.

12          MR. KLEIN:  -- Aaron Klein.  Morrison & Foerster for

13  the Committee.

14          Your Honor, we did have some substantive discussions

15  earlier with the Office of the United States Trustee regarding

16  our fee application.  I think the issues that are still on the

17  table are the objection to the so-called transitory timekeepers.

18          THE COURT:  Mm-hm.

19          MR. KLEIN:  Those timekeepers that throughout the fee

20  period billed less than five hours.  And also we have still some

21  open items with respect to review of our retained professionals'

22  fee applications.

23          If I can address the timekeepers' issue first; we

24  acknowledge the position of the United States Trustee with

25  respect to writing off time billed by those timekeepers that are

1   less than five hours.  We understand that's written into the

2   proposed rules for the United States Trustee fee guidelines that

3   are not yet in affect.  Our position is this -- and we're

4   definitely willing to be reasonable about who we can write off

5   and who we don't wrote off.

6          Our position is there were certain issues in this case

7   which required us to consult certain professionals who were not

8   regular timekeepers on this case.  The U.S. Trustee has

9   identified I think five of them, and I can go through each one

10  of them and say why they made a valuable contribution to the

11  case.

12         I think, taking it down the line, they mention Barbara

13  Mendelson who's a partner in our Corporate Department at

14  Morrison & Foerster.  We had an issue with a Bermuda entity.  We

15  wanted -- the Debtor wanted to liquidate.

16         THE COURT:  Let me stop you because this is a topic on

17  which I have an opinion that Mr. Masumoto may or may not have

18  had the pleasure of hearing from me before.  A transitory

19  timekeeper generally, as it's come to be called, is someone that

20  as you say bills fewer than -- I don't know what the particular

21  cutoff is -- ten hours/five hours; some small amount of hours.

22         There are two kinds of such timekeepers.  One, the

23  kind that you're describing, which is you have a discreet issue

24  that only requires someone to think about it for an hour; some

25  arcane issue of the law, a foreign jurisdiction, a tax issue,

1    something of that sort.  So somebody who works full time on the

2    case goes to that person and says, hey, I want to pick your

3    brain on this issue, and you talk.  And then you say to the

4    person, bill .5 to Ambac.  Here's the number and that's it.

5    That's compensable.  Whether it's .5 or whether it's five,

6    that's compensable because that person's given their expertise.

7            What's not compensable is junior associate is on

8    vacation so another junior associate gets asked to do some task,

9    or a paralegal is on vacation, and another paralegal gets asked

10   to do a task.  And part of that person's time is spent making up

11   for the fact that the other person really isn't there.  Those

12   are the kinds of transitory timekeepers that frankly

13   professionals should bill off by themselves without having to be

14   prompted by the U.S. Trustee.

15           So the only thing that I'm interested in is which is

16   which and that's the way it needs to be resolved.  So if you

17   want to go through each of them we're rapidly getting to the

18   point that this is going to cost more than what you're writing

19   off, which is another one of my pet peeves.

20           MR. KLEIN:  Agreed, Your Honor.  I can represent to

21   the Court that each of these are senior level people, where we

22   went to them with discreet issues of law for the very purpose of

23   picking their brain, as opposed to a junior associate --

24           THE COURT:  All right.  So to the extent that the U.S.

25   Trustee has a continuing objection to those timekeepers, it's

1   overruled.  Okay?  And then what's the other category?

2        MR. KLEIN:  The other category, Your Honor, is review

3   of our own fee applications, billing for the time taken for our

4   fee applications, and also the fee applications of our retained

5   professionals, Lazard and Whyte Hirschboeck.  The United States

6   Trustee noted in his objection that you can't -- it's

7   impermissible to bill for manipulation of time records or review

8   of time records.

9        THE COURT:  Not manipulation.  That's an unfortunate

10   choice of words.

11        MR. KLEIN:  Sorry.  Pardon me, Your Honor.  For

12   revision or review of time records.

