JONES DAY
Bruce Bennett
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Tel: (213) 243-2533
Fax: (213) 243-2539

Counsel for MF Global Holdings Ltd.,
as Plan Administrator

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

| | | |
|---|---|---|
| | : | **Chapter 11** |
| **In re** | : | |
| | : | **Case No. 11-15059 (MG)** |
| **MF GLOBAL HOLDINGS LTD., et al.,** | : | |
| | : | **(Jointly Administered)** |
| **Debtors.**[1] | : | |
| | : | |
| | : | |

-------------------------------------------------------- x

### PLAN ADMINISTRATOR'S OBJECTION TO THE FINAL FEE APPLICATIONS OF PROSKAUER ROSE LLP AND DEWEY AND LEBOEUF LLP AND REQUEST FOR <u>APPOINTMENT OF A FEE EXAMINER</u>

---

[1]    The debtors in these chapter 11 cases are MF Global Holdings Ltd.; MF Global Finance USA Inc.; MF Global Capital LLC; MF Global Market Services LLC; MF Global FX Clear LLC; and MF Global Holdings USA Inc. (collectively, the "<u>Debtors</u>").

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................... 2

II.    BACKGROUND .................................................................................... 7

    A.    Appointment of the Chapter 11 Trustee.................................... 7

    B.    Appointment of the Committee ................................................ 7

III.   THE FEE APPLICATIONS .................................................................... 9

    A.    Proskauer............................................................................... 9

    B.    Dewey .................................................................................... 9

IV.    THERE WAS NO MEANINGFUL OVERSIGHT OF PROFESSIONALS' FEES
    IN THESE CHAPTER 11 CASES BY ANY ESTATE FIDUCIARY ........................ 10

V.     CERTAIN SERVICES PROVIDED BY THE COMMITTEE LAWYERS WERE
    UNNECESSARY AND HAD LITTLE POSSIBILITY OF BENEFITTING THE
    DEBTORS' ESTATES................................................................................ 13

    A.    The Committee Lawyers' excessive expenditures of time and money on
        foreign proceedings was unreasonable ............................... 14

    B.    The Committee Lawyers' work was duplicative of that of the Chapter 11
        Trustee.................................................................................. 16

VI.    ALTERNATIVELY, THE COURT SHOULD APPOINT A FEE EXAMINER........... 18

VII.   CONCLUSION..................................................................................... 20

# TABLE OF AUTHORITIES

Page

CASES

*In re Caldor, Inc. NY,*
  193 B.R. 165 (Bankr. S.D.N.Y. 1996)..................................................................11

*In re Collins & Aikman Corp.,*
  368 B.R. 623 (Bankr. E.D. Mich. 2007)..............................................................20

*In re Cont'l Airlines, Inc.,*
  138 B.R. 439 (D. Del. 1992)................................................................................20

*In re Hearthstone Homes, Inc.,*
  No. 12-80348, 2012 WL 4027296 (Bankr. D. Neb. Sept. 12, 2012)................16, 18

*In re Iridium Operating LLC,*
  478 F.3d 452 (2d Cir. 2007)................................................................................11

*In re JLM Corp.,*
  210 B.R. 19 (B.A.P. 2d Cir. 1997)......................................................................14

*In re Keene Corp.,*
  205 B.R. 690 (Bankr. S.D.N.Y. 1997)................................................................14

*In re Metro. Elec. Mfg. Co.,*
  295 B.R. 7 (Bankr. E.D.N.Y. 2003)....................................................................11

*In re Ngan Gung Rest.,*
  254 B.R. 566 (Bankr. S.D.N.Y. 2000)................................................................10

*In re Pacific Ave., LLC,*
  467 B.R. 868 (Bankr. W.D.N.C. 2012)...........................................................16, 18

STATUTES

11 U.S.C. § 105.....................................................................................................20

11 U.S.C. § 105(a)................................................................................................20

11 U.S.C. § 330..........................................................................................13, 14, 15, 19

11 U.S.C. § 330(a)(2)............................................................................................14

11 U.S.C. § 330(a)(3)............................................................................................14

11 U.S.C. § 330(a)(4)........................................................................................11, 14

11 U.S.C. § 1102 .................................................................................................................8, 15

11 U.S.C. § 1103(c) ...................................................................................................................15

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 1007-2 ..............................................................................................................2

MF Global Holdings Ltd., as Plan Administrator (the "Plan Administrator"), hereby objects to (i) the *Fourth Interim and Final Fee Application of Proskauer Rose LLP, Attorneys for the Statutory Creditors' Committee of MF Global Holdings Ltd., et al., for Approval and Allowance of Compensation for Services Rendered and for Reimbursement of Expenses* [Docket No. 1583] (as supplemented by Docket Number 1652, the "Proskauer Application") and (ii) the *Second Interim and Final Fee Application for Approval and Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred by Dewey & LeBoeuf LLP, Former Attorneys for the Statutory Creditors' Committee of MF Global Holdings Ltd., et al.* [Docket No. 1580] (as supplemented by Docket Number 1651, the "Dewey Application," and together with the Proskauer Application, the "Fee Applications"). Proskauer Rose LLP ("Proskauer") seeks final approval of **$5,032,772.73** in fees,[1] and Dewey & LeBoeuf LLP ("Dewey") seeks final approval of **$3,750,652.25** in fees.[2] Proskauer and Dewey (collectively, the "Committee Lawyers") together seek fees totaling **$8,783,424.98** (the "Requested Fees") for services rendered over a period of 19 months.

