# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017.6702
TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

DIRECT NUMBER: (212) 326-3415
JRUEWITTSTEIN@JONESDAY.COM

JP377478
577718-600001

November 2, 2015

**VIA HAND DELIVERY AND ELECTRONIC FILING**

Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
One Bowling Green - Room 504
New York, New York 10004

Re:    In re MF Global Holdings, Ltd, No. 11-15059 (MG) (Bankr. S.D.N.Y.)

Dear Judge Glenn:

Jones Day represents MF Global Holdings Ltd., as Plan Administrator and MF Global Assigned Assets with respect to the assets acquired from MF Global Inc. ("MFGI"), including MFGI's claims as an Insured under the E&O policies.

At the status conference on Monday, October 26, 2015, we understood that Your Honor wanted to have the parties meet and confer on a number of issues and report back to the Court by 10:00 a.m. on Monday, November 2, 2015, in advance of a 5:00 p.m. status call on the renewed request by the Individual Insureds to have certain defense costs paid out of the E&O policies. Specifically, we understood that Your Honor wanted to know whether (i) the parties were prepared to agree that defense costs could be paid entirely out of the D&O tower for now, subject to some kind of allocation/reservation of rights among the insurers; and (ii) with respect to the $13.06M of D&O Side ABC coverage currently subject to the Court's September 4, 2014 Lift Stay Ruling [Docket No. 1988], whether the defendants were going to withdraw the $15M capped claims, mooting the issue, or the parties would obtain the Insurers' agreement to "freeze" the last $13.06M of D&O coverage at the Side ABC layer and see if the insurers at the next layer up would pick up the coverage.

On the latter issue, we can report to the Court that at close of business on Friday, the defendants filed Notices withdrawing the proofs of claim which correspond to the $15 million in capped indemnification claims [Docket Nos. 2145, 2146, and 2147]. While these Notices did not explicitly state that the withdrawal of the claims was with prejudice, assuming that is the case, the issue presented with respect to the $13.06 million of Side B claims would appear to be moot.

On the issue of whether the parties agree that all defense costs going forward should be paid out the D&O policies, we unfortunately do not yet have sufficient information to report definitively to the Court. While we recognize that the defendants have a difficult task in coordinating with each other and coordinating with the insurers, as of Friday close of business, we had not seen anything from the defendants indicating whether they are proposing to have all defense costs paid from the D&O insurers going forward, and if so, what the terms are for

JONES DAY

Honorable Martin Glenn
November 2, 2015
Page 2

reimbursement/allocation among the insurers for such costs (*see* email from J. Wittstein to A. Aufses dated 10/29/15 and emails from A. Aufses to J. Wittstein dated 10/30/15 at 11:53 a.m. and 4:36 p.m., attached hereto as composite Exhibit 1 A, B, and C.).

While it may seem that the Plan Administrator should be indifferent to which policies the defense costs are paid from, or should prefer that the costs be paid from the D&O insurers, the calculus is actually more complicated and may well depend on whether there will be an enforceable agreement among the insurers to have the costs reimbursed, and if so, when that will be triggered. While the Plan Administrator does not wish to violate any mediation or settlement confidences, suffice it to say that issues with respect to which insurers are prepared to meet within limits settlement demands and which are not factors into whether defense costs depleting one set of policies versus the other could have a significant impact on the Plan Administrator's interests. Moreover, the Litigation Trust's claims are payable only out of the D&O policies while the MFGAA claims apply to both policies (the claims derivative of the Customer Representatives' net equity claims are lodged against defendants as Insureds under both the E&O and D&O policies, and the former MFGI Insured Entity claim held now by MFGAA is a demand against only the E&O policies).

It should also be noted that the Plan Administrator sought from the defendants and insurers in the D&O Adversary Proceeding (several of whom are also parties to the E&O dispute) copies of the side agreements between the defendants and the D&O insurers with respect to the Securities Settlement in a request sent Monday evening after the Status Conference. *See* email from J. Wittstein to A. Aufses dated 10/26/15, attached hereto as Exhibit 2. In following up on the Court's directives with defense counsel on the E&O dispute on October 29, 2015, we reiterated our request for these documents from counsel for the Individual Insureds, and noted that we needed this information to evaluate whether it was advisable to have all defense costs going forward paid from the D&O only. *See* Exhibit 1A. We learned only at 4:36 Friday afternoon that the defendants were not prepared to produce these documents, and so we ask that they be directed to do so without further delay. We are prepared to treat these documents as "Confidential" under the terms of the Protective Order entered in the MDL, but do not understand why they are being withheld.

At this time, we also want to provide the Court briefly with the status of the Plan Administrator's E&O Demand. As counsel for the Customer Representatives advised the Court at the Status Conference, since acquiring MFGI's claim, MFGAA acted promptly to provide notice of the assignment and to provide an updated demand and proof of loss to the carriers. See letter from D. Steuber to M. Fried dated 10/24/15, attached hereto as Exhibit 3. While we are working closely with the Customer Representatives to evaluate whether to bring an action based on these outstanding demands, we would note for now only that (putting to one side that there are arbitration provisions in certain policies and reinsurance related issues which would need to be dealt with) we are focused with the defendants on trying to keep settlement discussions on track. While the D&O Adversary Proceeding was necessitated by the upcoming final approval hearing with respect to the Securities Settlement in the MDL that could result in the loss of $25 million of the $225 million D&O tower which should be available to resolve all claims and not

NAI-1500613493                                   -2-

**JONES DAY**

Honorable Martin Glenn
November 2, 2015
Page 3

vanish based on when the Securities Settlement was initially entered (rather than when it becomes effective), the decision to commence a new action against the E&O carriers is not one the Plan Administrator takes lightly, and we are carefully considering all options in the current environment.

On that note, we recognize that this Court has not been directly involved in the various efforts of the parties to mediate the MDL disputes or reach a settlement outside mediation. As Mr. Aufses assured the Court this past Monday, the parties have been engaged in serious dialogue, and without disclosing any of the history or negotiating postures, we are committed to these efforts and are scheduled to meet on proposals that are in process this week. It has been as frustrating to the Litigation Trustee and to the Plan Administrator as it seems to be to this Court that the insurance policies are wasting—we recognize that the defendants have to coordinate among themselves and with the insurers, but the fact that the Securities Settlement has been prioritized while long delays stretch between focused efforts on resolving the estate-related MDL claims benefits no one but the insurers. Frankly, we were surprised that the Individual Insureds sent the E&O letter to this Court last Monday without any prior discussion, since having available all of the insurance proceeds for the parties to reach a global resolution may be needed to facilitate that process. We are mindful of the Court's admonition that the defense costs will be paid, but when and out of which tower and at which layers within those towers are issues that have very different impacts on the estates, and which we cannot fully analyze without the information which has not yet been forthcoming from the defendants.

Finally, with respect to the Court's suggestion that the parties should try to address the issues raised in the D&O Adversary Proceeding and Objection and Reservation of Rights with respect to the Securities Settlement in the MDL before Judge Marrero, we have communicated with the parties and Judge Marrero's chambers to schedule a Status Conference and hope to be able to have an update by this afternoon's call.

Respectfully submitted,

*/s/ Jane Rue Wittstein*
Jane Rue Wittstein

Enclosures

cc:  Bruce Bennett, Esq.
     Counsel of Record for the Individual Insureds
     Counsel for the E&O Insurers
     Counsel of Record for the Customer Representatives