JONES DAY
Bruce Bennett
Michael Schneidereit
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Tel:  (213) 243-2533
Fax:  (213) 243-2539

Counsel for the Litigation Trustee of the
    MF Global Litigation Trust , MF Global
    Holdings Ltd., as Plan Administrator,
    and MF Global Assigned Assets LLC

 -and-

Jane Rue Wittstein
250 Vesey Street
New York, NY 10281
Tel:  (212) 326-3939
Fax:  (212) 755-7306

Counsel for MF Global Holdings Ltd.,
    as Plan Administrator, and
    MF Global Assigned Assets LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------ x | | **Chapter 11** |
| | : | |
| **In re** | : | **Case No. 11-15059 (MG)** |
| | : | |
| **MF GLOBAL HOLDINGS LTD., et al.,** | : | **(Jointly Administered)** |
| | : | |
| **Debtors.**[1] | : | |
| | : | |
| | : | |
| ------------------------------------------------------ X | | |

**MOTION PURSUANT TO RULE 9019 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE FOR ENTRY OF AN
ORDER APPROVING THE SETTLEMENT AGREEMENT AMONG THE PLAN
ADMINISTRATOR, THE TRUSTEE OF THE LITIGATION TRUST, INDIVIDUAL
DEFENDANTS, SAPERE CTA FUND, L.P., AND THE CUSTOMER REPRESENTATIVES**

---

[1]    The debtors in the chapter 11 cases (the "Chapter 11 Cases") are MF Global Holdings Ltd.; MF Global Finance USA Inc.; MF Global Capital LLC; MF Global Market Services LLC; MF Global FX Clear LLC; and MF Global Holdings USA Inc. (collectively, the "Debtors").  The Court entered an order of final decree closing the chapter 11 cases of MF Global Capital LLC, MF Global FX Clear LLC, and MF Global Market Services LLC on February 11, 2016.

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................2
II.   JURISDICTION ........................................................................................7
III.  BACKGROUND ........................................................................................7
      *The Chapter 11 Cases* ........................................................................7
      *Claims Pending in the MDL Resolved by the Settlement* .................................10
IV.   RELIEF REQUESTED ...............................................................................18
V.    ARGUMENT ..........................................................................................19
VI.   NOTICE ...............................................................................................23
VII.  NO PRIOR REQUEST ...............................................................................24

Table of Authorities

**Page**

CASES

Cosoff v. Rodman (In re W.T. Grant Co.),
   699 F.2d 599 (2d Cir. 1983)...................................................................................18

In re Chemtura Corp.,
   439 B.R. 561 (Bankr. S.D.N.Y. 2010) ....................................................................18

In re Drexel Burnham Lambert Group, Inc.,
   134 B.R. 499 (Bankr. S.D.N.Y. 1991) ....................................................................18

In re MF Global Holdings Ltd. Inv. Litig. (Deangelis v. Corzine),
   998 F. Supp. 2d 157 (S.D.N.Y. 2014)..................................................................9, 10

In re MF Global Inc.,
   No. 11-2790 (MG), 2012 WL 3242533 (Bankr. S.D.N.Y. Aug. 10, 2012).........18, 19

In re Trinsum Grp., Inc.,
   No. 08-12547-MG, 2013 WL 1821592 (Bankr. S.D.N.Y. Apr. 30, 2013).........19, 21

JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC (In re Charter Commc'ns),
   419 B.R. 221 (Bankr. S.D.N.Y. 2009) ....................................................................18

Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC),
   478 F.3d 452 (2d Cir. 2007)....................................................................................19

Nellis v. Shugrue,
   165 B.R. 115 (S.D.N.Y. 1994).................................................................................18

Quigley Co., Inc. v. Angelos (In re Quigley Co., Inc.),
   676 F.3d 45 (2d Cir. 2012)................................................................................19, 21

Tavakoli v. Corzine (In re MF Global Holdings Ltd.),
   507 B.R. 808 .............................................................................................................10

TMT Trailer Ferry, Inc. v. Anderson,
   390 U.S. 414 (1968).................................................................................................19

STATUTES

11 U.S.C. § 105(a) ...........................................................................................................21

11 U.S.C. § 350(a) .............................................................................................................7

11 U.S.C. § 1106.................................................................................................................6

11 U.S.C. § 1123(b)(3)(B) ................................................................................................6

28 U.S.C. § 157(b) .............................................................................................................5

28 U.S.C. § 1334................................................................................................................5

28 U.S.C. §§ 1408 and 1409 .............................................................................................5

Commodity Exchange Act of 1936.............................................................................2, 9, 10

RULES

Fed. R. Bankr. P. 1015.......................................................................................................5

Fed. R. Bankr. P. 1015(c) and 9007................................................................................21

Fed. R. Bankr. P. 9019 ............................................................................................1, 4, 12

MF Global Holdings Ltd. ("MFGH"), as Plan Administrator ("Plan Administrator") under the *Second Amended and Restated Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (D.I.[2] 1382) (the "Plan")[3] confirmed in the above-referenced chapter 11 cases, on behalf of itself and its affiliates, including MF Global Assigned Assets LLC ("MFGAA"), and Nader Tavakoli, Trustee of the MF Global Litigation Trust created pursuant to the Plan (the "Litigation Trustee"; together with the Plan Administrator, "Movants") respectfully submit this motion (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of a settlement and compromise (the "Settlement") pursuant to that certain Stipulation and Agreement of Settlement dated as of July 6, 2016 (the "Settlement Agreement"), a redacted version of which is attached hereto as Exhibit B,[4] among (i) MFGAA, as assignee of certain claims, rights, and interests of MF Global Inc. ("MFGI"); (ii) MFGH; (iii) the Litigation Trustee (together with MFGAA and MFGH,

---

[2]    Citations to "D.I." refer to docket items in the main bankruptcy case of MFGH, Case No. 11-15059. Citations to "MDL D.I." refer to docket items in the consolidated MDL proceeding Deangelis v. Corzine, No. 11-cv-7866 (S.D.N.Y.) (VM) (the "MDL"). Citations to "SIPA D.I." refer to docket items in the SIPA liquidation of MF Global Inc., which was proceeding before the Bankruptcy Court as Case No. 11-02790 before it was closed on April 4, 2016. Citations to "Adv D.I." refer to docket items in Adversary Proceeding Number 13-01333 (Bankr. S.D.N.Y.). Citations to "Section 105 Adv. D.I." refer to docket items in Adversary Proceeding Number 15-01362 (Bankr. S.D.N.Y.).

[3]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

[4]    The Motion, together with the supporting Declarations and a redacted version of the Settlement Agreement, are filed publicly. For the sake of completeness, Movants will be filing separately a motion to provide the Court with the unredacted version of the Settlement Agreement under seal, as required by the Settlement Agreement. *See Motion for an Order Authorizing the Filing Under Seal of Certain Exhibits to the Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for Entry of an Order to Approve the Settlement Agreement Among the Plan Administrator, the Trustee of the Litigation Trust, Individual Defendants, Sapere CTA Fund, L.P. and the Customer Representatives*, to be filed concurrently with this Motion ("Motion to Seal"). Movants have also prepared a *Confidential Supplement to Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure For Entry of an Order Approving the Settlement Agreement Among the Plan Administrator, the Trustee of the Litigation Trust, Individual Defendants, Sapere CTA Fund, L.P., and the Customer Representatives* (the "Supplement"), to be provided to the Court with the Unredacted Settlement Agreement once an order permitting the filings under seal is entered.

the "MFG Plaintiffs"); (iv) the Customer Class Representatives;[5] (v) Sapere CTA Fund, L.P.

