# EXHIBIT C

Hearing Date: Thursday, August 11, 2016 at 11:00 a.m.. (prevailing Eastern Time)
Response Deadline: Wednesday, August 3, 2016 at 4:00 p.m. (prevailing Eastern Time)

JONES DAY
Michael Schneidereit
Bruce Bennett
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Tel:  (213) 243-2533
Fax:  (213) 243-2539

Counsel for the Litigation Trustee of the
    MF Global Litigation Trust , MF Global
    Holdings Ltd., as Plan Administrator,
    and MF Global Assigned Assets LLC

 -and-

Jane Rue Wittstein
250 Vesey Street
New York, NY 10281
Tel:  (212) 326-3939
Fax:  (212) 755-7306

Counsel for MF Global Holdings Ltd.,
    as Plan Administrator, and
    MF Global Assigned Assets LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------- x | | Chapter 11 |
| **In re** | : | Case No. 11-15059 (MG) |
| **MF GLOBAL HOLDINGS LTD., et al.,** | : | (Jointly Administered) |
| **Debtors.**[1] | : | |
| ------------------------------------------------------- X | : | |

**DECLARATION OF ERIK M. GRABER IN**
**SUPPORT OF THE MOTION PURSUANT TO**
**RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE TO APPROVE THE SETTLEMENT AMONG THE PLAN**
**ADMINISTRATOR, THE TRUSTEE OF THE LITIGATION TRUST, INDIVIDUAL**
**DEFENDANTS, SAPERE CTA FUND, L.P., AND THE CUSTOMER REPRESENTATIVES**

---

[1] The debtors in the chapter 11 cases (the "Chapter 11 Cases") are MF Global Holdings Ltd.; MF Global Finance USA Inc.; MF Global Capital LLC; MF Global Market Services LLC; MF Global FX Clear LLC; and MF Global Holdings USA Inc. (collectively, the "Debtors"). The Court entered an order of final decree closing the chapter 11 cases of MF Global Capital LLC, MF Global FX Clear LLC, and MF Global Market Services LLC on February 11, 2016.

I, Erik M. Graber, am Chief Operating Officer ("COO") of MF Global Holdings Ltd. ("MFGH" or the "Plan Administrator"), on behalf of itself and its affiliates, including MF Global Assigned Assets LLC ("MFGAA"), which serves as Plan Administrator under the confirmed *Second Amended and Restated Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code for MF Global Holdings Ltd., MF Global Finance USA Inc., MF Global Capital LLC, MF Global FX Clear LLC, MF Global Market Services LLC, and MF Global Holdings USA Inc.* (D.I. 1382) [2] (the "Plan") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and is the managing member of MFGAA. I submit this declaration pursuant to 28 U.S.C. § 1746 in support of the Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for Entry of an Order Approving the Settlement Agreement Among the Plan Administrator, the Trustee of the Litigation Trust, Individual Defendants, Sapere CTA Fund, L.P., and the Customer Representatives (the "Motion"). The statements in this Declaration are based on (a) my personal knowledge in my capacity as COO of MFGH and MFGAA, (b) my review of relevant documents, and (c) information provided to me by, or discussions with, the Plan Administrator's advisors. If called to testify, I could and would testify to each of the facts set forth herein on that basis, and hereby state as follows:

1. As COO of Holdings, I am familiar with the Chapter 11 Cases, the Plan, MFGAA, and the Plan Administrator's rights, duties, and obligations under the Plan. I am involved in the daily administration of the Plan Administrator's operations, including working closely with the General Counsel, Board of Directors, and outside professionals to oversee the

---

[2] Citations to "D.I." refer to docket items in the main bankruptcy case of MFGH, Case No. 11-15059. Citations to "MDL D.I." refer to docket items in the consolidated MDL proceeding Deangelis v. Corzine, No. 11-cv-7866 (S.D.N.Y.) (VM) (the "MDL"). Citations to "SIPA D.I." refer to docket items in the SIPA liquidation of MF Global Inc., which was proceeding before the Bankruptcy Court as Case No. 11-02790 before it was closed on April 4, 2016. Citations to "Adv D.I." refer to docket items in Adversary Proceeding Number 13-01333 (Bankr. S.D.N.Y.). Citations to "Section 105 Adv. D.I." refer to docket items in Adversary Proceeding Number 15-01362 (Bankr. S.D.N.Y.) (the "Section 105 Adversary Proceeding").