13        THE COURT:  Right.

14        MR. KLEIN:  Verses a fee application.  Now, you

15   understand, Your Honor, when you go to build a fee application,

16   we're talking about a six month fee period; you have to review

17   the actual time records --

18        THE COURT:  Right.

19        MR. KLEIN:  -- in order to build out the narratives.

20        THE COURT:  Sure.

21        MR. KLEIN:  And so that's what we've had.  And I can

22   represent to the Court that in each of the line items that the

23   United States Trustee has highlighted in the objection that is

24   what was going on here, which is we were reviewing the time

25   records, and then we were building out, and reviewing and

In re Ambac Financial Group - 11/27/12                    10

1   revising the narrative of the services provided.  That's for

2   our --

3          THE COURT:  For your own fee application.

4          MR. KLEIN:  Exactly.

5          THE COURT:  Okay.

6          MR. KLEIN:  And now the --

7          THE COURT:  All right.  So let me ask you to pause and

8   ask Mr. Masumoto.  So when there's an entry that says review of

9   time records, and they were being reviewed for the purpose of

10  preparing the fee application, your office doesn't have an

11  objection, right?

12         MR. MASUMOTO:  No, Your Honor.  In fact, we agreed

13  prior to the hearing that based upon his explanation and

14  representation that none of them involved editing of time

15  records --

16         THE COURT:  Got it.

17         MR. MASUMOTO:  -- we would find it acceptable.

18         THE COURT:  Okay.  Good.  All right.

19         MR. KLEIN:  And we will represent that to the Court

20  that that's exactly what happened.

21         The other issue is the question about a review of the

22  monthly fee application fee application submitted by Lazard and

23  by Whyte Hirschboeck, our professions who may not be fully aware

24  of the U.S. Trustee fee guidelines; may not be fully aware of

25  the rules of this Court, and so we took it upon ourselves to

In re Ambac Financial Group - 11/27/12                11

1   review and revise their actual monthlies, as well as their

2   interim fee applications.  So we would request reimbursement for

3   the fees and expenses that we spent time on --

4           THE COURT:  What's the amount that falls into this

5   last category, do you know?

6           MR. MASUMOTO:  Your Honor, in terms of the other

7   professional review, I think the total we noted was $6,955.50.

8   And again, Your Honor, this is one area we did not have

9   agreement on.  From our standpoint, this is an obligation of the

10  retained professional.  To offload that obligation to whether

11  it's the committee counsel or to some other professional is an

12  added burden upon the estate that should not occur.

13          MR. KLEIN:  Your Honor, if I may?

14          THE COURT:  Mm-hm.

15          MR. KLEIN:  One problem with that number I think is

16  that it includes review of monthlies and of fee applications,

17  which I would suggest would be distinguished based upon what we

18  were talking about before which is permitted versus

19  impermissible review of time records for Lazard and for Whyte

20  Hirschboeck.

21          THE COURT:  It's slightly different though because

22  doing your own versus doing other professionals.  I mean you're

23  counsel to the estate; you're not counsel to these other

24  individuals.  So I suppose we could go down the rabbit hole and

25  say that they -- as an expense would hire a lawyer to review the

1  fee applications and then we would loop back into another item

2  or issue that the U.S. Trustee would have.  So, I think that

3  $6,000 is a high number, so I think we're going to split it on

4  this one.  I don't think you should be reviewing their monthly

5  statements.  They're big boys; they know how to do this.  And

6  they can -- you know, they've got in-house people that they

7  could task with doing that, and at a certain point, there's an

8  expense of doing business and you don't get paid for every

9  single hour that you can bill.  So, I'm going to split this one

10 in half.  All right?

11         MR. KLEIN:  Thank you, Your Honor.

12         MR. MASUMOTO:  Thank you, Your Honor.

13         THE COURT:  All right.  Were those the only open

14 issues?

15         MR. MASUMOTO:  Yes, Your Honor, except for the general

16 one that we had with respect to Lazard Freres.  We were

17 concerned that they only billed 38.8 hours for $125,000.  We

18 were concerned given that the expectation post confirmation was

19 just merely awaiting the settlement that even under improvidence

20 standards since Lazard is in fact I believe a 328 professional

21 that the compensation if the level of services they're providing

22 would remain at that level, we were concerned that it might have

23 been improvident.

24         We've had some discussions; I'll leave it to counsel,

25 to Debtor's counsel, as well as committee counsel as to the

In re Ambac Financial Group - 11/27/12                        13

1  expectation.  My understanding is that -- I will leave it to

2  counsel.

3          THE COURT:  Okay.

4          MR. MASUMOTO:  But they're hoping for a fairly short

5  settlement on the IRS matter.

6          THE COURT:  Does the U.S. Trustee have -- is it

7  pressing -- is your office pressing your objection with respect

8  to Lazard or are we going to defer it to the final depending

9  upon when we actually get --

10          MR. MASUMOTO:  I would be prepared to defer it to the

11  final, Your Honor, especially in light of the expectation that

12  I've been provided that hopefully the matter will be resolved by

13  the end of the year or the beginning of the year.