For the reasons set forth below and in the declaration of Daniel J. Ehrmann (the "Ehrmann Declaration"), filed concurrently herewith, the Requested Fees are excessive and the Court should not allow them. Instead, the Court should reduce Proskauer's Requested Fees by $1.75 million and Dewey's Requested Fees by $750,000 (collectively, the "Excess Fees").[3] In the alternative, the Court should appoint a fee examiner to investigate the Committee Lawyers' work performed in the above-captioned bankruptcy cases (the "Chapter 11 Cases") as

---

[1]     *See* Docket No. 1652 at 3.

[2]     *See* Docket No. 1651 at 3.

[3]     After disallowing the Excess Fees, Proskauer's fees would total no more $3,282,772.73 and Dewey's would total no more than $3,000,652.25 (collectively, the "Reduced Fee Amounts").

compared to the benefits provided to the estates to determine the extent to which the Requested
Fees should be allowed.

## I.    PRELIMINARY STATEMENT

Viewed collectively, the MF Global enterprise (collectively, the "MF Global
Group") has enormous assets and liabilities.  Prepetition consolidated assets and liabilities were
reported as $41 billion and $39.7 billion, respectively.  However, the Debtors in these Chapter 11
Cases directly own relatively few assets and are liable for only a fraction of the MF Global
Group's aggregate indebtedness.  The disclosure statement approved by this Court on March 13,
2013 without any objection by the Committee explained that the Debtors had assets (other than
claims against and equity interests in affiliates) of approximately $130.9 million and liabilities of
$3.5 billion.  *See* Docket No. 1111.  The MF Global Group, through affiliate broker-dealers and
futures commission merchants, operated in markets for commodities and listed derivatives
worldwide.  But the Debtors themselves had extremely limited operations.  Out of over 2,900
employees employed by MF Global Group, the Debtors had only approximately 250 employees.[4]
During the pendency of these Chapter 11 Cases, the Debtors accumulated approximately
$64 million liquidating and collecting assets owned directly by the Debtors.  However, the
aggregate professional fees incurred in these Chapter 11 Cases exceed $67 million.

To be sure, the Debtors' assets included claims against and equity interests in
their subsidiaries, but in all or virtually all cases, the non-Debtor MFG entities around the world
became subject to various proceedings in which administrators or trustees were appointed by
pertinent authorities to oversee, manage, and administer the affairs of those affiliates going
forward.  Although the Committee was understandably interested in the affiliate proceedings, it

---

[4]    *See* Motion for an Interim Order (I) Authorizing, but not Requiring, the Trustee to Pay Prepetition
Employee Compensation and Expense Reimbursement; and (II) Confirming that the Trustee is Able to Pay
Withholding and Payroll-Related Taxes ¶ 16 (Docket No. 295) (Dec. 20, 2011).

is important to remember that the Committee was a committee appointed in *these* Chapter 11

Cases for the benefit of the *Debtors'* unsecured creditors; it did not represent any claims against

or interests in any affiliate proceedings and it had no direct role in any of them.  As the Debtors'

affiliates and subsidiaries were themselves the subject of insolvency proceedings and were

controlled by fiduciaries appointed in those proceedings, the Debtors did not control their

affiliates and, in some instances, held limited direct claims against particular affiliates.

The Debtors' claims against and interests in their subsidiaries in the United

Kingdom is a case in point.  The Debtors had scheduled direct claims against their UK affiliates

(collectively, "MFGUK") of, at most, $73.5 million.  The Debtors' principal operating company,

MF Global Inc. ("MFGI"), itself in a liquidation proceeding pursuant to the Securities Investors

Protection Act ("SIPA") currently pending before this Court, had additional and significantly

larger direct claims against MFGUK.  Consequently, MFGI was recognized as a major creditor

of MFGUK and was appointed to positions on the relevant committees of MFGUK's creditors.

The Debtors were not.  Nevertheless, Dewey and Proskauer, as legal counsel to the Committee,

expended 5,589 hours, incurring $3,519,657.50 in fees and expenses, in connection with such

foreign proceedings — a billing category that is mainly comprised of activity in connection with

investigating the affairs of MFGUK, but also includes activities in connection with less material

proceedings of other foreign affiliates.  During many periods, at least two members of the

London offices of Dewey and then Proskauer devoted what appears to be substantially all of

their billable time in these Chapter 11 Cases to the representation of the Committee in

connection with the MFGUK cases.[5]  However, this may well understate the time and expense

---

[5]    Mark Fennessy and Mark Griffiths, both partners at first Dewey and later Proskauer, billed 329 and 381
hours respectively for a combined total of 710 hours incurring $603,954 in fees while at Dewey and 955
and 977 hours respectively for a combined total of 1,932 hours incurring $1,666,775 in fees while at
(Cont.'d)

devoted to this effort as the Committee, through Dewey and then Proskauer, also engaged the

services of one or more senior barristers (sometimes referred to as "Queen's Counsel") to assist

them with the MFGUK cases.