("Sapere"), and, together with the MFG Plaintiffs and the Customer Class Representatives,

the "Plaintiffs"); (vi) Jon S. Corzine ("Corzine"), Bradley Abelow ("Abelow"), and Henri

Steenkamp ("Steenkamp" and, together with Corzine and Abelow, the "Litigation Trust Action

Defendants"); and (vii) David Dunne ("Dunne"), Vinay Mahajan ("Mahajan"), and Edith O'Brien

("O'Brien" and, together with the Litigation Trust Action Defendants, Dunne, and Mahajan,

the "Defendants."  The Plaintiffs and Defendants are collectively referred to herein as

the "Settling Parties").  In support of this Motion, Movants submit the accompanying Declaration

of Erik M. Graber Dated July 20, 2016 ("Graber Decl.") attached hereto as Exhibit C and the

Declaration of Nader Tavakoli dated July 20, 2016 ("Tavakoli Decl.") attached hereto as Exhibit

D, and state as follows:

## I.    PRELIMINARY STATEMENT

1.    This motion seeks approval of another significant milestone in these chapter 11

cases[6]:  a global settlement of all claims held by the MFG Plaintiffs against the Defendants in

actions currently pending in the MDL that will result in a gross recovery to the estates (before

certain fees and costs) of at least $132 million (Graber Decl. ¶ 5), entered simultaneously with

the Settling Parties' resolution or establishment of reserves for the remaining claims pending

against certain Defendants.  The estate-related MDL claims resolved are:  (i) the Litigation Trust

Claims asserted by the Litigation Trustee in the Litigation Trust Action against the Litigation

---

[5]    The "Customer Class Representatives" are the parties appointed as lead plaintiffs in the class action cases
alleging violations of the Commodity Exchange Act and associated regulations, all of which were consolidated for
pre-trial purposes into the case captioned Deangelis v. Corzine, No. 11-cv-7866 (S.D.N.Y.) (VM) and In re MF
Global Holdings Ltd. Investment Litigation, No. 12-md-2338 (VM).  On August 20, 2015, the District Court entered
its Decision and Order granting the class certification motion of the Customer Class Representatives, certifying a
class of former commodities and securities customers of MFGI (the "Customer Class"), and appointing Co-Lead
Class Counsel ("Class Counsel").  (MDL D.I. 981).

[6]    The descriptions of the provisions of the Settlement provided herein are provided solely for the benefit of
the Court and in conjunction with the application of relevant legal standards.  Any discrepancy between this Motion
and the Settlement Agreement is inadvertent, and the executed Settlement Agreement will control.

Trust Action Defendants; and (ii) the net equity shortfall claims asserted against all Defendants

brought by the Customer Class Representatives on behalf of former customers of MFGI

(the "Net Equity Claims") which, through a series of assignments, are now owned by MFGAA.[7]

The Settlement Agreement also embodies the Settling Parties' resolution of (i) the Customer

Class Representatives' claims against the Defendants to the extent that such claims were retained

by the class and not assigned to MFGAA (the "Customer Class Interest Claims"), which are the

subject of a separate District Court approval process for the Customer Class Distribution;[8] and

(ii) the action brought by Sapere against the Defendants, which Sapere retained by opting out of

the Customer Representative Class (the "Sapere Action").[9]  Although the Settlement does not

resolve the action brought by the CFTC against Corzine and O'Brien (the "CFTC Action"), it

---

[7]      On September 10, 2012, the SIPA Trustee and the Customer Representatives entered into the CCAA, assigning claims on behalf of the former customers and of the estate of MFGI to the Customer Representatives. See MDL D.I. 375; SIPA D.I. 3764.  On October 2, 2013, the Customer Representatives agreed to assign the Net Equity Claims to the SIPA Trustee in consideration of the advance of general estate funds sufficient to satisfy former customer net equity claims in full in the SIPA case.  See SIPA D.I. 7208; MDL D.I. 697.  On July 24, 2015, the Plan Administrator and the SIPA Trustee agreed to an assignment of the Net Equity Claims, among other things, to the Plan Administrator or its designee, pursuant to a Sale and Assumption Agreement.  See Sale and Assumption Agreement § 1.1(a), MDL D.I. 996 Ex. A, D.I. 2114 Ex. B, SIPA D.I. 8827 Ex. B.  The Sale and Assumption Agreement was approved by the Bankruptcy Court on August 19, 2015.  (DC ECF 2123; SIPA 8855).  It should also be noted that the Settlement releases the funding E&O Policies (but not any Dissenting Insurers, including the Identified Dissenters' Policies) from certain direct claims for losses as a result of the net equity shortfall lodged against the E&O Policies held by MFGH and MFGAA.  See Graber Decl. ¶ 7.

[8]      The District Court has already granted preliminary approval, approved the form of notice to the class, and scheduled a hearing on final approval of the Customer Class Distribution for September 16.  See *Order Granting Preliminary Approval of the Final Customer Settlement with the Individual Defendants, Approving the Proposed Notice to the Class, and Setting a Schedule for Final Approval*, attached as Exhibit E (MDL D.I. 150).  See also, Letter regarding request for preliminary approval of the final customer settlement, dated July 13, 2016, filed by the Customer Counsel, attached as Exhibit F (MDL D.I. 149) ("Co-Lead Counsel submit this letter motion to request that the Court:  (i) grant an order preliminarily approving the portion of the Global Settlement that resolves the Customer Interest Claims . . . – which, due to the Net Equity Settlement and Assignment Agreement . . . is the only remaining portion of the Global Settlement that requires approval under Federal Rule of Civil Procedure 23(e).").

[9]      The Settlement does not resolve the action brought by the Plan Administrator against PricewaterhouseCoopers LLP, Case No. 14-cv-02197 in the United States District Court for the Southern District of New York (the "PWC Action"), claims against Dissenting Insurers, or certain claims made or proof of loss submitted by any of the MFG Plaintiffs against the Fidelity Bond Insurers under the Fidelity Bonds.  See Settlement, Definitional ¶¶ (fff); (ggg); (ddddd).

establishes two reserves, one for Corzine and one for O'Brien, to fund their respective defense

and/or settlement of the CFTC Action.[10]

2.       The Settlement provides closure and maximizes recoveries to the estates'

creditors by shutting down the extremely costly and complex MDL litigation and thereby

avoiding further depletion of the D&O and E&O Policies to fund the Defendants' defense costs.

This Settlement was the product of months of intensive arms' length settlement negotiations and

mediations, and represents a comprehensive resolution of the MFG Plaintiffs' remaining claims

against Defendants which, in turn, was inextricably intertwined with the Defendants' final

resolution of their rights as Insureds under the debtors' D&O and E&O Policies as well as a

resolution of MFGH and MFGAA's direct claims against the E&O Insurers (except for the

Dissenting Insurers).  (Graber Decl. ¶ 7).