Plan Administrator's satisfaction of its duties and obligations under the Plan. The Plan grants the Plan Administrator very broad authority to take any actions that are necessary and proper to implement the provisions of the Plan, including the authority to settle causes of action. See Plan Section IV.C. Under the Plan, the Plan Administrator's primary objective is the maximization of distributions to the Debtors' creditors. As described in my previous Declaration dated July 24, 2015 (the "Graber July 2015 Decl.") in connection with the *Joint Motions Of The SIPA Trustee and MF Global Holdings Ltd., as Plan Administrator, for an Order Approving (I) the Sale and Assumption Agreement, (II) the Transfer and Abandonment of Specified Systems and Documents and the SIPA Trustee's Corresponding Limitation of Discovery and Retention Obligations, (III) a Final Distribution on Allowed General Unsecured Claims not Held by the MFGH Entities, and (IV) Related Relief* (the "Sale and Assumption Motion"(D.I 2115 at Ex. A ¶ 3) and related filings in connection with the Sale and Assumption Motion,[3] MFGAA acquired the Net Equity Claims in the MDL previously held by MFGI, and any recoveries on account of these claims will be distributed to the Debtors' creditors in the same pro rata shares as they would have received from the MFGI estate. (Graber July 2015 Decl. ¶¶ 5-6).

2.     The management of MFGH has coordinated closely with outside counsel and with Nader Tavakoli, as Trustee of the MF Global Litigation Trust created pursuant to the Plan (the "Litigation Trustee"), in connection with the efforts to reach the global settlement embodied in that certain Stipulation and Agreement of Settlement dated as of July 6, 2016 (the "Settlement Agreement"),[4] by and among (i) MFGAA, as assignee of certain claims, rights, and interests of MF Global Inc. ("MFGI"); (ii) MFGH; (iii) the Litigation Trustee (together with MFGI, MFGAA,

---

[3]     *See, e.g.*, Letter from J. Rue Wittstein to Hon. Victor Marrero advising that MFGI had assigned the Net Equity Claims to MFGAA (MDL D.I. 996); SIPA Trustee's Memoranda of Law in Support of the Sale and Assumption Motion at Ex. A, Declaration of Vilia Hayes ("Hayes Decl.") ¶¶ 8-18 (SIPA D.I. 8828 at Ex. A).

[4]     Capitalized terms not otherwise defined in this declaration have the meaning given to them in the Settlement Agreement.

3

and MFGH, the "MFG Plaintiffs"); (iv) the Customer Class Representatives; (v) Sapere CTA Fund, L.P. ("Sapere"), and, together with the MFG Plaintiffs and the Customer Class Representatives, the "Plaintiffs"); (vi) Jon S. Corzine ("Corzine"), Bradley Abelow ("Abelow"), and Henri Steenkamp ("Steenkamp" and, together with Corzine and Abelow, the "Litigation Trust Action Defendants"); and (vii) David Dunne ("Dunne"), Vinay Mahajan ("Mahajan"), and Edith O'Brien ("O'Brien" and, together with the Litigation Trust Action Defendants, Dunne, and Mahajan, the "Defendants." The Plaintiffs and Defendants are collectively referred to herein as the "Settling Parties").