14          I mean I know we've heard that before and that was

15  part of my concern you know in terms of the continuation of the

16  fees --

17          THE COURT:  Right.

18          MR. MASUMOTO:  -- which were contemplated in their

19  original retention.

20          THE COURT:  Right.  Well, you know I think at this

21  point, none of us, except for the United States, can offer any

22  meaningful estimate of when we're going to be able to go

23  effective.  So I think the only wise thing to do is to defer it

24  to the final.  I hear your point.

25          MR. MASUMOTO:  I agree, Your Honor.

In re Ambac Financial Group - 11/27/12                    14

1       THE COURT:  This is not the only case that this type

2   of thing happens in.  So I think I'll approve them on an interim

3   basis, and then we can -- if that issue continues, we can take

4   it up at the final or at the next interim fee period if we're in

5   that unfortunate position.

6       MR. MASUMOTO:  That's fine, Your Honor.

7       THE COURT:  All right.  Thank you.  Is that

8   acceptable?

9       MR. KLEIN:  That is, Your Honor.

10      THE COURT:  Okay.

11      MR. KLEIN:  Thank you.  Aaron Klein, Morrison &

12  Foerster for the Committee.  I just want to put one thing on the

13  record that Mr. Masumoto and I discussed that I would speak with

14  the Debtor.  And we would make sure that the Office of the

15  United States Trustee has all the information about what Lazard

16  is doing from here on out so there's free flow of information.

17      THE COURT:  Okay.  I mean we have to go back and look

18  at the engagement letter.  It undoubtedly provides that they

19  continue to be paid, but I'm not a big fan of paying a lot of

20  money for people doing nothing.  Okay.  Anything else on the fee

21  applications?

22      I should note for the record that on the phone we have

23  Mr. Arnold from the Whyte Hirschboeck firm.  We have Mr. Bass

24  from Barclays Capital; Mr. Cunningham from Avenue Capital, and

25  Mr. Kwiatkowski from KPMG.  Anyone on the phone --

In re Ambac Financial Group - 11/27/12                    15

1        MR. KWIATKOWSKI:  Good morning, Your Honor, thank you.

2        THE COURT:  Anyone on the phone wish to add anything?

3        (No response.)

4        THE COURT:  Okay.  All right.  So, Ms. Weiss, I think

5   that takes care of it, so I will ask you and the other parties

6   to the extent necessary to give us an order with the

7   appropriately revised schedules.

8        MS. WEISS:  We will, Your Honor.

9        THE COURT:  All right.

10       MS. WEISS:  I'll email that later today.

11       THE COURT:  Okay.  Terrific.  All right, can I ask

12   for, to the extent that there is one, an update on where things

13   stand?

14       MS. SCHOENBERGER:  Your Honor, Carina Schoenberger,

15   from the United States Attorney's Office --

16       THE COURT:  Good morning.

17       MS. SCHOENBERGER:  -- on behalf of the IRS.  Good

18   morning.  The offer letter has left the Office of Review at the

19   DOJ Tax and is with the Joint Committee of Congress right now.

20   And that's about the best I can give you right now.

21       THE COURT:  Okay.  All right.  Very good.

22       MR. KWIATKOWSKI:  We can't hear anything on the phone.

23       THE COURT:  Okay.

24       MS. SCHOENBERGER:  We have -- as with our least

25   meeting, we have no reason to believe at this point that there's

1    any significant delay with the joint committee.

2             THE COURT:  Okay.  All right.  All right, thank you,

3    folks.  Thanks for coming in.  Happy Holidays.

4             ALL COUNSEL:  Thank you, Your Honor.

5                          - o0o -

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

17

1                          CERTIFICATION

2

3          I, Rochelle V. Grant, certify that the foregoing is a

4    correct transcript from the official electronic sound recording

5    of the proceedings in the above-entitled matter.