   The Committee's role in these Chapter 11 Cases was largely to oversee and

monitor the efforts of the Chapter 11 Trustee, particularly in connection with matters in which

the Committee (and in some instances the Debtors) lacked standing to participate directly.  Thus,

the fees incurred by the Committee were enormous, particularly where the Chapter 11 Trustee's

role was, as a legal and practical matter, largely limited to monitoring the efforts of the trustee

appointed in MFGI's SIPA proceeding, who in turn was a more active participant in the MFGUK

proceedings.  Put another way, the fourth level of oversight of the MFGUK proceedings cost the

Debtors' estates over $3.5 million.

   A large amount of the Committee Lawyers' fees were incurred in connection with

litigation commenced in an attempt to give the Debtors a more significant seat at the table in the

MFGUK proceedings — cases where they were regarded as a relatively minor creditor.  Debtor

MF Global Finance USA Inc. ("Finance USA") submitted a claim in the MFGUK administration

for between $124 and $242 million, which was rejected by the MFGUK administrator.  Finance

USA appealed the decision, incurring additional fees and costs, before ultimately withdrawing its

claim in its entirety as part of a settlement that yielded less than $30 million in allowed claims

among the Debtors.  The problem with this approach was twofold: the litigation cost was not

commensurate with the possibility of success, and the Debtors' creditors bore the brunt of all

costs and expenses associated with the litigation, whether such amounts were incurred by

MFGUK, MFGI, or the Debtors.  Despite incurring at least $9.6 million in fees investigating and

---

Proskauer in connection with the MFGUK proceedings, proceedings to which  neither the Committee nor
the Chapter 11 Trustee were a party.

litigating claims in foreign proceedings, the net result of the Chapter 11 Trustee's and

Committee's combined efforts was that the Debtors have allowed claims of $29.7 million in the

MFGUK proceedings and $25.8 million in allowed claims against other foreign entities.

      Apart from the forgoing, one of the primary statutory obligations of a chapter 11

trustee is to file a plan of reorganization on behalf of the debtor.  A statutory creditors'

committee, in turn, is tasked with participating in the formulation of the plan and advising the

committee with respect to plan formulation.  Fifteen months after the commencement of these

Chapter 11 Cases, however, the Chapter 11 Trustee still had not filed a plan, and the Committee

also had not prepared a plan for the Debtors.

      Frustrated with the Chapter 11 Trustee's and Committee's lack of urgency and

productivity, a group of creditors (the "Creditor Co-Proponents") took initiative and filed their

own plan of liquidation in January 2013 — a plan that was ultimately supported by almost every

creditor of the Debtors.  The Chapter 11 Trustee recognized that the proposed plan, from the

moment it was filed, was supported by large numbers of creditors holding a huge amount of

claims and quickly joined the Creditor Co-Proponents as a co-proponent of the plan.  The

Committee, on the other hand, did not become a plan proponent and did not play a significant

role in the plan process.  Less than three months after the Creditor Co-Proponents first filed their

plan, the Court confirmed a chapter 11 plan of liquidation for each of the Debtors, thereby

significantly accelerating these Chapter 11 Cases and significantly moving up the time table for

creditor recoveries.

      The Committee Lawyers might enjoy some presumption that the fees incurred

were reasonable if the Chapter 11 Trustee had carefully reviewed all interim fee applications,

evaluated the reasonableness of the services performed and then, based upon careful

deliberations, decided not to object to the compensation and expense reimbursement sought. However, no such presumption can attach in this case.

The board of directors of MF Global Holdings Ltd. (the "Board") tried to determine if there had been any review, analysis and/or discussion of the scope of services performed and fees and expenses incurred by professionals in these Chapter 11 Cases. The objective record (consisting of the time records filed by the Chapter 11 Trustee and his retained attorneys and accountants) reveals that the Chapter 11 Trustee and his professionals seemingly devoted little, if any, time to reviewing fee applications other than in connection with preparing their own, undertaking any analysis or evaluation of the amounts sought by other professionals, or assessing the reasonableness of the fees and expenses incurred in the course of these Chapter 11 Cases. In light of this apparent lack of monitoring of expenditure of estate resources on professional fees prior to the filing of the final fee applications, the Plan Administrator believes that the absence of objections to prior interim applications is not meaningful.

Likewise, there is no objective evidence that the Committee exercised meaningful oversight of its own professionals' expenditure of time or money. The time entries for the Committee's professionals indicate that the professionals spent time reviewing and preparing their own fee applications but little or no time monitoring other professionals' fees or communicating with the Committee's other professionals, and there is no evidence of any procedures designed to ensure the reasonableness of the Committee's professionals' fees.

The Plan Administrator appreciates the legitimate efforts of all professionals that participated in these Chapter 11 Cases, and in many instances, the Committee's efforts were appropriate. The Plan Administrator, however, cannot ignore the fact that in other instances, the Committee Lawyers incurred fees that should not be reimbursed at the expense of the Debtors' creditors. Accordingly, and for the reasons set forth below, the Plan Administrator expects that

the Court will conclude that certain of the services provided by the Committee Lawyers were unnecessary and provided minimal benefit to the Debtors' estates, and that the Excess Fees sought by the Committee Lawyers are unreasonable.  Accordingly, the Plan Administrator requests that the Court disallow the Excess Fees.  Alternatively, to mitigate the burden that would otherwise be imposed upon the Court and in an effort to reduce the acrimony that has developed as a result of the Plan Administrators' efforts to address this important issue,[6] the Plan Administrator requests that the Court appoint a fee examiner to resolve the issues set forth in this objection.