3.       The primary component of the Defendants' financial consideration under the

Settlement Agreement is the obligation to pay (or cause to be paid) Defendants' Financial

Obligation to and/or for the benefit of the Plaintiffs in accordance with the Settlement

Agreement.  (Settlement Agreement ¶ 1(a)).  The Defendants' Financial Obligation, as calculated

in accordance with the Settlement Agreement (Settlement Agreement ¶ 1 (a)), is currently

$184,058,725.74,[11] representing the total amount of the limits remaining in the D&O Policies

and the E&O Policies on the Execution Date, comprised of  E&O and excess E&O proceeds

totaling $118,128,771.52 and D&O proceeds of $40,929,954.22 committed to the Settlement,

---

[10]       The amounts of the reserves established for the resolution of the CFTC Action and Sapere Action are
confidential and not disclosed herein.  See Motion to Seal ¶ 12.  Disclosure of such amounts could prejudice the
bargaining positions of the parties in the still-pending CFTC Action and any opt-out actions and because these
amounts are not part of the recovery flowing directly to the MFG Plaintiffs as part of the Settlement, and so these
amounts are not relevant to the request for approval under Rule 9019. (E.g., Graber Decl. ¶¶ 4-5 n.8-9).

[11]       Under the Settlement Agreement, Defendants' Financial Obligation is to be reduced by the amount of
certain Defendants' fees and costs covered by the D&O Policies in connection with finalizing the Settlement and the
fees and costs of Corzine and O'Brien paid in defense of the CFTC Action (which are also then deducted from the
confidential CFTC Corzine Reserve and CFTC O'Brien Reserve).  (Settlement Agreement Definitional ¶ (qq)).

plus the policy limits on the Identified Dissenters' Policies totaling an additional $25 million, as

to which the Defendants are providing an irrevocable assignment of rights.  (Graber Decl. ¶ 4;

Settlement Agreement at 13 n.3).

4.       More specifically, the Settlement provides for the Defendants to cause the

contribution of all remaining insurance proceeds under certain funding agreements entered into

concurrently with the Settlement Agreement, expected to total approximately $159 million,[12] and

the assignment to the MFG Plaintiffs of Defendants' rights against the Identified Dissenters'

Policies (and any  insurer that does not pay the limits of its policies towards the Settlement)(the

"Dissenting Insurers"),[13] as well as confidential personal financial contributions by certain

individual defendants.  (Graber Decl. ¶ 4 n.8).  The gross proceeds contributed to the Settlement

Fund will be reduced by certain costs and payments required under the Settlement, including

payments for settlement of the Customer Class Interest Claims and the Sapere Action, and the

funding of the aforementioned reserves for defense and/or settlement of the CFTC Action.[14] As

set forth in the Graber Declaration, the MFG Plaintiffs, and ultimately the creditors of the

Debtors' estates, stand to receive aggregated gross recoveries in exchange for the settlement of

the estates' MDL-related claims of approximately $132 million, which will be reduced by certain

fees and defense costs (including fees and expenses to the Class Counsel as provided by the

---

[12]       This is comprised of E&O and excess E&O proceeds totaling $118,128,771.52 and D&O proceeds of
$40,929,954.22, but does not include the $25 million of Identified Dissenters' Policies which are not contributed to
the Settlement, subject to certain adjustments.  (Settlement Agreement at 13 n.3; supra n.11).  The Settlement also
provided for certain confidential personal contributions by certain defendants, identified only as the Group A
Defendants.  The effect of these contributions into the Settlement is disclosed in a net figure with the confidential
carve-outs for the settlements of other actions to avoid violating the strict confidentiality required by the Settlement
Agreement while still providing disclosure of the total recoveries anticipated for the MFG Plaintiffs from the
Settlement. (See Graber Decl. ¶ 5).

[13]       By providing for the assignment to the MFG Plaintiffs of rights held by Defendants against holdout
insurers, the Settlement streamlines the resolution of disputes involving dissenting insurers without prolonging the
MDL or rewarding recalcitrant carriers.

[14]       Amounts funded to the respective CFTC reserve that remain after payment of defense costs and the final
resolution of the CFTC Action against either Corzine or O'Brien will be distributed to MFGAA for distribution to
creditors.  (Settlement Agreement ¶ 10 (a)(iii) and 10(b)(ii)).

Settlement Agreement ¶¶ 8, 14),[15] and which could be supplemented by additional recoveries

against Dissenting Insurers or amounts not spent from the CFTC Reserves.[16]  (See Graber Decl.

¶ 6).

5.    Although the MFG Plaintiffs are not required by the terms of the Plan or the

Litigation Trust Agreement to proceed under Bankruptcy Rule 9019 or otherwise obtain Court

approval in connection with the disposition or liquidation of the causes of action held by the

MFG Plaintiffs,[17] they are required by the CCAA and the Settlement Agreement to seek certain

approvals from the Bankruptcy Court or the District Court as described more fully herein.  (See

infra ¶¶ 36-38).[18]  Moreover, the claims liquidated and released by the Settlement are among the

most significant remaining assets of these estates, and the orderly implementation of the

Settlement will have a significant impact on the remaining administration of the Plan and the

distribution of assets to creditors on account of allowed claims.  Furthermore, Bankruptcy Court

relief is also required to ensure that any acts required by or consistent with the Settlement do not

violate the plan injunction (the "Plan Injunction") established pursuant to paragraph 75 in the

*Order Confirming Amended and Restated Joint Plan of Liquidation* entered by this Court on

---

[15]    The amount of fees and expenses to be awarded to Customer Counsel is subject to District Court approval after notice and hearing (Settlement Agreement ¶¶ 8, 14).

[16]    This estimated recovery is tied to a number of factors, including the outcome of any proceedings involving the E&O Dissenters, the CFTC actions pending in the MDL (see supra n.11), and the approved amount of fees and expenses for the Customer Representatives, as discussed more fully herein.  As with all estimates involving litigation and proposed settlements, any gross recoveries or projected ranges are not a guaranteed recovery but is provided only to indicate the MFG Plaintiffs' reasonable estimate of the estates' aggregate anticipated projected recoveries under the contemplated Settlement, assuming it goes final.

[17]    Court approval of post-confirmation settlements is not required by the Plan or the Order Confirming Amended and Restated Joint Plan of Liquidation (D.I. 1288) (the "Confirmation Order").  (See Plan at 34-35 § IV.C.iii; Confirmation Order at 20-21 ¶ 34).  Similarly, the Litigation Trust Agreement, filed as an exhibit to the Second Amended Plan Supplement (D.I. 1353) grants the Litigation Trustee the power to enter into compromises and settlements, among other things, without court approval.  (D.I. 1353 Section 1.7).