3. The Settlement Agreement is the final culmination of the agreement in principle reached on November 30, 2015, when the MFG Plaintiffs, the Defendants, and the Customer Class Representatives entered into a confidential term sheet (the "November 30 Term Sheet")[5] to provide for the terms of a global settlement resolving (or setting aside capped funds to defend and/or resolve) all claims remaining against the Defendants in the MF Global MDL litigation. In the months since the November 30 Term Sheet was entered, the MFG Plaintiffs have been coordinating with the Settling Parties to negotiate and finalize the documentation with the Settling Parties and the E&O Insurers and D&O Insurers, who entered into separate confidential Funding Agreements, and finally obtained all execution signatures on July 12, 2016 for the documentation comprising the Settlement.[6]

4. The Settlement Agreement provides that the primary component of the Defendants' financial consideration for the Settlement Agreement is the obligation to pay (or cause to be paid) Defendants' Financial Obligation to and/or for the benefit of the Plaintiffs,

---

[5] A copy of the November 30 Term Sheet was provided to this Court under seal in connection with the Section 105 Adversary Proceeding.

[6] The accompanying Declaration of Nader Tavakoli (who as Litigation Trustee oversaw the settlement negotiations that culminated in the Settlement Agreement) sets forth additional background on the structure and key terms of the proposed global Settlement.

4

which as calculated in accordance with the Settlement Agreement (Settlement Agreement ¶ 1(a)) is currently $184,058,725.74, representing the total amount of the limits remaining in the D&O Policies and the E&O Policies on the Execution Date (comprised of E&O and excess E&O proceeds totaling $118,128,771.52 and D&O proceeds of $40,929,954.22 committed to the Settlement, plus the policy limits on the Identified Dissenters' Policies totaling $25 million. (Settlement Agreement at 13 n.3).[7] In other words, the Settlement provides for the contribution of all remaining insurance proceeds under the funding agreements entered into concurrently with the Settlement Agreement, expected to total approximately $159 million,[8] and an irrevocable assignment to the MFG Plaintiffs of Defendants' rights against the Identified Dissenters' Policies (and any insurer that does not pay the limits of its policies towards the settlement). I am advised that because the Settlement exhausts or assigns remaining policy limits, it was critical to the Defendants that the proposed settlement either settle other pending actions in the MDL or set aside funds to provide for the defense and/or settlement of those other actions.

5.     Accordingly, the Settlement embodies not only the resolution of the claims brought by or for the benefit of the MFG Plaintiffs, but also the settlement of the Sapere Action, the establishment of reserves to provide for defense costs and/or settlement of claims against O'Brien and Corzine in the CFTC Action, and the settlement of the remaining Customer Class

---

[7] Under the Settlement Agreement, Defendants' Financial Obligation is reduced by the amount of certain Defendants' fees and costs covered by the D&O Policies in connection with finalizing the Settlement and the fees and costs of Corzine and O'Brien paid in defense of the CFTC Action (which are also then deducted from the confidential CFTC Corzine Reserve and CFTC O'Brien Reserve). (Settlement Agreement Definitional ¶ (qq)).

[8] This figure is comprised of E&O and excess E&O proceeds totaling $118,128,771.52 and D&O proceeds of $40,929,954.22, but does not include the $25 million of Identified Dissenters' Policies which are not contributed to the Settlement. (Settlement Agreement at 13 n.3). The Settlement also provides for certain confidential personal contributions by certain defendants, identified only as the Group A Defendants. The particulars of these individual defendants' obligations are set forth in a confidential Supplement prepared by the Movants to be filed under seal after Court approval to do so (the "Supplement"), and the effect of these contributions is disclosed (*see* ¶ 5 below) in a net figure with the confidential carve-outs for the settlements of other actions to avoid violating the strict confidentiality required by the Settlement Agreement and avoid prejudicing the Settling Parties while still providing disclosure of the total gross recoveries anticipated for the benefit of the MFG Plaintiffs from the Settlement.

claims for a payment of $2 million out of the Settlement Fund and up to an additional $3 million if required by the CFTC, to be satisfied out of the CFTC Reserves (the settlement of which I am advised requires separate District Court approval). (Settlement Agreement ¶¶ 6-12).  As set forth in the Supplement, the aggregate effect of these settlement payments, reserves with respect to the CFTC Action, and other confidential reserves (netted against certain confidential payments to be made by the Group A Defendants) reduces the Settlement Fund by up to $24.8 million, leaving approximately $134 million in adjusted gross proceeds (before reductions of $2 million for the Customer Class Distribution and other fees and expenses, including Customer Class Counsel fees and expenses, that can further reduce the gross proceeds available to the MFG Plaintiffs).[9] Therefore, the gross aggregate recovery for the MFG Plaintiffs anticipated from the Settlement upon the Effective Date is approximately $132 million.[10]  (See Motion ¶ 30; Supplement ¶ 7).