6

7    Dated:   December 12, 2012

8

9

10   _____
     Signature of Approved Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 2

**EXHIBIT**

**$66,037.35 Pepper Hamilton LLP Time Detail**

| TASK | DATE | NAME | FILED DESCRIPTION | TIME | RATE | FEES |
|------|------|------|-------------------|------|------|------|
| B191 General Litigation | 10/02/12 | T.M.C. Souther | Communication with counsel from Proskauer re global settlement concerns. | 0.4 | $675.00 | $270.00 |
| B261 Investigations | 10/02/12 | I.B. Knauer | Exchange e-mails with MoFo attorneys re scheduling witnesses. | 0.5 | $585.00 | $292.50 |
| B261 Investigations | 10/02/12 | T.M.C. Souther | Conference call with Katten Muchen and the CFTC re privilege issues. | 0.8 | $675.00 | $540.00 |
| B261 Investigations | 10/02/12 | A.O. Aguayo | Searching for registration statements as cited in Amended Sec. Complaint and printing for F. Razzano review. | 1.5 | $167.00 | $249.75 |
| B261 Investigations | 10/03/12 | T.M.C. Souther | Communication with SEC and T. Melvin re additional discovery requests from SEC. | 1.3 | $675.00 | $877.50 |
| B261 Investigations | 10/03/12 | T.M.C. Souther | Communication with Katten Muchen re privilege issues and discovery requests from CFTC and SEC. | 1.2 | $675.00 | $810.00 |
| B261 Investigations | 10/04/12 | T.M.C. Souther | Communication with counsel for employee regarding discovery issues in investigation. | 0.9 | $675.00 | $607.50 |
| B261 Investigations | 10/04/12 | T.M.C. Souther | Communication with CFTC regarding production requests and timing of responses. | 0.5 | $675.00 | $337.50 |
| B261 Investigations | 10/04/12 | T.M.C. Souther | Communication with counsel re meeting with government and discovery issues. | 0.8 | $675.00 | $540.00 |
| B261 Investigations | 10/04/12 | A.O. Aguayo | Working on witness interview memo | 1.5 | $167.00 | $249.75 |
| B261 Investigations | 10/05/12 | T.M.C. Souther | Conference call with counsel re preparation for meeting with government and regulators. | 0.4 | $675.00 | $270.00 |
| B261 Investigations | 10/05/12 | A.O. Aguayo | Working on witness interview memo | 1.5 | $167.00 | $249.75 |
| B261 Investigations | 10/08/12 | M.D. Foster | Prepare for meeting with FTI. | 2 | $351.00 | $702.00 |
| B191 General Litigation | 10/09/12 | T.M.C. Souther | Communications with counsel for former employees re proposed attorney client privilege waiver. | 1.3 | $675.00 | $877.50 |
| B191 General Litigation | 10/10/12 | T.M.C. Souther | Meeting with M. Hager and F. Piantidosi re: strategy and responses to UST communications. | 1.4 | $675.00 | $945.00 |
| B261 Investigations | 10/10/12 | T.M.C. Souther | Addressing production issues in response to government requests for data and information. | 2.8 | $675.00 | $1,890.00 |
| B261 Investigations | 10/10/12 | J.C. Snodgrass | Review trustee reports, interview notes, and background documents. | 4 | $311.00 | $1,242.00 |
| B261 Investigations | 10/11/12 | A. Toy Ohta | Review background materials. | 0.5 | $374.00 | $186.75 |
| B261 Investigations | 10/13/12 | J.C. Snodgrass | Review audit and risk committee minutes and agendas. | 4.3 | $311.00 | $1,335.15 |
| B261 Investigations | 10/14/12 | A. Halboth | Review background materials. | 0.9 | $212.00 | $190.35 |
| B261 Investigations | 10/15/12 | I.B. Knauer | Review summary of hearing in New York re class action. | 0.5 | $585.00 | $292.50 |
| B261 Investigations | 10/15/12 | A. Halboth | Draft case overview memo. | 0.4 | $212.00 | $84.60 |
| B261 Investigations | 10/15/12 | J.C. Snodgrass | Review audit and risk committee minutes and agendas. | 4.5 | $311.00 | $1,397.25 |
| B261 Investigations | 10/15/12 | A. Toy Ohta | Discuss case with T. Souther, T. Melvin, A. Halboth, M. Singh (.2); discuss case with T. Melvin, A. Halboth, M. Singh (2.8); review background materials (.6); analyze and correspond with M. Singh re: e-room contents and structure (.2). | 3.8 | $374.00 | $1,419.30 |
| B261 Investigations | 10/15/12 | A.O. Aguayo | Teleconference with B. Rosenthal (DTI) and Matt Foster. | 0.5 | $167.00 | $83.25 |
| B110 Case Administration | 10/16/12 | T.M.C. Souther | Conferring with F. Piantidosi re strategy and outstanding issues. | 1 | $675.00 | $675.00 |
| B261 Investigations | 10/16/12 | T.M.C. Souther | Analyze investigation status and update. | 0.6 | $675.00 | $405.00 |