## II.    BACKGROUND

### A.    Appointment of the Chapter 11 Trustee

On November 28, 2011, the Court entered an order approving the appointment of Louis J. Freeh as chapter 11 trustee (the "Chapter 11 Trustee") in these Chapter 11 Cases.[7]  On February 9, 2012, the Court entered orders approving the Chapter 11 Trustee's retention of three law firms: Morrison & Foerster LLP ("MoFo") as bankruptcy counsel, Free Sporkin & Sullivan LLP ("FSS") as investigative counsel, and Pepper Hamilton LLP ("Pepper") as special counsel. *See* Docket Nos. 437, 440, 441.  The Court also approved the Chapter 11 Trustee's retention of FTI Consulting, Inc. ("FTI") as financial advisor.  *See* Docket No. 438.  On April 10, 2012, the Court approved the Chapter 11 Trustee's retention of Freeh Group International Solutions LLC ("FGIS") as accountant to the Chapter 11 Trustee.  *See* Docket No. 618.

---

[6]    Rather than engaging in constructive dialogue designed to reach a consensual resolution of the Plan Administrator's concerns highlighted in this objection, upon learning of the Plan Administrator's request to various professional for fee reductions, certain of these professionals have taken it upon themselves to place rather aggressive and confrontational calls to members of the Board, senior management, as well as the actual holders of significant claims in these Chapter 11 Cases in what appears to be an attempt to convince the Plan Administrator to not file this objection.  Given the unwillingness to negotiate and personal tone that these communications have taken, the Plan Administrator believes that an independent third party fee examiner is best suited to handle this in an objective manner.

[7]    *See* Docket No. 170.

B.    **Appointment of the Committee**

On November 7, 2011, the United States Trustee appointed an official committee of unsecured creditors (the "Committee") pursuant to 11 U.S.C. § 1102.[8]  On January 19, 2012, the Court entered an order approving the retention of Dewey as counsel to the Committee (the "Dewey Retention Order").[9]  In accordance with the Court's order, Dewey was authorized to (i) assist and advise the Committee with respect to the administration of the Chapter 11 Cases and MFGI's SIPA proceeding, (ii) attend meetings and negotiate on behalf of the Committee in other proceedings involving the Debtors' affiliates, (iii) assist and advise the Committee in its examination and analysis of the conduct of the Debtors' and their subsidiaries' affairs, (iv) assist the Committee in the formulation, review, analysis, and negotiation of any plan and disclosure statement that may be filed, (v) investigate and prosecute actions on behalf of holders of general unsecured claims, (vi) review and analyze claims filed against the Debtors' estates, (vii) prepare motions, applications, answers, orders, reports, and papers in support of positions taken by the Committee, and (viii) appear in court on behalf of the Committee.  *See* Dewey Retention Order at 2-3.

On July 11, 2012, the Court entered an order approving the retention and employment of Proskauer as counsel to the Committee, replacing Dewey (the "Proskauer Retention Order").[10]  The Proskauer Retention Order provided that Proskauer would perform the same services for the Committee that Dewey had previously performed.  *See* Proskauer Retention Order at 3.  On February 9, 2012, the Court also entered an order approving the

---

[8]       *See* Docket No. 51.

[9]       *See* Docket No. 377.

[10]      *See* Docket No. 747.

retention and employment of Capstone Advisory Group LLC ("Capstone") as financial advisor

to the Committee.[11]

## III.    THE FEE APPLICATIONS[12]

### A.    Proskauer

In its fee application, Proskauer seeks final allowance of $5,032,772.73 in fees for

the period May 14, 2012 through June 4, 2013.  In that time, Proskauer billed approximately

8,200 hours among 25 different billing categories, including Foreign Proceedings ($2.4 million

and 3,900 hours); Communication with the Committee ($400,000 and 550 hours);

Communication with Capstone ($420,000 and 520 hours); Plan Process ($280,000 and 310

hours); Legal Research and Analysis ($270,000 and 380 hours); and Chapter 11 Trustee

($200,000 and 270 hours).[13]  To date, Proskauer has been paid approximately $4.4 million in

fees and expenses from the Debtors' estates.

### B.    Dewey

In its fee application, Dewey seeks final allowance of $3,750,652.25 in fees for

the period November 9, 2011 through May 14, 2012.  In that time, Dewey billed approximately

6,200 hours among 24 billing categories, including Foreign Proceedings ($1.1 million and 1,700

hours); Communication with the Committee ($490,000 and 660 hours); Communication with

Capstone ($370,000 and 450 hours); SIPA Trustee ($310,000 and 480 hours); Legal Research

and Analysis ($220,000 and 330 hours); Preparation of Pleadings ($200,000 and 340 hours);

Pleading and Docket Review ($190,000 and 350 hours); and Case Administration ($170,000 and

---

[11]    *See* Docket No. 435.

[12]    The following provides a brief summary of the Fee Applications.  Attached as Exhibit A to the Ehrmann Declaration is a more detailed summary of the Committee Lawyers' and others' fee applications.

[13]    The remaining billing categories account for less than $1 million in fees, with no single category accounting for more than $200,000.