[18]    The parties agreed in the Settlement Agreement to seek both Bankruptcy Court approval and, as relevant to the Customer Action, District Court approval of the Settlement.  (See Settlement Agreement ¶¶ 13-14).  In addition, the Amended and Restated Continuing Cooperation and Assignment Agreement between the Customer Representatives and MFGI (Ex. A to SIPA D.I. 3764) (the "CCAA"), which was among the agreements assigned to MFGAA, provides for the parties to seek Bankruptcy Court and District Court approval of the resolution of the Net Equity Claims and any class claims.  (See SIPA D.I. 3764 Ex. A at 3 § 2; see also MDL D.I. 375, to which SIPA D.I. 3764 is appended as Ex. A).

April 5, 2013, and to enjoin any acts by non-parties to the Settlement Agreement to interfere with its implementation.[19]  Accordingly, the Movants hereby seek entry of the Proposed Order granting this Court's approval of the Settlement.

6.      It should be noted that this motion is limited to approval of the proposed Settlement as a reasonable compromise of the MFG Plaintiffs' claims against Defendants.  The allocation among the MFG Plaintiffs of proceeds recovered under the settlement will be the subject of a separate motion to be filed in this Court to provide creditors with notice and an opportunity to be heard once the Settlement has been approved and the funds are deposited into the Settlement Fund.  (E.g., Graber Decl.¶ 6 n.11).

## II.      JURISDICTION

7.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

8.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.     BACKGROUND

### *The Chapter 11 Cases*

9.      On October 31, 2011, Holdings Ltd. and Finance USA filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On December 19, 2011, MFG Capital, FX Clear and MFG Market Services filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  On March 2, 2012, Holdings USA filed a voluntary petition in this Court for relief under chapter 11 of the

---

[19]      The Movants and MF Global Assurance Company Ltd. have filed a Notice of Presentment seeking entry of the *Stipulation and Order Regarding Limited Relief from the Plan Injunction to Permit Payments under Certain Errors and Omission Insurance Policies* (the "Plan Injunction Modification Order") (see D.I. 2269) to obtain relief from the Plan Injunction for the payments to be made from the E&O Policies under the Settlement toward the Initial Limits Payment.  Movants ask that the Court enter this Plan Injunction Modification Order on the Notice of Presentment to avoid any delay in funds being placed into the Settlement Fund once the Settlement is approved since the Settlement Agreement requires that the order modifying the Plan Injunction to permit these payments be final as a condition to the Initial Limits Payment being made by the funding insurers. (Settlement Agreement ¶ 1(a)(iv)).

Bankruptcy Code.

10.     The Debtors' cases (collectively, the "Chapter 11 Cases") are jointly administered

pursuant to Bankruptcy Rule 1015(b) (D.I. 19, 298, 528).

11.     On November 28, 2011, December 27, 2011, and March 8, 2012, Louis J. Freeh

(the "Chapter 11 Trustee") was appointed as the chapter 11 trustee for Holdings Ltd. and Finance

USA, MFG Capital, FX Clear and MFG Market Services, and Holdings USA, respectively.

(D.I. 170, 306, 548).

12.     On April 5, 2013, the Court entered an order (D.I. 1288) (the "Confirmation

Order") confirming the *Amended and Restated Joint Plan of Liquidation Pursuant to Chapter 11*

*of the Bankruptcy Code for MF Global Holdings Ltd., MF Global Finance USA Inc., MF Global*

*Capital LLC, MF Global FX Clear LLC, MF Global Market Services LLC, and MF Global*

*Holdings USA Inc.* On May 2, 2013, the Court entered an order approving certain nonmaterial

modifications to the confirmed plan which are reflected in the Plan (D.I. 1376).

13.     The Effective Date of the Plan occurred on June 4, 2013. As of the Effective

Date, Holdings Ltd. became the Plan Administrator under the Plan. Also as of the Effective

Date, pursuant to the Confirmation Order, the Chapter 11 Trustee fulfilled all of his duties under

section 1106 of the Bankruptcy Code and, accordingly, was discharged from all further

obligations.

14.     Pursuant to section IV.C of the Plan, the Plan Administrator's duties and powers

include, among other things, reviewing, reconciling, enforcing, collecting, compromising,

settling, or electing not to pursue any or all causes of action. (See Plan § IV.C.iii). Pursuant to

the Plan and § 1123(b)(3)(B) of the Bankruptcy Code, the Plan Administrator retained "any

claims, demands, rights and Causes of Action that any Debtor or Estate may hold against any

Person or Entity to the extent not released otherwise, all of which are included within Property of

8

the Estate," other than claims transferred into the Litigation Trust.  (Plan § IV.G).

15.    The claims transferred into the Litigation Trust (the "Litigation Trust Claims") are

defined by the Plan as "the claims set forth in the complaint entitled 'Louis J. Freeh, as Chapter

11 Trustee of MF Global Holdings Ltd., et al. v. Jon S. Corzine, et al.,' Adversary Proceeding

Number 13-01333 (Bankr. S.D.N.Y.), as it may be subsequently modified, amended, or

supplemented," (as amended by Adv. D.I. 22, the "Litigation Trust Complaint"), "and any claims

arising out of or related to the facts or circumstances alleged in the complaint or set forth in the

Report of Louis J. Freeh, as Chapter 11 Trustee of MF Global Holdings Ltd., et al., dated April

3, 2013 [Docket No. 1279]."  (See Plan § I.A.100).  On January 14, 2014, the District Court

withdrew the reference of the adversary proceeding commenced by the Litigation Trust

Complaint, (MDL D.I. 622), and on February 11, 2014, the District Court ordered that it be

consolidated with the actions proceeding in the MDL (MDL D.I. 643).

16.    On August 19, 2015, this Court entered an order approving the sale by the SIPA

Trustee to the Plan Administrator's designee of substantially all assets and claims held by the

SIPA Trustee or the MFGI estate in exchange for the release of the Plan Administrator's $1.16

billion allowed claim and assumption of certain obligations of the SIPA Trustee (the "Sale and

Assumption Agreement").  (D.I. 2123; SIPA D.I. 8855).  In connection with the Sale and

Assumption Agreement, the Plan Administrator caused MFGAA to be formed as the designated

transferee of the claims and assets transferred under the Sale and Assumption Agreement,

including causes of action in the MDL for the Net Equity Claims previously held by MFGI as

described more fully below.[20]

---

[20]    On February 10, 2016, the Court entered an order (SIPA D.I. 8960) discharging the SIPA Trustee and
closing the MFGI estate.  On February 11, 2016, the Court entered an order of final decree (D.I. 2201) under
§ 350(a) closing the chapter 11 cases of MF Global Capital LLC, MF Global FX Clear LLC, and MF Global Market
Services LLC.

### *Claims Pending in the MDL Resolved by the Settlement*

17.     As described above, the proposed Settlement resolves the claims brought by the MFG Plaintiffs, Customer Class Representatives, and Sapere against the Defendants.  Other claims consolidated in the MDL were brought by the Virginia Retirement System and Her Majesty The Queen In Right of Alberta as representative class plaintiffs (the "Securities Plaintiffs") against certain of the Defendants and others for violations of securities laws (the "Securities Action"), settlements of which have been reached with all individual defendants in those cases.