6.      By this Motion, the Plan Administrator, on behalf of MFGH and its affiliates, including MFGAA, is seeking the Court's approval of the Settlement Agreement to achieve projected aggregate gross recoveries for the MFG Plaintiffs of approximately $132 million in exchange for the MFG Plaintiffs' releases provided in the Settlement Agreement and dismissal of the Settling Plaintiffs' pending actions against Defendants.[11]  The projected aggregate gross

---

[9] Confidential provisions relating to the settlements among the Defendants and Settling Plaintiffs (other than the MFG Plaintiffs) are described in the confidential Supplement to be provided to the Court under seal and have been redacted from the publicly filed Settlement Agreement as required by, *inter alia*, Paragraph 57 & Ex.H .

[10] Amounts could revert to the MFG Plaintiffs from certain of the confidential reserves, but the Settlement's reasonableness is not dependent on such recoveries.  Similarly, no estimate can be made for the assigned rights against the Dissenting Insurers at this time.

[11] The Litigation Trustee's settlement of the Litigation Trust Action as part of the Settlement is the subject of the separate Declaration of Nader Tavakoli as Litigation Trustee. As set forth in the Motion, the MFG Plaintiffs are not seeking the Court's approval at this time for the allocation of proceeds among the MFG Plaintiffs or the approval to make distributions of the funds to creditors. (Motion ¶ 34)  Because approval of the Settlement under Rule 9019 is a required condition for the E&O Insurers and D&O Insurers to contribute the Initial Limits Payment into the Settlement Fund (and is also a prerequisite to the Settlement's Effective Date), seeking approval in the first instance and then addressing the allocation and distribution of the funds once received is expected to streamline the process, while preserving all creditors' rights to be heard on allocation and distribution issues in subsequent motions.

recoveries for the MFG Plaintiffs of approximately $132 million under the Settlement will be subject to certain other costs and expenses, including the fees and expenses for the Customer Class Counsel (the amount of which is yet to be determined and requires approval of the District Court (Settlement Agreement ¶ 14), and could also be supplemented, *inter alia*, by additional recoveries against Dissenting Insurers or amounts not paid from the CFTC Reserves.[12] In exchange for these recoveries, the proposed Settlement provides mutual releases, with certain carve-outs to preserve rights and claims that are not being released by the Settlement. (e.g, Settlement Agreement Definitional ¶ ddddd and ¶¶ 18-29). Releases of the Released Insurer Parties and a bar against the assertion of claims that would undermine the Settlement are also crucial components of the Settlement, which I am advised that the funding Insurers and Defendants insisted be part of the Settlement to bring finality to the considerable array of disputes resolved herein. (Motion ¶ 33).

7. The Plan Administrator is convinced that entry into the Settlement Agreement is a prudent exercise of the Plan Administrator's and MFGAA's business judgment and that the proposed Settlement is in the best interests of the Debtors' estates. The specific claims held by the Plan Administrator and/or MFGAA which are being compromised by this Settlement are the Net Equity Claims and certain direct rights against the E&O Policies held by MFGH and by MFGAA, as assignee of MFGI (the "Direct E&O Claims") seeking damages on account of the remaining net equity shortfall of $484 million (*e.g.,* Hayes Decl. ¶¶ 8-18).[13] In the Plan Administrator's and MFGAA's business judgment, compromising these claims as part of the

---

[12] See supra n.10. As with all estimates involving litigation and proposed settlements, any gross recoveries or projected ranges are not a guaranteed recovery but are provided only to indicate the MFG Plaintiffs' reasonable estimate of the estates' aggregate anticipated projected recoveries under the contemplated Settlement, assuming it goes final.