EXHIBIT
$66,037.35 Pepper Hamilton LLP Time Detail

| TASK | DATE | NAME | FILED DESCRIPTION | TIME | RATE | FEES |
|------|------|------|-------------------|------|------|------|
| B261 Investigations | 10/17/12 | C.B. Chuff | Prepare for meeting by reviewing trustee reports. | 2.3 | $122.00 | $279.45 |
| B261 Investigations | 10/17/12 | C.B. Chuff | Meet with investigating team to discuss due diligence necessary for determining potential causes of action. | 3 | $122.00 | $364.50 |
| B261 Investigations | 10/17/12 | C.B. Chuff | Review notes from meeting to organize next steps in due diligence. | 0.9 | $122.00 | $109.35 |
| B261 Investigations | 10/17/12 | J.C. Snodgrass | Review interview notes. | 2.5 | $311.00 | $776.25 |
| B191 General Litigation | 10/18/12 | T.M.C. Souther | Preparation for meeting with J. Gruehn in Philadelphia (1.4); teleconference with J. Gruehn (.2). | 1.6 | $675.00 | $1,080.00 |
| B261 Investigations | 10/18/12 | M.D. Foster | Prepare for meeting with FTI (1.2); draft outline for document review protocol (2.0); meet with FTI (3.7); meet with F. Razzano, T. Souther and H. Jaffe re: creditor committee meeting (.3); edit and revise witness interview memos (2.8); communicate with A. Aguayo re: problems with database (.4). | 10.4 | $351.00 | $3,650.40 |
| B261 Investigations | 10/19/12 | F.C. Razzano | Attend meeting with the document review team to outline the case and documents that they need to search for (3.0); emails with MoFo regarding scheduling (1.0); meeting with M. Foster regarding potential claims (1.0); prepare for interviews the following week (2.0). | 7 | $603.00 | $4,221.00 |
| B261 Investigations | 10/19/12 | M. Choi | Extensive analysis of status of case to determine strongest legal theories supported by the investigation (2.0); analysis re future case handling (.8). | 2.8 | $320.00 | $894.60 |
| B261 Investigations | 10/19/12 | A.O. Aguayo | Team meeting (with F. Razzano, M. Foster, J. Snodgrass, M. Choi) to discuss case details. | 3 | $167.00 | $499.50 |
| B110 Case Administration | 10/22/12 | C. Lano | Meeting with E.Meltzer re status of case. | 0.3 | $194.00 | $58.05 |
| B191 General Litigation | 10/22/12 | T.M.C. Souther | Preparation for meeting to discuss resolution of issues and claims with Hughes Hubbard at MoFo. | 1.6 | $675.00 | $1,080.00 |
| B261 Investigations | 10/22/12 | I.B. Knauer | Attention to interviews, interview notes, scheduling, analysis of facts. | 1 | $585.00 | $585.00 |
| B261 Investigations | 10/22/12 | J.C. Snodgrass | Review audit committee minutes. | 3.5 | $311.00 | $1,086.75 |
| B110 Case Administration | 10/23/12 | L.J. Freeh | Telephone conference with MoFo, FTI and PH re pending matters. | 0.8 | $850.00 | $680.00 |
| B261 Investigations | 10/23/12 | J.C. Snodgrass | Review interview outlines. | 3.5 | $311.00 | $1,086.75 |
| B261 Investigations | 10/24/12 | A. Halboth | Review documents for privilege. | 1.2 | $212.00 | $253.80 |
| B261 Investigations | 10/30/12 | A. Halboth | Review documents for privilege. | 3.7 | $212.00 | $782.55 |
| B191 General Litigation | 10/31/12 | T.M.C. Souther | Telephone call with F. Piantidosi regarding UK update and strategy. | 0.8 | $675.00 | $540.00 |
| B261 Investigations | 10/31/12 | T.M.C. Souther | Communication with MoFo and Pepper regarding investigation update. | 0.8 | $675.00 | $540.00 |
| B261 Investigations | 10/31/12 | A. Halboth | Review documents for privilege. | 2.6 | $212.00 | $549.90 |
| B261 Investigations | 10/31/12 | J.C. Snodgrass | Review audit and risk committee minutes. | 3.5 | $311.00 | $1,086.75 |
| B191 General Litigation | 11/07/12 | M.D. Foster | Analyze amended complaint. | 4 | $351.00 | $1,404.00 |
| B261 Investigations | 11/07/12 | F.C. Razzano | Meeting with FTI. | 1.5 | $603.00 | $904.50 |
| B261 Investigations | 11/08/12 | H. Jaffe | Conference re potential causes of action. | 1.1 | $495.00 | $544.50 |
| B261 Investigations | 11/08/12 | M.D. Foster | Finalize interview memo. | 2 | $351.00 | $702.00 |
| B261 Investigations | 11/09/12 | I.B. Knauer | Attention to documents and witnesses. | 0.5 | $585.00 | $292.50 |