390 hours).[14]  To date, Dewey has been paid approximately $3.4 million in fees and expenses

from the Debtors' estates.  Together, therefore, the Committee Lawyers have submitted invoices

for fees and expenses totaling over $8.7 million and have already been paid nearly $7.8 million.

## IV.    THERE WAS NO MEANINGFUL OVERSIGHT OF PROFESSIONALS' FEES IN THESE CHAPTER 11 CASES BY ANY ESTATE FIDUCIARY.

As a fiduciary of the creditors in these Chapter 11 Cases, the Chapter 11 Trustee

had a duty to ensure that the services provided by the professionals in these Chapter 11 Cases

were necessary to the administration of the cases or reasonably likely to benefit the Debtors'

estates.  *See In re Ngan Gung Rest.*, 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2000) ("A trustee has a

statutory duty to protect and preserve property of the estate for the purpose of maximizing a

distribution to creditors."); *In re Metro. Elec. Mfg. Co.*, 295 B.R. 7, 11 (Bankr. E.D.N.Y. 2003)

("the Chapter 11 Trustee owes a fiduciary duty to each creditor of the estate"); 11 U.S.C.

§ 330(a)(4) (chapter 11 trustee's professionals are not entitled to recover fees for services that

were neither necessary to the administration of the case nor reasonably likely to benefit the

estate).  In addition, as a fiduciary of unsecured creditors in these Chapter 11 Cases, the

Committee also had a duty to ensure that the services provided by professionals were necessary

to the administration of the cases or reasonably likely to benefit the Debtors' estates.  *See In re*

*Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007) ("The Committee has a fiduciary duty

to maximize their recovery of the Estate's assets."); *In re Caldor, Inc. NY*, 193 B.R. 165, 170

(Bankr. S.D.N.Y. 1996) ("Professionals retained by an official committee owe fiduciary duties to

the committee."); 11 U.S.C. § 330(a)(4) (committee's professionals are not entitled to recover

fees for services that were neither necessary to the administration of the case nor reasonably

---

[14]    The remaining billing categories account for less than $1 million in fees, with no single category accounting for more than $165,000.

likely to benefit the estate).  Yet time records submitted by the Chapter 11 Trustee's and the

Committee's professionals reveal that there was likely little or no effort exerted by either the

Chapter 11 Trustee or the Committee to monitor professional fees or to ensure that services in

these Chapter 11 Cases were provided in a cost effective manner with the goal of benefiting the

Debtors' creditors.[15]

In total, the Committee Lawyers billed over 14,400 hours in these Chapter 11

Cases, incurring fees in excess of $8.7 million for which they seek reimbursement from the

Debtors' estates.[16]  Specifically with respect to foreign proceedings, the Committee Lawyers

billed over 5,500 hours, incurring fees in excess of $3.5 million, accounting for over 40% of the

total fees incurred by the Committee Lawyers in these Chapter 11 Cases.[17]  The amount of time

that the Committee Lawyers spent on foreign proceedings appears to be excessive.  *See infra*

§ V.

A review of the time entries submitted by the Chapter 11 Trustee's professionals

reveals that neither the Chapter 11 Trustee himself, nor any of his attorneys or accountants seem

to have made a material effort to monitor professional fees in these Chapter 11 Cases, to ensure

that professionals were performing only tasks that were necessary to the administration of these

Chapter 11 Cases or likely to benefit creditors, or to take steps to avoid duplication of efforts.

The Chapter 11 Trustee billed less than one hour to fee-related issues during the entirety of the

Chapter 11 Cases, and a review of the time records shows no communications with his retained

professionals regarding monitoring or even considering professionals' fees during the cases.

---

[15]    The time records of the Committee members are not available.

[16]    *See* Ehrmann Declaration, Exhibit A.

[17]    Dewey billed 1677.50 hours, incurring $1,090,863.00 in fees and expenses in connection with foreign
proceedings, accounting for 29.1% of the total fees sought by Dewey.  Proskauer billed 3911.50 hours,
incurring $2,428,794.50 in fees and expenses in connection with foreign proceedings, accounting for 48.3%
of the total fees sought by Proskauer.

Similarly, a review of FGIS's time records reveal that no time was spent monitoring

professionals' fees. Mr. Piantidosi, a partner at FGIS, billed time that accounts for 90% of

FGIS's total billable hours in these Chapter 11 Cases. *See* Docket No. 1575-4, Ex. D. Mr.

Piantidosi alone billed over 2,700 hours in these Chapter 11 Cases wherein he spent time

reviewing his own time entries and FGIS's bills, but did not seem to have devoted any attention

to other professionals' fees. *See* Docket No. 1575. Professionals at MoFo, FSS, and Pepper

reviewed and analyzed their respective fees for purposes of filing their own fee applications, but

no one at any of these firms seems to have spent more than a de minimis amount of time

reviewing other professionals' fees. *See* Docket Nos. 895,1577, 1581.