18.     Both the Litigation Trust Claims and the Customer Class Claims seek compensation for claimed wrongdoing associated with the collapse of MF Global in 2011.  The Litigation Trust Complaint seeks damages from the Litigation Trust Action Defendants for alleged breaches of fiduciary duties of care and loyalty in their capacities as officers or board members, as applicable, prior to MF Global's collapse.  As set forth in the Declaration of Nader Tavakoli, these damages are asserted to be at least $2 billion.  (*See* Tavakoli Decl. ¶ 1 n.6). More specifically, Count One of the Litigation Trust Complaint alleges that the Litigation Trust Action Defendants breached their duty of care when, among other things, they failed to adequately inform themselves or others of key financial indicators prior to engaging in a new, risky strategy by making a series of "highly leveraged investments in European sovereign debt instruments using repurchase-to-maturity financing transactions, also known as 'repo-to-maturity' or 'Euro RTM' transactions."  (Litigation Trust Complaint ¶ 2).

19.     Count Two of the Litigation Trust Complaint alleged that the Litigation Trust Action Defendants breached their duty of loyalty to the corporation by acting in bad faith and against the corporation's best interest in connection with MF Global's collapse.  The Litigation Trust Complaint alleged that the Litigation Trust Action Defendants did so by "consciously

ignoring known risks" and "concealing the risks from the Board," by disregarding the guidance

of the Board, and by improperly diverting funds from customer accounts to address growing

liquidity problems.  (Id. ¶ 185).

20.    The complaint filed by the Customer Representatives (the "Customer Complaint")

sought recovery for the claimed illegal transfer of funds belonging to MFGI's customers to

finance other operations (the "Customer Claims") in violation of the Commodity Exchange Act

of 1936 (the "CEA") and associated regulations.  See Consolidated Amended Class Action

Complaint for Violations of the Commodity Exchange Act and the Common Law, MDL D.I.

382; see also In re MF Global Holdings Ltd. Inv. Litig. (Deangelis v. Corzine), 998 F. Supp. 2d

157, 167 (S.D.N.Y. 2014) (granting in part and denying in part defendants' motions to dismiss

the Customer Complaint).

21.    On March 14, 2014, the District Court approved a settlement and transfer of, *inter

alia*, the Net Equity Claims portion of the Customer Claims to the SIPA Trustee pursuant to an

October 2, 2013 assignment in exchange for the advance of general estate funds sufficient to

repay 100% of Customers' outstanding net equity.  (MDL D.I. 697) (the "Net Equity

Settlement").  As part of the Net Equity Settlement, the remaining Customer Class Interest

Claims, consisting of claims for pre-judgment interest and/or loss-of-use of funds, were

subrogated and subordinated to the Net Equity Claims to ensure recovery of the advances by the

general estate.

22.    The Net Equity Claims were then transferred with other assets of MFGI to

MFGAA pursuant to the Sale and Assumption Agreement as noted above.  Consequently, the

Plan Administrator, on behalf of MFGAA, now holds the Net Equity Claims, currently valued at

$484 million.[21]

23.    Altogether, the MFG Plaintiffs seek recovery on a variety of legal theories from the Defendants in compensation for their actions in connection with the collapse of MF Global that led to the destruction of the company's enterprise value and the disappearance of $1.6 billion in customer property, leading to a shortfall in customer net equity.  These are well-documented, strong claims supported by considerable factual detail.  In partially denying a motion to dismiss the Customer Claims, the District Court noted that "[p]laintiffs' account of the events is compelling."  In re MF Global Holdings Ltd. Inv. Litig. (Deangelis v. Corzine), 998 F. Supp. 2d 157, 167 (S.D.N.Y. 2014); see also Tavakoli v. Corzine (In re MF Global Holdings Ltd.), 507 B.R. 808 (S.D.N.Y. 2014) (denying motion to dismiss Litigation Trust Complaint).  However, proving the alleged facts and litigating the claims to trial would carry all the attendant risks, costs, and uncertainties of complex litigation.

24.    In determining the reasonableness of the Settlement, it should be noted that several countervailing factors unrelated to the merits of the MFG Plaintiffs' claims significantly diminish their value and motivated the approval of the Settlement by the Litigation Trustee and Plan Administrator.  Most importantly, the primary sources of funds from which any recovery will ultimately flow are the proceeds of MF Global's directors and officers ("D&O") and errors and omissions ("E&O") insurance policies.  (See Tavakoli Decl. ¶ 5; Graber Decl. ¶ 7).  These policies are wasting policies with finite total payouts that have funded the Defendants' costs of defense and settlement the MDL.  (Tavakoli Decl. ¶ 5; Graber Decl. ¶ 7).  By May 2016, in excess of approximately $97 million in proceeds from the D&O Policies and E&O Policies had

---

[21]    It should be noted that while the calculated shortfall was reduced to $484 million due to the SIPA Trustee's diligent recovery efforts, these Net Equity Claims remain unsatisfied and represent the damages claimed by MFGAA on account of its assigned rights.  (See Graber Decl. ¶ 7).  Under the terms of the Sale and Assumption Agreement, MFGAA will distribute its net recoveries to creditors on account of these claims in the same *pro rata* shares as they would have received from the MFGI estate.  (Id. ¶ 1)

been paid out for reimbursement of defense costs.[22] (Id.).  Any ultimate recovery in litigation

from judgments to be satisfied by the D&O and E&O Policies, if the cases were not settled now,

would be greatly reduced by the further depletion of the remaining insurance proceeds to fund

further defense costs (which include fees and expenses associated with defending against other

actions, such as the CFTC Action).  In the absence of this Settlement, Movants' own litigation

costs through trial and likely appeals are expected to be substantial as well, making the costs of

proceeding through trial (since effectively both sides' costs deplete any ultimate recovery) a very

real factor in deciding whether the proposed Settlement is fair and equitable and in the best

interests of creditors in the business judgment of the Litigation Trustee, the Plan Administrator,

and MFGAA.  (See Tavakoli Decl. ¶ 8; Graber Decl. ¶ 8).

     25.    Given the rate at which defense costs have accrued against the proceeds of the

D&O and E&O towers thus far, and given the complexity of any ultimate trial, it is reasonable to

conclude that litigating the Litigation Trust Claims and Net Equity Claims would use up much of

the remaining proceeds in the D&O and E&O towers—evaporating tens of millions in coverage

that would no longer be available to pay any ultimate liability.  Regardless of the perceived

strength of the MFG Plaintiffs' claims, the risks inherent in complex litigation, the costs

associated with litigating the cases, and the depletion of insurance proceeds underscore the

prudence of the proposed Settlement. (Tavakoli Decl. ¶¶ 5; 8; Graber Decl. ¶ 8).  Net of costs

and given the uncertainty of collection and the time value of money, it is unlikely that a

judgment against the Defendants' personal assets would create any significant value for