[13] I am advised that the current amount of the Net Equity Claims is $484 million, as calculated in expert reports exchanged in the MDL.

7

Settlement is in the best interests of the estates because after years of litigation and failed prior settlement and mediation efforts, the Settling Parties were finally able to reach an agreement in principle that provides for the full remaining limits of the E&O Policies and D&O Policies, except the Dissenters' Policies, to fund the Settlement.  Continuing to litigate the Net Equity Claims to trial would carry all the attendant risks of complex litigation.[14]  I am advised that defense costs associated with litigating the Net Equity Claims, including expert fees and costs of the Defendants, have been and would continue to be reimbursed out of the same insurance proceeds available to fund any damages that are ultimately awarded.[15]

8.      Given the rate at which insurance proceeds have been depleted thus far, with in excess of $97 million spent on defense costs prior to summary judgment motions, trial or appeals, there is no certainty as to what proceeds would remain if these cases were litigated to judgment to satisfy damage awards.  While the Plan Administrator believes that both the Net Equity Claims and Direct E&O Claims are meritorious, the pragmatic calculus that must be employed by the Plan Administrator in determining whether the settlement is in the best interest of creditors is whether the amounts to be recovered by the MFG Plaintiffs pursuant to the settlement  are reasonably expected to exceed the amount that could be recovered if the Net Equity Claims, Direct E&O Claims, and Litigation Trust Action were pursued to judgment.  Given the continued depletion of insurance proceeds in the absence of this Settlement, the only other source of recovery on the MDL claims would be against the Defendants' personal assets.

---

[14]    The Settlement also avoids any risks or costs associated with commencing litigation on account of the Direct E&O Claims held by MFGH and MFGAA against the funding E&O Policies (although claims are preserved against any E&O Policies not contributed to the Settlement, including the Identified Dissenters' Policies).

[15]    As the Court is aware from presiding over various proceedings involving the depletion of the insurance proceeds from defense costs, the total wasting of the E&O Policies for such fees was frozen at $14.4 million, and the Plan Administrator's advisors have confirmed that reimbursed costs totaling in excess of $82.6 million have been paid out of the D&O Policies (which were no longer subject to the Court's supervision) through March 31, 2016.

Thus, the continued prosecution of the MFG Plaintiffs' claims would only be reasonable if the anticipated collection on any money judgment against the personal assets of the Defendants (while presumably competing against other Plaintiffs to do so) would be expected to net a greater recovery than the millions (likely tens of millions) of insurance proceeds which would be depleted in the interim for the Defendants' defense costs. I am advised that the Litigation Trustee vetted this issue with counsel and concluded that given the certain depletion of insurance proceeds for continued defense costs, the failure to pursue and consummate the proposed Settlement on the terms agreed to here would likely result in a destruction of value by further wasting the insurance proceeds funding the Settlement without the prospect for making up these recoveries by pursuing personal assets. (Tavakoli Decl. ¶¶ 9-10).[16]

9.   The Board of Directors of MFGH (which is also the managing member of MFGAA) approved the settlement in principle agreed to in the November 30 Term Sheet, and also approved the Settlement Agreement as executed. Both the November 30 Term Sheet and final Settlement Agreement were the product of extensive good-faith, arms' length negotiations and represent, in the prudent exercise of the Board's business judgment, a fair and reasonable settlement of the claims held by the MFGH and its affiliates, including MFGAA.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: July 20, 2016                         /s/ *Erik M. Graber*
      New York, New York                  Erik M. Graber

NAI-1500739462

---

[16] The reasonableness of the Plan Administrator's conclusion finds support in the similar conclusion of Securities Lead Plaintiffs' counsel to forego personal contributions after requiring confidential disclosures, including verified disclosures to a mediator for certain defendants. See *Joint Declaration of Salvatore J. Graziano and Javier Bleichmar in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlements and Plan Of Allocation; and (II) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses*, MDL D.I. 1002 at 7 ¶ 8, Ex. 3 at 3 ¶ 6.

9