$66,037.35 Pepper Hamilton LLP Time Detail

| TASK | DATE | NAME | FILED DESCRIPTION | TIME | RATE | FEES |
|------|------|------|-------------------|------|------|------|
| B150 Creditors' Committee | 11/13/12 | L.J. Freeh | Preparation for meeting with the Statutory Creditors' Committee (2.0); attend same (4.0). | 6 | $765.00 | $4,590.00 |
| B150 Creditors' Committee | 11/13/12 | F.C. Razzano | Attend Creditors' Committee meeting (4.0); prepare for same (1.0). | 5 | $603.00 | $3,015.00 |
| B150 Creditors' Committee | 11/13/12 | M.D. Foster | Prepare for SCC meeting (1.5); attend SCC meeting (4.0). | 5.5 | $351.00 | $1,930.50 |
| B261 Investigations | 11/19/12 | T.M.C. Souther | Communication with MoFo re: investigation update and analysis of potential claims. | 1.3 | $675.00 | $877.50 |
| B261 Investigations | 11/19/12 | A. Halboth | Prepare document review protocol. | 2.2 | $212.00 | $465.30 |
| B261 Investigations | 11/19/12 | A. Halboth | Review documents for privilege. | 3.3 | $212.00 | $697.95 |
| B261 Investigations | 11/23/12 | A. Halboth | Draft privilege review protocol. | 1.6 | $212.00 | $338.40 |
| B261 Investigations | 11/24/12 | A. Halboth | Review documents for privilege. | 2.4 | $212.00 | $507.60 |
| B261 Investigations | 11/25/12 | A. Halboth | Review documents for privilege. | 4.6 | $212.00 | $972.90 |
| B261 Investigations | 11/25/12 | A. Halboth | Review documents for privilege. | 1.6 | $212.00 | $338.40 |
| B261 Investigations | 12/04/12 | T. Souther | Communication with MoFo and H. Hubbard re interview protocols for MFGI employees. | 0.8 | $675.00 | $540.00 |
| B261 Investigations | 12/07/12 | M. Choi | Review status of case and determine future handling. | 0.6 | $320.00 | $191.70 |
| B261 Investigations | 12/09/12 | M.D. Foster | Edit and revise interview memos. | 5 | $351.00 | $1,755.00 |
| B261 Investigations | 12/21/12 | A. Halboth | Perform quality control privilege review. | 1.5 | $212.00 | $317.25 |
| B261 Investigations | 12/24/12 | A. Halboth | Perform quality control document review. | 2.4 | $212.00 | $507.60 |
| B261 Investigations | 01/02/13 | A.O. Aguayo | Updating CaseMap facts and documents. | 8 | $180.00 | $1,440.00 |
| B261 Investigations | 01/03/13 | C.B. Chuff | Conference with H. Jaffe, M. Custer, and FTI regarding investigative issues and items to be completed in connection with review of various causes of action against litigation targets. | 2 | $234.00 | $468.00 |
| B261 Investigations | 01/03/13 | C.B. Chuff | Review materials discussed with H. Jaffe, M. Custer, FTI. | 1.1 | $234.00 | $257.40 |
| B261 Investigations | 01/03/13 | L.B. Rowe | Update production status tracker. | 3.5 | $122.00 | $425.25 |
| B261 Investigations | 01/22/13 | A. Halboth | Review documents for privilege in preparation for production. | 2.8 | $261.00 | $730.80 |
| B261 Investigations | 01/24/13 | F.C. Razzano | Work on the memorandum regarding the status of the investigation. | 7 | $657.00 | $4,599.00 |

**Total:   $66,037.55**