A review of the time entries for each of the Committee's professionals – the

Committee Lawyers as well as Capstone – reveals that none of the Committee's professionals

appear to have made any material effort to monitor professional fees, to ensure that professionals

were performing only tasks that were necessary to the administration of these Chapter 11 Cases

or likely to benefit creditors, or to avoid duplication of efforts either. The Committee's

professionals did not seem to spend more than a de minimis amount of time communicating with

each other regarding the incurrence of fees, nor is there evidence that any system or procedures

were put in place to monitor professionals' activity or to ensure the reasonableness of fees

incurred. The Committee's professionals' time records also do not show any time devoted to

reviewing and responding to inquiries by Committee members on the subjects of fees or

expenses nor any conferences devoted to this subject.

In a case where total professional fees have exceeded $60 million, the impact of

unsupervised professional fees directly impacts creditor recoveries. The lack of oversight means

that a searching and substantive review of the Committee Lawyers' fees and expenses, and in

particular, the enormous amounts incurred in connection with foreign proceedings, is warranted.

## V.    CERTAIN SERVICES PROVIDED BY THE COMMITTEE LAWYERS WERE UNNECESSARY AND HAD LITTLE POSSIBILITY OF BENEFITTING THE DEBTORS' ESTATES.

The Excess Fees are unreasonable under section 330 of the Bankruptcy Code. Section 330 provides that the Court may award retained professionals "reasonable compensation for actual, <u>necessary</u> services rendered by the trustee, . . . professional person, or attorney and by any paraprofessional person employed by any such person."  (emphasis added).  The Court, however, has the discretion to "award compensation that is less than the amount of compensation that is requested."  11 U.S.C. § 330(a)(2).

Where a professional provided services that (i) were duplicative of other services, (ii) "were not reasonably likely to benefit the debtor's estate," or (iii) "were not necessary to the administration of the case," then the Court must deny the professional recovery of fees on account of such services.  *See* 11 U.S.C. § 330(a)(4) ("the court shall not allow compensation" for such services).  The Court must also deny recovery of fees that are otherwise unreasonable, taking into consideration (i) the time spent by the professional, (ii) the professional's rates, (iii) whether the professional's services were "necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of" the bankruptcy case, (iv) whether the professional's services were "performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed," (v) the professional's skill and experience, and (vi) "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners" in non-bankruptcy cases.  *See* 11 U.S.C. § 330(a)(3).

The Committee Lawyers bear the burden of establishing that the services they provided were necessary to the administration of the Bankruptcy Cases or reasonably likely to benefit the Debtors' estates, were not duplicative of other services provided to the Chapter 11

Trustee and the Committee, and were otherwise reasonable for purposes of section 330 of the

Bankruptcy Code. *See In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) ("The

applicant bears the burden of proof on its claim for compensation."); *In re JLM Corp.*, 210 B.R.

19, 24 (B.A.P. 2d Cir. 1997) ("An applicant bears the burden of proving the reasonableness of

compensation from a bankruptcy estate."). The Committee Lawyers' fee applications provide a

brief overview of the services they provided with respect to foreign proceedings, but they do not

explain why the Committee or the Committee Lawyers' believed that their attention to foreign

proceedings was reasonably likely to benefit the Debtors' estates. Because certain of the

Committee Lawyers' services were duplicative, were not reasonably likely to benefit the

Debtors' estates, were not necessary to the administration of the Bankruptcy Cases, and were

otherwise unreasonable, the Committee Lawyers cannot meet their burden under section 330,

and the Court should award them at most the Reduced Fee Amounts.

A.     **The Committee Lawyers' excessive expenditures of time and money on foreign proceedings was unreasonable.**

As a committee appointed pursuant to section 1102 of the Bankruptcy Code, the

Committee's authority was limited to: (i) consulting with the Chapter 11 Trustee regarding case

administration, (ii) investigating the Debtors' acts, conduct, assets, liabilities, and financial

condition, and other matters relevant to the case or the formulation of a plan, (iii) participating in

the formulation of a plan, and (iv) performing other services in the interests of the parties

represented by the Committee. *See* 11 U.S.C. § 1103(c). Generally, the Committee's role in

these Chapter 11 Cases should have been limited by the appointment of the Chapter 11 Trustee.

In a typical chapter 11 case, the debtor in possession retains control of its operations and the

administration of the estate. Because a debtor's interests may conflict with the interests of

creditors, a creditors' committee is often appointed to give unsecured creditors an official voice

in the bankruptcy case. However, where a chapter 11 trustee has been appointed, the interests of

-14-

unsecured creditors are represented by the chapter 11 trustee. A committee's role is therefore

significantly more limited in a case in which a chapter 11 trustee has been appointed, as in these

Chapter 11 Cases, because the committee can rely on the chapter 11 trustee to protect the

interests of unsecured creditors. *See In re Pacific Ave., LLC*, 467 B.R. 868, 868-70 (Bankr.

W.D.N.C. 2012) (disbanding the creditors' committee after appointment of a chapter 11 trustee

because the "Trustee has a statutory fiduciary duty to the same unsecured creditors represented

by the Committee" and the "Trustee is capable of and required to adequately represent the

interests of unsecured creditors").

In light of the Committee's limited role given the context of these Chapter 11

Cases, the amount of time spent by the Committee monitoring foreign proceedings is especially

concerning and the Committee Lawyers are not entitled to reimbursement on account of the

related Excess Fees. *In re Hearthstone Homes, Inc.*, No. 12-80348, 2012 WL 4027296, at *2-3

(Bankr. D. Neb. Sept. 12, 2012) (reducing fees sought by creditors' committee and stating:

"Once a Chapter 11 trustee is appointed, the role of the Creditors Committee should be reduced

since the trustee has a statutory fiduciary duty to the same unsecured creditors represented by the

Committee. Accordingly, the Committee should limit its involvement and avoid unnecessary

duplication of the trustee's efforts.").