---

[22]     As described in an order of the Bankruptcy Court entered on November 5, 2015, styled Order Concerning
Advances of Defense Costs Under Certain Insurance Policies of the Debtors (D.I. 2154), an agreement was reached
permitting approved defense costs to be advanced entirely from proceeds of the D&O Policies, with all parties
reserving rights as to the eventual allocation between the E&O Policies and D&O Policies (as in all prior orders
permitting payment of defense costs).  Since all non-Dissenting Insurer proceeds are being contributed to the
Settlement Fund without any reconciliation, the total amount of defense costs paid from proceeds of either the D&O
Policies ($82.6 million) or the E&O Policies ($14.4 million) as of the filing of this Motion does not purport to
represent each tower's actual share of these costs.  Graber Decl. ¶ 7 n.15.

beneficiaries of the Litigation Trust or the Debtors' estates, let alone sufficient value to justify

not entering the Settlement.  (Tavakoli Decl. ¶ 9; Graber Decl. ¶ 8).  Accordingly, the MFG

Plaintiffs reasonably concluded that it was unlikely that a greater recovery could be achieved by

litigating and seeking to recover from Defendants.  (Tavakoli Decl. ¶ 9; Graber Decl. ¶ 8).  As

such, the MFG Plaintiffs pressed for a full policy limits settlement with the Defendants  and

worked diligently with the Defendants to address all the needed complexities of settling the

multi-plaintiff and multi-defendant MDL actions, with these efforts culminating in the November

30 Term Sheet[23] which was then documented in the proposed Settlement after extensive good-

faith, arms' length negotiations.  (See Tavakoli Decl. ¶ 6; Graber Decl. ¶¶ 4-5).[24]

       26.      The Settlement provides for the Plan Administrator and Litigation Trustee to

receive a package of financial and contractual obligations that includes full payment of limits

under the remaining D&O policies and full payment of limits under all remaining E&O policies,

except for certain dissenting E&O insurers who issued direct excess policies (the "Dissenting

Insurers").  (Settlement Agreement ¶ 1).  With respect to the Dissenting Insurers, the MFG

Plaintiffs are receiving an irrevocable assignment from the settling Defendants of their rights

against the Dissenters' Policies and against the Dissenting Insurers themselves in connection with

or arising from their conduct and non-payment under the Dissenters' Policies.  (Settlement

---

[23]     In response to the District Court's request in its Notice of Conference entered December 1, 2015 (MDL D.I. 1040), the District Court and Bankruptcy Court were provided on December 4, 2015 with the redacted and unredacted November 30 Term Sheet for *in camera* review in connection with the motion for joint hearing/reconsideration filed in both courts.  D.I. 2169 at 3 ¶ 3, MDL D.I 1028 at 3 ¶ 3 (Motion for Joint Hearing and for Reconsideration Announcing the Settlement in Principle); D.I. 2171 at 2 ¶ 1, MDL D.I. 1032 at 2 ¶ 1 (Supplement reporting that the November 30 Term Sheet had been executed); D.I. 2176, MDL D.I. 1055 (redacted versions of Reply Brief in support of Motion for Reconsideration, unredacted versions distributed to the Bankruptcy Court and District Court and filed under seal in accordance with the MDL parties' Stipulation and Protective Order Governing Confidentiality of Discovery Material (the "Protective Order") (MDL D.I. 714)).

[24]     The proposed Settlement includes certain terms, holdbacks, escrows, or reserves that are kept confidential by agreement of the Settling Parties to protect certain bargaining or negotiating positions.  (Motion to Seal ¶ 2; 7 Graber Decl. ¶ 4 n.8) (See also Settlement Agreement ¶¶ 12(e), 57 (imposing confidentiality obligations)). As set forth in the Supplement, the Settlement Agreement also requires personal contributions from certain individual defendants, which were the product of intense good faith, arms' length negotiations and are required to be kept strictly confidential. (Graber Decl. ¶ 4 n.8; Tavakoli Decl. ¶ 6 n.9).

Agreement Definitional ¶ tt; ¶ 1(c) and Ex. A). In addition, to the extent the full amount of the

policies of the Dissenting Insurers is not recovered, the Settlement provides for certain personal

contributions from certain of the Defendants (the "Group A Defendants"). (Id.).[25]

27. Under the proposed Settlement, the Customer Class is receiving a $2 million

distribution on account of the Customer Class Interest Claims, with the potential for up to an

additional $3 million if so required by the CFTC as part of a settlement of the claims against

Corzine or O'Brien in the CFTC Action. (Settlement Agreement ¶¶ (cc), 7, 10 (a)(ii), 10(b)(i),

10(c)). This distribution is provided in exchange for a release and dismissal of the Customer

Class Interest Claims. This distribution is reasonable, even though the Customer Class Interest

Claims are subordinated to the Net Equity Claims, to ensure that the Customer Class settlement

meets with approval by the District Court and provides for releases required as part of the

Settlement for the benefit all parties, including the MFG Plaintiffs.

28. Sapere will also receive financial consideration in a confidential amount in

exchange for the settlement of its claims. (Settlement Agreement ¶ 12). The MFG Plaintiffs'

settlement with the Defendants was conditioned on reaching a settlement with Sapere.[26]

29. The settlement consideration that flows to the MFG Plaintiffs will also be reduced

by: (i) the amount of fees and expenses awarded to Class Counsel after notice and hearing in the

District Court (Settlement Agreement ¶ 8); (ii) the reasonable fees incurred by Defendants in

finalizing the Settlement (Settlement Agreement ¶ 9); and (iii) certain holdbacks allocated for the

settlement of the CFTC Action (Settlement Agreement ¶ 10).

30. The value of the total package of settlement consideration to be received by the

Plan Administrator and Litigation Trustee is not yet fully known, given the other settlements,

---

[25]     The personal contributions are calculated based on a sliding scale that increases if the recovery from
Dissenting Insurers decreases. (See Supplement ¶ 6 n.6).

[26]     The confidential details of Sapere's distribution are described more fully in the Supplement ¶ 4.

reductions, fees, expenses, and holdbacks in amounts not yet determined, plus the potential

recovery from the assigned rights against the Dissenting Insurers. Overall, approximately $159

million (less certain defense costs as described in n.11, supra) is expected to be paid by D&O

and E&O Insurers into escrow accounts created to hold the Settlement Fund. From this amount,

$2,000,000 will be held in a separate account for eventual distribution to the Customer Class on

account of the Customer Class Interest Claims, and an as-yet undetermined amount will be held

in a separate account for eventual distribution to Class Counsel on account of their fees and

expenses. Additional amounts will be paid out for certain accrued or ongoing legal fees of the

Defendants. Certain amounts are to be kept confidential, which includes amounts set aside for

the Defendants' settlement of the Sapere Action and reserves for Corzine's and O'Brien's

defense and/or settlement of the CFTC Action, and other carve-outs agreed to as part of the

Settlement. (Graber Decl. ¶ 5). Overall, without accounting for deductions for fees and

expenses of Class Counsel or legal fees of the Defendants, the immediate aggregate settlement

consideration to the MFG Plaintiffs is estimated to be approximately $132 million to be allocated

between MFGAA and the Litigation Trust at a later date. (See id.).