At most, the Committee's role was to monitor the Chapter 11 Trustee's activity in

foreign proceedings, who himself should have played a limited role. The Committee and the

Committee Lawyers significantly exceeded the scope of the Committee's duties and in the

process incurred excessive fees.

The Committee Lawyers appear to have spent an excessive amount of time

monitoring the foreign insolvency proceedings of the Debtors' affiliates. Dewey attorneys spent

over 1,675 hours on foreign proceedings for a total of $1,090,863.00 in fees, accounting for over

29% of the total fees Dewey requests. *See* Ehrmann Declaration, Exhibit A. This is more than

twice the amount Dewey spent in any other billing category. *See id.* Proskauer attorneys billed

over 3,900 hours to foreign proceedings in just 12 months (*i.e.*, more than 10 hours per day) for a

total of $2,428,794.50 in fees. *See id.* This is over 48% of the total fees billed by Proskauer and

more than five times the amount of fees Proskauer incurred in any other category. Altogether,

the Committee Lawyers billed over 5,500 hours to foreign proceedings and incurred fees in

excess of $3.5 million, accounting for over 40% of the total fees incurred by the Committee

Lawyers in these Chapter 11 Cases. *See id.*

This amount is facially excessive and unreasonable. Notwithstanding the amount

of time spent by professionals, including the Committee Lawyers, investigating and participating

in foreign insolvency proceedings, the net result of all professionals' excessive attention to

foreign proceedings was that the Debtors obtained a $29.7 million allowed claim in the MFGUK

administration and a total of $25.8 million in allowed claims in the insolvency proceedings of

other foreign affiliates.[18] In a case of this magnitude, clearly a $25.8 million potential recovery

is not a good use of the estates' resources in an attempt to maximize creditor recoveries.

B.    **The Committee Lawyers' work was duplicative of that of the Chapter 11 Trustee.**

The Committee Lawyers' work was likely largely duplicative of the Chapter 11

Trustee's efforts in connection with foreign proceedings. Under all applicable retention orders,

the Committee's professionals should have coordinated and worked with the Chapter 11

Trustee's professionals to avoid duplication of efforts. Especially in a case such as this one

where the Chapter 11 Trustee's involvement, by definition, should limit the role of the

committee. *See In re Pacific Ave., LLC*, 467 B.R. at 868-70; *In re Hearthstone Homes, Inc.*, No.

---

[18]    *See* Disclosure Statement [Docket No. 1111-1] § IV.D, § IV.F.

12-80348, 2012 WL 4027296, at *2-3.  Instead, the Chapter 11 Trustee's and Committee's professionals independently investigated and monitored foreign insolvency proceedings for over 14,000 hours over the course of just 18 months, incurring more than $9.6 million in fees between them.[19]  Notably, counsel for the administrators in the MFGUK proceedings incurred approximately $37 million in fees over the same time period.[20]  In other words, the Committee and Chapter 11 Trustee's professionals incurred more than 25% of the total fees incurred by the attorneys actually tasked with administering the foreign proceedings, notwithstanding that the Chapter 11 Trustee had a monitoring role and the Committee had the role of monitoring the Chapter 11 Trustee's efforts, as monitor himself.

The Committee Lawyers do not attempt to justify the countless hours spent duplicating the efforts of the Chapter 11 Trustee and monitoring the Chapter 11 Trustee, who himself should have played only a monitoring role with respect to the foreign proceedings. Given that these Chapter 11 Cases do not have the more typical chapter 11 dynamic of the debtor in possession guarding the estate while the creditors' committee advocates for recoveries to the debtor's unsecured creditors, the Committee Lawyers and the Chapter 11 Trustee's professionals should have been aware that in many instances, their interests were aligned, and they should have been vigilant in coordinating their efforts to avoid wasting estate resources that could otherwise be distributed to creditors.  The significant amount of time spent on foreign

---

[19]    This includes 6,000 hours and nearly $4.6 million billed on foreign proceedings by MoFo.  *See* Ehrmann Declaration, Exhibit A.

[20]    *See* MF Global UK Limited Special Administrators' Progress Reports, *available at* http://www.kpmg.com/UK/en/IssuesAndInsights/ArticlesPublications/Documents/PDF/Advisory/MF-Global-6-Month-progress-report.PDF, http://www.kpmg.com/UK/en/IssuesAndInsights/ArticlesPublications/Documents/PDF/Advisory/mf-global-6-monthly-report-nov2012.pdf, and http://www.kpmg.com/UK/en/IssuesAndInsights/ArticlesPublications/Documents/PDF/Advisory/mfglobal-uk-six-month-report-%20to-30-april-2013.pdf (showing that legal fees incurred by the MF Global U.K. Administrators totaled approximately £23,232,000, which is approximately $37,600,000 U.S., between October 31, 2011 and April 30, 2013).