31.     Though the amounts set aside from the Settlement Fund for the resolution of the

CFTC Action are fixed, a portion of those amounts that are not applied to defense costs,

settlement, or a judgment in the CFTC Actions may ultimately flow to the MFG Plaintiffs, the

Customer Class and/or MFGAA once the CFTC Actions are finally resolved without regard to

whether the Effective Date of the Settlement has occurred. (See Settlement Agreement ¶¶ 10,

40). However, no other funds in addition to those reserves will be made available to be used for

resolution of the CFTC Actions. (Id.) In other words, the Settlement funds set aside for

resolution of the CFTC Action are to be used for defense of the CFTC Action, distributed in

accordance with the terms of a CFTC settlement, or transferred to MFGAA as described more

fully in the Settlement Agreement.  (Id. ¶ 10).

32.     Other than proceeds from the Dissenting Insurers, all remaining potential E&O

and D&O insurance proceeds have been committed to fund the Settlement—without years of

inherently risky and costly litigation for all parties.  Moreover, the Defendants' assignment of

their rights against the Dissenting Insurers enables the MFG Plaintiffs to preserve the claims

against those insurers[27] and any recoveries from such claims will flow to the Debtors' creditors as

well.  Finally, the Settlement effectuates a sharing of the risks of continuing litigation for the

CFTC Action and with certain of the Defendants undertaking to contribute personal assets

depending on the recoveries, if any, from the Dissenting Insurers.

33.     In exchange for the settlement consideration, Settling Parties have agreed to

mutual releases of all claims related to the Net Equity Claims, the Litigation Trust Claims, the

Sapere Action, and the Customer Claims to the extent retained by the Customer Class, along

with claims of restitution in the CFTC Action, claims against the Debtors' estates, and claims

related to the proposed Settlement, with certain carve-outs to preserve rights.  (See Graber Decl.

¶ 6; Settlement Agreement ¶¶ 18-29).

34.     As stated above, this Motion seeks only approval of the proposed Settlement as

fair and reasonable under Rule 9019.  Other issues, such as the allocation of settlement proceeds

between MFGAA and the Litigation Trust, distribution to creditors, and the fees and expenses to

be paid to the Customer Class Counsel, in an amount yet to be determined, will be the subject of

future motions on notice providing all parties in interest with the opportunity to be heard.

35.     In the business judgment of the Plan Administrator, Litigation Trustee, and

MFGAA, the aggregate estimated gross amount to be recovered pursuant to the Settlement

---

[27]     In addition to rights assigned to them on behalf of the Individual Insureds, MFGH and MFGAA, as the
assignee of MFGI, also retain their own direct rights of recovery against these Dissenting Insurers (Graber Decl.
¶ 7).

significantly exceeds the reasonable minimum recovery if the Trustee Claims and the Net Equity

Claims were to go to trial, even if they were to result in favorable judgments (never a certain

result), given the extreme depletion in E&O and D&O Policies and the limited prospects for

ultimately enhancing the overall recoveries by seeking to enforce rights against the Defendants'

personal assets.  (See Tavakoli Decl. ¶¶ 9-10; Graber Decl. ¶¶ 8-9).  Accordingly, entry into the

Settlement Agreement constitutes a reasonable exercise of the MFG Plaintiffs' business

judgment and is in the best interests of the Litigation Trust's beneficiaries, MFGAA, and the

creditors of the estates.

## IV.      RELIEF REQUESTED

36.      The Plan Administrator, Litigation Trustee, and MFGAA seek approval of the

Settlement from the Bankruptcy Court in order to ensure that all affected parties have notice and

an opportunity to be heard.  As noted above at footnote 18, the parties agreed that the Settlement

would be subject to this Court's approval, and the CCAA likewise provides for MFGI to obtain

Bankruptcy Court and District Court approval of any settlement of the Customer Claims, which

obligation has been assumed by MFGAA.  (See SIPA D.I. 3764 Ex. A at 3 § 2; see also MDL

D.I. 375 (to which SIPA D.I. 3764 is appended as Ex. A)).  As such, the MFG Plaintiffs are

contractually obligated to seek this Court's approval as well as it being the prudent course of

action.

37.      Given the importance of the MDL recoveries to the Debtors' estates and creditors'

recoveries, as well as the contractual undertakings to seek Court approval, Movants hereby seek

entry of an order pursuant to Rule 9019(a) of the Bankruptcy Rules approving the Settlement by

and among the Settling Parties.  The Settlement represents a consensual and cost-effective

resolution of a considerable number of highly disputed issues that have been pending for years

and is a far better outcome for the Debtors' creditors than is likely to be achieved by further

litigation, given the rapid depletion of the D&O and E&O Policies, the costs (and risks) of taking

cases of this magnitude and complexity to trial, and the unlikely prospects for being able to

recover more from the Defendants' personal assets than from the currently available insurance

proceeds.

38.    To protect the Settlement from collateral attacks, Movants also seek a permanent

injunction against interference with the proposed Settlement and against the assertion of claims

arising out of or related to the MF Global Actions, including the claims settled here against the

Settling Parties.

## V.    ARGUMENT

39.    Rule 9019(a) of the Bankruptcy Rules provides that "[o]n motion by the trustee

and after notice and a hearing, the court may approve a compromise and settlement." Fed. R.

Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve settlements once the court

determines the settlement to be "fair, equitable, and in the best interests of the estate."  In re

Drexel Burnham Lambert Group, Inc., 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); In re MF

Global Inc., No. 11-2790 (MG), 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012)

("Settlements and compromises are favored in bankruptcy as they minimize costly litigation and

further parties' interests in expediting the administration of the bankruptcy estate.") (internal

citations omitted).

40.    The settlement need not result in the best possible outcome for the debtor, but

must not fall below the lowest point in the range of reasonableness.  Id.; In re Chemtura Corp.,

439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010); see also Cosoff v. Rodman (In re W.T. Grant Co.),

699 F.2d 599, 608 (2d Cir. 1983).

41.    The decision to approve a settlement and compromise lies within the sound

discretion of the court.  See Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994).  In

determining whether to approve a settlement, a court must evaluate all relevant factors and

inform itself of "all facts necessary for an intelligent and objective opinion of the probabilities of

ultimate success should the claim be litigated," but is not required to "go so far as to conduct a

trial on the terms."  In re MF Global Inc., No. 11-2790 (MG), 2012 WL 3242533 at *5 (internal

citations omitted).  Although courts have discretion to approve settlements, the business

judgment of the debtor in recommending the settlement should be factored into the court's

analysis.  Id. (citing JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC (In re

Charter Commc'ns), 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009)).  In addition, courts may give

weight to the opinion of bankruptcy counsel supporting the settlement.  Id.

42.    Courts in the Second Circuit consider the following factors in determining

whether to approve a settlement under the Bankruptcy Rules:  (i) the balance between the

litigation's possibility of success and the settlement's future benefits; (ii) the likelihood of

complex and protracted litigation, "with its attendant expense, inconvenience, and delay,"

including the difficulty in collecting on the judgment; (iii) the relative benefits to be received by

creditors of any affected class (iv) whether other parties in interest support the settlement; (v) the

competence and experience of counsel supporting the settlement; (vi) "the nature and breadth of

releases to be obtained by officers and directors;" and (vii) the extent to which the settlement is

the product of arm's length bargaining.  In re MF Global Inc., No. 11-2790 (MG), 2012 WL

3242533 at *5 (citing Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium

Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007); TMT Trailer Ferry, Inc. v. Anderson, 390

U.S. 414 (1968) (decided under the Bankruptcy Act of 1898)).  The burden is on the settlement

proponent to persuade the court that the settlement is in the best interests of the estate.  (Id.)