-17-

proceedings is even less justifiable in light of the fact that such time did not result in a substantial

increase in recoveries for the benefit of the Debtors' creditors.  Given the appointment of the

Chapter 11 Trustee, the Committee Lawyers, as monitors of the Chapter 11 Trustee, who was

monitoring the work of the administrators in foreign proceedings, billed far in excess of a

reasonable amount in incurring over $3.5 million in monitoring foreign proceedings.

      As a result of the time spent by the Committee Lawyers focused on foreign

proceedings, resulting in an unreasonable duplication of the Chapter 11 Trustee's own

monitoring of the same foreign proceedings, the Excess Fees sought by the Committee Lawyers

are unreasonable under section 330 of the Bankruptcy Code.  Accordingly, Dewey's fees should

be reduced by $750,000, and Proskauer's should be reduced by $1.75 million to more accurately

reflect what was necessary and reasonable in these Chapter 11 Cases, or, in the alternative, the

Court should appoint a fee examiner, as set forth below.

## VI.    ALTERNATIVELY, THE COURT SHOULD APPOINT A FEE EXAMINER.

      If the Court is not inclined to disallow the Excess Fees for the reasons set forth

above, and in order to alleviate the burden that would be imposed on this Court in undertaking a

detailed substantive analysis to satisfy itself of the unreasonableness of the Excess Fees charged

by the Committee Lawyers, the Plan Administrator respectfully requests that the Court appoint a

fee examiner to investigate the Excess Fees in light of the issues raised in this objection and to

determine the extent to which the Requested Fees should be reduced to reflect reasonable and

necessary amounts.

      The Court has the authority to appoint a fee examiner pursuant to section 105(a)

of the Bankruptcy Code, which permits the Court to "issue any order, process, or judgment that

is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  *See In re*

*Collins & Aikman Corp.*, 368 B.R. 623, 625 (Bankr. E.D. Mich. 2007) ("In large or particularly

complex cases, the Court may appoint a fee examiner pursuant to § 105 . . . to assist the Court in carrying out its duties."); *In re Cont'l Airlines, Inc.*, 138 B.R. 439, 440 (D. Del. 1992) ("the fee examiner was appointed pursuant to 11 U.S.C. § 105").

Here, the complexity of the Chapter 11 Cases and the sheer amount of time and money spent by the Committee Lawyers, combined with the serious issues raised in this objection, warrant the appointment of a fee examiner. The Committee Lawyers have billed over 14,000 hours and have incurred nearly $9 million in legal fees as counsel to the Committee.[21] The Committee Lawyers' fee applications are voluminous, spanning over 2,000 pages and including tens if not hundreds of thousands of time entries, broken down among dozens of professionals and at least 25 billing categories. To ease the burden on the Court in determining whether or not the Requested Fees are reasonable, the Plan Administrator believes that it is in the best interests of the Debtors' creditors and in line with concepts of judicial economy that the Court should appoint a fee examiner at this time to review the services performed and fees incurred by the Committee Lawyers throughout these Chapter 11 Cases in connection with foreign proceedings, and to submit a recommendation to the Court regarding appropriate fee reductions.

Prior to the filing of this objection, representatives of the Plan Administrator contacted representatives of the Committee Lawyers in an effort to discuss and consensually resolve its concerns over the Excess Fees. Having been unsuccessful in such endeavors, the Plan Administrator was left with no choice but to file this objection. Unfortunately rather than the Plan Administrator's goal of achieving consensual reductions of these excess fees without involving this Court, the professionals' vivid reaction to the "ask," among other things, has made

---

[21]    Professionals retained by the Chapter 11 Trustee and Committee seek to recover over $60 million in fees and expenses from the Debtors' estates. In light of these requests for reimbursement, it may be necessary to expand the scope of the fee examiner's work if the Court feels it is appropriate.

-19-

clear to the Plan Administrator that a neutral third-party may be best suited to review the fee applications. In the hopes of avoiding protracted litigation over the Excess Fees which would further waste the assets of the Debtors' estates, the Plan Administrator believes that the appointment of a fee examiner is warranted.

## VII.    CONCLUSION

The Committee Lawyers spent over $3.5 million monitoring foreign proceedings and duplicating the efforts of the Chapter 11 Trustee, all with little possibility of providing significantly increased recoveries to its creditor constituency. It also appears that professionals in these Chapter 11 Cases were not adequately controlled, which allowed fees of this size to accumulate unchecked. The Committee Lawyers' efforts in connection with foreign proceedings appear to have been largely unnecessary to the administration of these Chapter 11 Cases and in many instances, provided minimal, if any, benefit to the Debtors' creditors. The Committee Lawyers should have known, at the time, that spending thousands of hours on foreign proceedings in which the Debtors had minimal direct claims was unreasonable under the circumstances of these Chapter 11 Cases and would likely result in little benefit to the Debtors' creditors. Therefore, the Court should not permit these professionals to recover the Requested Fees but instead should disallow the Excess Fees or, alternatively, appoint a fee examiner to determine an appropriate allowable amount of fees.

October 22, 2013                        /s/ Bruce Bennett
New York, New York                **JONES DAY**
                                                  Bruce Bennett
                                                  555 South Flower Street, Fiftieth Floor
                                                  Los Angeles, CA 90071
                                                  Tel: (213) 243-2533
                                                  Fax: (213) 243-2539

                                                  *Counsel for MF Global Holdings Ltd.*
                                                  *as Plan Administrator*