43.    A debtor is free to release its own claims or derivative claims, but third-party

releases are only appropriate where they "directly affect the *res* of the bankruptcy estate" and in

unusual circumstances where they are important to the success of a plan or are "integral to [a]

global settlement." (See In re Trinsum Grp., Inc., No. 08-12547-MG, 2013 WL 1821592, at *5-

6 (Bankr. S.D.N.Y. Apr. 30, 2013), quoting Quigley Co., Inc. v. Angelos (In re Quigley Co.,

Inc.), 676 F.3d 45, 53 (2d Cir. 2012)).  In Trinsum, third-party releases were approved when they

were "dictated by the unique circumstances of the global settlement . . . enabling . . . long-

delayed distributions to creditors." (Id. at *6).

44.    The proposed Settlement falls well within the range of reasonableness detailed by

the Iridium factors, to the extent such factors are applicable.  First, though the claims resolved in

the Settlement are believed to be strong claims, the Settlement results in significant, certain, and

immediate recoveries on those claims for the Debtors' creditors and avoids lengthy, highly

complex, and expensive litigation.  Second, litigation of MDL claims has been exceedingly slow

and complex thus far.  Further litigation would require significant additional time and resources

not only from the Plan Administrator, MFGAA, and the Litigation Trustee, but also would

continue the depletion of the limited D&O and E&O policy proceeds which would be applied to

reimburse Defendants for their defense costs to the detriment of the estates given that D&O and

E&O policy proceeds also constitute the most likely source to fund any judgment.  Third, the

Settlement is in the best interests of all creditors in the Chapter 11 Cases as it liquidates and

provides for a certain and substantial recovery on claims held by the Litigation Trust as provided

in the Plan and by MFGAA (in which each Debtor holds interests proportionate to their claims in

the SIPA Estate).  Fourth, the Settling Parties are represented by sophisticated and experienced

professionals in connection with the Settlement, all of whom favor the settlement.  Fifth, the

Settlement is the result of good faith, arm's length bargaining between the various Settling

Parties throughout the course of the MDL and bankruptcy cases.

45.    In the informed business judgment of the Litigation Trustee, MFGAA, and the

Plan Administrator, the Settlement is fair and equitable, falls well within the range of reasonableness, and benefits the Debtors' creditors by recovering all of the available insurance funds (or assignments against Dissenting Insurers) and requiring some level of personal contributions and risk-sharing with certain of the Defendants. As such, the MFG Plaintiffs submit that the settlement consideration exceeds the amount that would likely be collectable even if litigation were to succeed, while avoiding the risks and costs inherent in continuing lengthy and complex litigation.

46.     Furthermore, the permanent injunction requested herein involves claims that directly affect the *res* of the bankruptcy state. The D&O and E&O Policies contributing funds to the proposed Settlement are property of the Debtors' estates and are the primary remaining source of recovery to creditors, as in Trinsum and Quigley. (See Trinsum at *5; Quigley at 58). In addition, the permanent injunction has been requested by insurers as was also the case in Trinsum. (See Trinsum at *6). The permanent injunction is a bargained-for requirement of the proposed Settlement, intended to eliminate the danger that payment of the full limits of the D&O and E&O Policies could leave Insurers and Insureds alike exposed to further liability. The complexity and magnitude of this Settlement, and the considerable repose and recovery obtained thereby, are exactly the sort of "unique circumstances" that justify such a bar order to preclude claims that conflict with those released under the Settlement.

47.     Movants also seek as part of the proposed order the Court's finding that any acts required by or consistent with the Settlement do not violate the Plan Injunction. This relief is in addition to the requested Plan Injunction Modification Order (see supra n.19) and is appropriate to ensure that the parties do not inadvertently take actions that could be deemed in violation of the Plan Injunction in effectuating the Settlement Agreement's terms.

## VI.    NOTICE

48.    Notice of this Motion has been published on the website of the Plan Administrator (www.mfglobalcaseinfo.com) and has been given to:  (i) all parties identified on the Master Service List, as defined in the *Order Pursuant to 11 U.S.C. § 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures* (D.I. 256) (the "Case Management Order"); (ii) all  Settling  Parties as well as the E&O Insurers (and reinsurers) and D&O Insurers who are parties to Funding Agreements; (iii) persons or parties identified to Movants by MFGA with respect to the E&O Policies; and (iv) all parties that have requested service of papers under section 4(a)(2) of the Case Management Order.  The Movants submit that no other or further notice need be provided.

49.    All responses or objections, if any, to the relief requested in the Motion shall conform to the Case Management Order, and (i) be in writing; (ii) state the name and address of the objecting party and nature of the claim or interest of such party; (iii) state with particularity the legal and factual bases of such objection; (iv) conform to the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules; (v) be filed with the Bankruptcy Court, together with proof of service, electronically, in accordance with General Order M-399 399 (which can be found at www.nysb.uscourts.gov ), by registered users of the Court's Electronic Case Filing System, and by all other *pro se* parties in interest, on a 3.5 inch disk, compact disk, or flash drive, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format no later than August 3, 2016 at 4:00 p.m. (Prevailing Eastern Time); and (vi) be served on (a) Jones Day, 250 Vesey Street, New York, NY 10281-1047, Attn: Jane Rue Wittstein, Esq. and (b) Jones Day, 555 South Flower Street, Fiftieth Floor, Los Angeles, CA 90071, Attn:  Michael Schneidereit; with a courtesy copy to the chambers of the Honorable

Martin Glenn, United States Bankruptcy Court for the Southern District of New York,

Courtroom 501, One Bowling Green, New York, New York, 10004 (the "Notice Parties").

50.     If no responses to the Motion are timely filed and served in accordance with the

procedures set forth herein, the Bankruptcy Court may enter an order granting the Motion

without further notice.

**VII.      NO PRIOR REQUEST**

51.     No prior request for the relief sought in this Motion has been made to this or any

other Court.

WHEREFORE, the Movants respectfully request entry of an order, substantially

in the form annexed hereto as Exhibit A, approving the Settlement and granting such additional

and further relief as the Court may deem proper.

Dated:  July 20, 2016
      New York, New York

Respectfully submitted,

  /s/ *Jane Rue Wittstein*     
Bruce Bennett
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Tel:   213-489-3939
Fax:   213-243-2539

  - and-

Jane Rue Wittstein
JONES DAY
250 Vesey Street
New York, NY 10281
Tel:  212-326-3415
Fax: 212-755-7306

Counsel for MF Global Holdings Ltd.,
     as Plan Administrator, and
     MF Global Assigned Assets LLC

  -and-

/s/ *Michael Schneidereit*     
Bruce Bennett
Michael Schneidereit
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071.2300
Tel:  213.489.3939
Fax: 213.243.2539

Counsel for the Litigation Trustee of the
     MF Global Litigation Trust

NAI-1500679048